1  **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
   Todd D. Carpenter (CA 234464)
2  Brittany C. Casola (CA 306561)
   402 West Broadway, 29th Floor
3  San Diego, California 92101
   Telephone: 619.756.6994
4  Facsimile: 619.756.6991
   tcarpenter@carlsonlynch.com
5  bcasola@carlsonlynch.com

6  [Additional Counsel at closing caption]
   *Attorneys for Plaintiff and*
7  *Proposed Class Counsel*

8
                    **IN THE UNITED STATES DISTRICT COURT**
9
                **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
10

11
   MONICA RAEL and ALYSSA              Case No. 16CV0370-GPC-JMA
12 HEDRICK on behalf of themselves and
   all others similarly situated,       **SECOND AMENDED CLASS ACTION**
13                                       **COMPLAINT**

14          Plaintiff,                      1. **Violation of California's Unfair**
                                               **Competition Laws ("UCL");**
15 vs.                                         **California Business & Professions**
                                               **Code Sections 17200,** *et seq.*
16 THE CHILDREN'S PLACE, INC., a
   DELAWARE corporation, and DOES 1-
17 50, inclusive,                            2. **Violation of California's False**
                                               **Advertising Laws ("FAL");**
18                                             **California Business & Professions**
                                               **Code Sections 17500,** *et seq.*
19          Defendant.

20                                           3. **Violations of California Consumer**
                                               **Legal Remedies Act ("CLRA"); Civ.**
21                                             **Code § 1750,** *et seq.*

22
                                          **[DEMAND FOR JURY TRIAL]**
23

24

25

26

27

28

Plaintiffs MONICA RAEL and ALYSSA HEDRICK bring this action on behalf of themselves and all others similarly situated against Defendant The Children's Place, Inc. ("Defendant"), and state:

## I.    NATURE OF ACTION

1.    California law prohibits the discounting of retail merchandise from its original price for more than ninety (90) days. *See* Bus. & Prof. Code Section 17501. Federal regulations also mandate that a retailer offer only genuine discounts from regular retail prices; not false discounts from inflated original prices. *See* 16 C.F.R. §233.1. This is a class action regarding Defendant's misleading advertisement of phantom "savings;" discounts offered from false original prices on children's apparel, accessories, footwear and other items sold in its "Retail" and "Outlet" stores.  During the Class Period (defined below), Defendant advertised false price discounts for merchandise sold throughout its retail and outlet stores.

2.    Defendant continually mislead consumers by advertising children's apparel, accessories, footwear and other items at discounted, "sale" prices.  Defendant would market the "sale" prices as discounts from the "original" prices set forth on the products' price tags. However, the advertised discounts are nothing more than phantom markdowns because the represented "original" prices, *i.e.,* the prices listed on the price tags for the merchandise, are artificially inflated and the products are never offered for sale at the full original price for any substantial period of time, (if at all) and the original prices are never the prevailing market price for the products Defendant sells.

3.    Defendant marks each item with a price tag which sets forth the "original" price at which the item was purportedly offered for sale.  That original price is printed on the item's price tag. Defendant then displays large sale-discount signage on top of or alongside each wrack of clothing or accessories, advertising a "discounted % off," or a discounted whole-price reduction for the item (for example, Price Tag price: $17.50; Sale Price: $9.99), which is substantially less than the original price listed on the price tag. The "original" or "price tag," prices were not the prevailing market retail prices within the

---

three months next immediately preceding the publication of the advertised sale prices, as required by California law.

4.     Defendant misleads consumers into believing they are getting a substantial discount on the merchandise they purchase, when in reality, the merchandise was never intended to be sold at the inflated, "original," or "price tag," price. Defendant's pricing scheme is intended to increase sales, but has the effect of depriving consumers of the benefit of their bargain.

5.     Defendant conveys its deceptive pricing scheme to consumers through promotional materials, in-store displays, and print advertisements. For example, in Defendant's retail stores, the pricing scheme is prominently displayed, advertising deep discounts on various items throughout the store.

6.     The "original," "price-tag" or "regular" price listed on the price tag was never offered to customers in the market and/or did not constitute the prevailing market retail prices for such products within the three months next immediately preceding the publication of the discounted sales tag or signage. The clothing items and attire listed at regular or original prices were never offered for sale at those prices for a substantial period of time. The original or price tag price is not the price at which Defendant expects to sell the merchandise, it is merely a basis for misleading the consumer into believing they are receiving a substantial discount from the false original price.

7.     Defendant sells its own, exclusive, branded products in its retail and outlet stores. There is no other regular, or market price for the products being sold at its retail stores other than the price set at Defendant's own retail stores.  Similarly, Defendant produces a lower quality line of products bearing The Children's Place brand, that is exclusively offered for sale in the The Children's Place outlet stores. There is no other market for the The Children's Place outlet store clothing than at The Children's Place outlet stores. The difference between the "sale" and "regular" prices offered at both the retail and outlet stores is a false savings percentage or dollar discount used to lure consumers into purchasing products they believe are significantly discounted.

8.      Through its false and misleading marketing, advertising and pricing scheme, Defendant violated, and continues to violate California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.  Specifically, Defendant violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq* (the "UCL"), California's Business & Professions Code §§ 17500, *et seq* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §§ 1750, *et seq* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements.  15 U.S.C. § 52(a).

9.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more children's apparel, accessories, footwear and other items at Defendant's retail and outlet stores that were deceptively represented as discounted from false former or original prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased this product.  Plaintiffs seek restitution and other equitable remedies, including an injunction under the UCL and FAL; and restitution, damages and an injunction under the CLRA.

## II.    JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Defendant.

11.      The Southern District of California has personal jurisdiction over the Defendant named in this action because Defendant is a corporation or other business entity authorized to conduct and does conduct business in the State of California. Defendant is registered with the California Secretary of State to do sufficient business

with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the ownership and operation of over 90 retail and outlet stores within the State of California.

12.     Venue is proper under 28 U.S.C. § 1391(b) because Defendant transacts substantial business in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims arose here.

## III.    PARTIES

### Plaintiffs

13.     MONICA RAEL now resides in Santa Fe, New Mexico. While living in San Diego, California, Ms. Rael traveled to her local shopping mall in Mission Valley in San Diego, California to go "bargain hunting," to purchase some clothes for herself and begin her Christmas season shopping. Plaintiff, in reliance on Defendant's deceptive advertising and discount pricing schemes, purchased a pair of Pull Over Olive Cargo Pants for her nephew for approximately $7.47 on or around November 24, 2015, at a Children's Place retail store, located at 1640 Camino Del Rio N, San Diego, CA 92108.  At the time of Ms. Rael's purchase, the cargo pants bore a price tag which advertised an original price of approximately "$14.95".   That price was discounted to "$7.47" and represented to Plaintiff a 50% savings on the original price. However, this product, like the majority of products offered for sale at the Children's Place retail stores, was never offered for sale at The Children's Place retail store for any substantial period of time at the full regular price of approximately $14.95, nor was it offered at The Children's Place retail store where Ms. Rael purchased it at that price within the 90-day time period immediately preceding Plaintiff's purchase. The 50% price reduction that was offered on the cargo pants was a material representation that Plaintiff relied upon in purchasing the cargo pants. She was enticed to purchase the pants because of the significant discount that was being offered from the "regular" or "original" price of $14.95. However, Ms. Rael did not receive the benefit of her bargain.

14.     At the time of her purchase, Ms. Rael's recollection is that the price tag itself

listed the "regular" or "original" price for the pants of $14.95, but that large, sale discount signage announced the discounted price of "50% off". She believed that she was receiving a substantial discount and that the pants she was purchasing were of a significantly greater value than the amount she was paying for them. Instead, the cargo pants Ms. Rael purchased were of a lesser value than what she paid. By failing to price the cargo pants and other clothing items at their actual original or regular price for a substantial period of time, Defendant artificially inflated the market price or value of the clothing it sells, including the pants purchased by Plaintiff. By failing to price its merchandise, including the cargo pants purchased by Plaintiff, at their original or regular for a substantial period of time and in compliance with California law, The Children's Place interfered with market forces; driving the selling price of its products higher than they would be if Defendant had complied with the law.   Defendant's false discounting practice, as described herein, has the effect of setting an artificially high market value for its merchandise. Customers purchase merchandise from The Children's Place believing they are receiving a substantial discount on their purchases, when in fact they are not. They are instead purchasing an item they would not otherwise buy and paying a higher price than they would otherwise pay were the products subject to fair market competition and pricing.

15.    ALYSSA HEDRICK resides in San Diego, California. Plaintiff, in reliance on Defendant's false and deceptive "discount" pricing schemes, purchased a pair of Toddler's blue jeans for approximately $9.99 on April 27, 2016, at The Children's Place outlet store located at 4155 Camino De La Plaza, San Ysidro, California 92173. At the time of Ms. Hedrick's purchase, the blue jeans bore an actual price tag which advertised an original price of "$16.50".  That price was discounted and represented to Plaintiff as "$9.99," a 40% savings on the false regular price. However, this product, like the majority of products offered for sale at The Children's Place outlet stores, was never offered for sale at The Children's Place outlet stores at the full regular price of approximately $16.50, nor was it offered at The Children's Place outlet store at that price within the 90-day time

period immediately preceding Plaintiff's purchase. The 40% price reduction that was offered on the cargo pants was a material representation that Plaintiff relied upon in purchasing the blue jeans. She was enticed to purchase the jeans because of the significant discount that was being offered from the "regular" or "original" price of $16.50. However, Ms. Hedrick did not receive the benefit of her bargain.

16.     Ms. Hedrick's recollection is that the price tag itself listed the "regular" or "original" price for the jeans of $16.50, but that sale discount signage announced the discounted price of $9.99. She believed that she was receiving a substantial discount at the time of purchase and that the blue jeans she was purchasing were of a significantly greater value than the amount she was paying for them. She purchased the jeans in reliance on the representation of discount. Instead, the blue jeans Ms. Hedrick purchased were of a lesser value than what she paid. By failing to price the blue jeans and other clothing items at an original or regular price for a substantial period of time, Defendant artificially inflated the "market" price or value for the clothing it sells at the outlet. Consumers are enticed by the discount to purchase the clothing at what they perceive to be a substantial discount, thereby artificially inflating the market price for the discounted outlet clothing. Defendant's false discounting practice, as described herein, has the effect of setting an artificially high market value for its merchandise. Customers purchase merchandise from The Children's Place outlet stores believing they are receiving a substantial discount on their purchases, when in fact they are not.

**Defendant**

17.     Plaintiffs are informed and believe, and upon such information and belief allege, Defendant The Children's Place, Inc., is a Delaware Corporation with its principal executive offices in Secaucus, New Jersey. Defendant operates Children's Place retail and outlet stores as well as the childrensplace.com website, and advertises, markets, distributes, and/or sells children's apparel, accessories, footwear and other items in California and throughout the United States.

18.     Plaintiffs do not know the true names or capacities of the persons or entities

sued herein as DOES 1-50, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiffs are informed and believe, and upon such information and belief allege, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiffs and the Class members as alleged herein.  Plaintiffs will amend their Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV.   FACTUAL BACKGROUND

19.   The Children's Place is a specialty retailer of children's apparel and accessories. The company markets and sells apparel under its own brands, the The Children's Place, Place, and Baby Place brand names. As of June 29, 2016, the company operated approximately 90 outlet and retail stores in the state of California.

20.   On November 24, 2015, Plaintiff Rael went shopping at a Children's Place retail store for clothing and related apparel for her family. Upon examining a pair of children's cargo pants, she observed that they were advertised at a "50% off" savings. Plaintiff observed signage within the store and the price tag on the pants which together demonstrated that the pants were "50% off". Believing that she was receiving a significant value by purchasing the pants for $7.47 that were originally priced at approximately $14.95, she decided to purchase the pants and proceeded to the cash register where she did in fact purchase the pants. Ms. Rael made her purchase at a The Children's Place regular retail store in the Mission Valley shopping mall.

21.   On April 27, 2016, Plaintiff Hedrick went shopping for clothing for her and her family at the outlet malls located in San Ysidro, California. Upon arriving in The Children's Place outlet store, she observed that virtually the entire store was marked down or on sale from the prices listed on the price tags of the clothing. Ms. Hedrick purchased a pair of Bootcut Stonewashed medium wash blue jeans. She examined the price tag on the jeans listed for sale at $16.50. She also examined the overhead signage which listed the

jeans on sale for $9.99. In reliance on this representation, she proceeded to purchase the jeans believing that she was receiving a substantial discount on the blue jeans. Ms. Hedrick also believed she was purchasing merchandise that was of the same like, kind and quality of that sold in the regular The Children's Place retail stores.

**A.     Investigation into The Children's Place Sale Discounting Practices**

22.     Plaintiff's counsel tracked the pricing on various consumer goods at various retail stores, including The Children's Place retail and outlet stores for several months preceding and subsequent to Ms. Rael's and Ms. Hedrick's purchases. Plaintiffs' counsel's investigation revealed that the "original" or "price tag" price ($14.95) of the cargo pants Ms. Rael purchased was never the prevailing market price at The Children's Place retail store in the 90 days preceding Ms. Rael's purchase, nor were the cargo pants offered for sale at the "original" price at The Children's Place retail store. Instead, Defendant continuously offered the cargo pants for sale at discounted prices, including at $7.47; "50% off," the price on the products' price tag. Plaintiffs' counsel's investigation revealed that this was a pervasive practice at the Children's Place, as several other items remained continuously discounted from their "original" or "price tag" price or they were not offered for sale at their original price for any substantial period of time, including Children's blue jeans, pants, and tee shirts. The Children's Place engages in a systematic scheme to continuously discount its merchandise without ever offering the merchandise for sale at its "original" or "price tag" prices for any substantial period of time and in some cases, not at all.

23.     As far back as August 20, 2015, all types of cargo pants and pants in general, referred to as "bottoms," were offered at a 30% discount in The Children's Place retail stores. *See* Exhibit "A", 30% off all "bottoms", confirmed August 20, 2015. Ms. Rael made her purchase on November 24, 2015 at a time when the cargo pants she purchased were 50% off. *See* Exhibit "B," Plaintiff's Rael's receipt. The same pants are

presently offered for sale at $12.99; discounted from an original price of $16.95[1]. *See* Exhibit, "C," confirmed on June 21, 2016.

24.     At the time of her purchase, Ms. Rael's recollection is that the price tag itself listed the "regular" or "original" price for the pants at $14.95, but that large, sale discount signage announced the discounted price of "50% off". She believed that she was receiving a substantial discount and that the pants she was purchasing were of a significantly greater value than the amount she was paying for them. Instead, the cargo pants Ms. Rael purchased were of a lesser value than what she paid. By failing to price the cargo pants and other clothing items at an original or regular price for a substantial period of time, Defendant artificially inflated the "market" price or value for the clothing it sells. By failing to price its merchandise, including the cargo pants purchased by Plaintiff, at their original or regular prices for a substantial period of time and in compliance with California law and related federal regulations, The Children's Place interfered with market forces; driving the selling price of its products higher than they would be if Defendant had complied with the law.

25.     Defendant's false discounting practice, as described herein, has the effect of setting an artificially high market value for its "on sale" merchandise. Customers purchase merchandise from The Children's Place retail stores believing they are receiving a substantial discount on their purchases, when in fact they are not. They are instead purchasing an item that they might not otherwise buy and paying a higher price than they would otherwise pay were the products subject to fair market competition and pricing.

26.     Plaintiff's counsel's investigation of The Children's Place outlet stores reveals that the Bootcut medium stone washed blue jeans Ms. Hedrick purchased were never offered at the full retail price at the The Children's Place outlet store in the 90 days preceding her purchase. Plaintiffs' counsel's investigation reveals that the blue jeans purchased by Ms. Hedrick were continuously on sale at various discounted prices in the

---

[1] Defendant raised the "original" price from which the false discount was taken.

outlet stores in the 90 days leading up to her purchase on April 27, 2016.

27.    Plaintiffs' counsel's investigation at The Children's Place outlet store revealed that the blue jeans Ms. Hedrick purchased were never offered for sale in the outlet store at the $16.50 regular price. Instead, Defendant continuously offered the blue jeans for sale at a discounted price, including at $9.99; 40% off the price on the products' price tag. *See* Exhibit D, Plaintiff Hedrick's receipt. Plaintiff's counsel's investigation revealed that this was a pervasive practice at The Children's Place outlet stores, as almost every item offered at the outlet store remained continuously discounted from their "original" price and/or the price listed on the products' price tag for the duration of Plaintiffs' counsel's investigations from July of 2015 through November of 2015 and from January of 2016 through May of 2016.

28.    In fact, as of June 24, 2016, the blue jeans Plaintiff Hedrick purchased were still being offered at a discount of $12.99 from their purported, false regular price of $16.50. *See* Exhibit E, demonstrating both Toddler's jeans and Boy's jeans discounted from their false regular price. Plaintiff's investigation revealed that several other items including, children's blue jeans, cargo pants, and tee shirts were all continuously discounted at substantial false savings. *See*, for example, Exhibit F, "graphic tees," advertised at $4.99; original price: $9.50.

29.    Despite Plaintiffs' counsel's best efforts at investigation, the full extent of Defendant's false and deceptive pricing scheme can only be revealed through a full examination of records exclusively in the possession of Defendant.

30.    Furthering Defendant's misrepresentations, subsequent to her purchase, Ms. Hedrick learned that the merchandise she purchased from The Children's Place *outlet* store, was not ever sold at or intended to be sold at a The Children's Place *retail* store. The vast majority of merchandise sold at the Children's Place Outlet Stores, is merchandise that is exclusively made for and sold at the outlet stores. Customers, like Ms. Hedrick, shop at the outlet store believing they are getting a substantial discount on goods and products that were formerly sold at regular, The Children's Place retail stores. In fact,

the clothing sold at the outlet stores are of a lesser quality than those sold in the retail store. Customers, including Ms. Hedrick, believe they were receiving a discounted price from the original price of the products sold in the retail store, when in fact, the vast majority of such products were never sold in the retail store.

31.    Defendant The Children's Place manufactures clothing made strictly for its outlet stores. The clothing is of a lesser quality than that sold in its regular retail stores. The relevant market for purchasing outlet-quality merchandise bearing the The Children's Place logo is strictly at The Children's Place Outlet stores. Defendant does not disclose that the merchandise available for sale in their outlet stores is different or distinct from the merchandise sold in its retail stores. Nor does Defendant disclose that the outlet store merchandise is of a lesser quality than that sold in the retail stores. The outlet clothing also bears separate and distinct branding labels.

32.    Jane T. Elfers, CEO of The Children's Place, Inc. admitted in a Fourth Quarter 2012 Earnings call that The Children's Place had started introducing, "made for outlet" assortments at the end of 2011 and had fully executed its "made for outlet" strategy by mid-2012. The lower quality merchandise led to greater margins at the outlet stores as unwitting consumers continued to shop, believing they were receiving discounted, quality merchandise that was previously offered for sale in the The Children's Place retail stores. Ms. Elfers stated on March 26, 2013, that nearly 80% of all merchandise sold in the outlet stores was "made for outlet," and the goal was to achieve 85%. She opined:

> "From a product point of view, _**we're over 80% now made-for-outlet product**_. And we'll continue to try to get that closer to about _**85%**_, but we are in good shape as far as the rollout strategy. And as we mentioned on the call, had a very strong end to the year in Outlet. And we predict that we'll continue to be able to make progress in outlets over the next couple of years. And certainly, on the margin line, we're looking for parity with the U.S. Place by the end of '14".
> _See_ Exhibit "G," Earnings call transcript, Page 10 of 14 (emphasis added).

33.    Plaintiffs would not have made their purchases without the misrepresentations made by Defendant.  As a result, Plaintiffs have been personally

victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair and fraudulent conduct.

34.     Defendant knows that its false discount advertising is deceptive, misleading and unlawful under California law.

35.     Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the proposed class the truth about its advertised price and former prices. Defendant concealed from consumers the true nature and quality of the products sold at its outlet stores.

36.     At all relevant times, Defendant has been under a duty to Plaintiffs and the proposed class to disclose the truth about its false discounts.

37.     Plaintiffs relied upon Defendant's artificially inflated "market" price and false discounts when purchasing the pants at Defendant's retail store.  Plaintiff would not have made such purchases but for Defendant's representations of fabricated original "market" prices and false discounts.

38.     Plaintiffs and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and made purchases believing that they were receiving a substantial discount on items of greater value than they actually were.  Plaintiffs, like other class members, were lured in, relied on, and damaged by these pricing schemes that Defendant carried out.

39.     Defendant intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the proposed class to purchase Children's Place branded products in its retail and outlet stores.

40.     Despite Plaintiffs' counsel's best efforts at investigation, the full extent of Defendant's false and deceptive pricing scheme can only be revealed through a full examination of records exclusively in the possession of Defendant.

## V.     CLASS ALLEGATIONS

41.     Plaintiffs bring this action on behalf of themselves and all other similarly

situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Classes against Defendants for violations of California state laws:

42.     All individuals in the State of California who, within the applicable statute of limitations and going forward from the date of filing the original Complaint ("Class Period"), purchased any product bearing a false discount at one of The Children's Place retail or outlet stores.

43.     Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendant.  Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

44.     ***Numerosity***: The class members are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiffs.

45.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

        **a.**    Whether, during the Class Period, Defendant used false "price tag" or "original" price labels and falsely advertised price discounts on its Children's Place branded products it sold in its retail and outlet stores;

        **b.**    Whether, during the Class Period, the "original" or "price tag" prices advertised by Defendant were the prevailing market prices for the respective Children's Place branded products during the three month

period preceding the dissemination and/or publication of the advertised former prices;

c.     Whether Defendant's alleged conduct constitutes violations of the laws asserted;

d.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

e.     Whether Defendant engaged in false or misleading advertising;

f.     Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

g.     Whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparison.

46.     **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the class.

47.     **Adequacy**:  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no antagonistic or adverse interest to those of the Class.

48.     **Superiority**: The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the class for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public

would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

49.    All Class members, including Plaintiffs, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that former "original" advertised prices were in existence.  Due to the scope and extent of Defendant's consistent false "discount" price advertising scheme, disseminated in a years-long campaign to California consumers via a number of different platforms – in-store displays, print advertisements, etc. – it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including, Plaintiffs affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing Children's Place branded merchandise at Defendant's retail and outlet stores.

50.    ***Ascertainability:*** Defendant keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs, and general marketing programs.  Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation Unfair Competition Law**
**Business and Professions Code § 17200 et seq.**

51.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

52.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

53.     The UCL imposes strict liability.  Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

54.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

55.     Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false "original," or "price tag," prices and "discount" prices that were nothing more than fabricated "regular" prices leading to phantom markdowns. Defendant's acts and practices offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

56.     The harm to Plaintiffs and Class members outweighs the utility of Defendant's practices.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

57.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

58.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

59.     Defendant's acts and practices alleged above have deceived Plaintiffs and are highly likely to deceive members of the consuming public.   Plaintiffs relied on Defendant's fraudulent and deceptive representations regarding its "market" prices, the corresponding discounts for the Children's Place branded products which Defendant sells at its retail and outlet stores and on its website. These misrepresentations played a

substantial role in Plaintiffs' decisions and that of the proposed class to purchase the products at steep discounts, and Plaintiffs would not have purchased their products without Defendant's misrepresentations.

60.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, similar to the ones implemented by Defendants, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an article price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

> (c)  The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not

genuine.

16 C.F.R. §233.1.

61.    Indeed, the FTCA prohibits such conduct regardless of whether the merchandise sold uses the words regular, original or former price to deceptively describe merchandise:

> e)  If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered. [Guide I]

16 C.F.R. §233.1.

62.    California law also expressly prohibits false former pricing schemes.  Cal. Bus. & Prof. Code §17501, entitled *"Worth or value; statements as to former price,"* states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> **No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

63.     As detailed in Plaintiffs' Third Cause of Action below, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

64.     Defendant's practices, as set forth above, have mislead Plaintiffs, the proposed class, and the general public in the past and will continue to misled in the future. Consequently, Defendant's practices constitute an unlawful an unfair business practice within the meaning of the UCL.

65.     Defendant's violation of the UCL through its unlawful, unfair and fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "regular" prices to "sale" prices that created merely phantom markdowns and lead to financial damage for consumers, like Plaintiffs and the proposed Class

66.     Pursuant to the UCL, Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiffs and the Class of all of Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of the California False Advertising Law,**
**California Business & Professions Code § 17500, *et seq.***

67.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

68.     Cal. Bus. & Prof. Code § 17500 provides that "[i]t is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or

disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is <u>untrue</u> or <u>misleading</u>, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…" [Emphasis added].

69.    The "intent" required by Cal. Bus. & Prof. Code § 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

70.    Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

71.    Defendant's routine of advertising discounted prices from false "original" prices associated with its Children's Place branded store products which were never the true prevailing "market" prices of those products and were materially greater than the true prevailing prices was an unfair, untrue and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were. Therefore, leading to the false impression that the Children's Place branded products were worth more than they actually were.

72.    Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

73.    As a direct and proximate result of Defendant's misleading and false advertisements Plaintiffs and Class members have suffered injury in fact and have lost money. As such, Plaintiffs request the Court order Defendant to restore this money to Plaintiffs and all Class members and to enjoin Defendant from continuing these unfair practices in violation of the California law in the future. Otherwise, Plaintiffs, Class

members and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq.***

74.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

75.     This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, et seq. and similar laws in other states. Plaintiffs and each member of the proposed class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of The Children's Place branded products at its retail and outlet stores to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e).  The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code § 1761(a).

76.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Children's Place branded products:

        **a.** Advertising goods or services with intent not to sell them as advertised;

        **b.** Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

77.     Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.

78.     Defendant failed to appropriately respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the

Act.  Therefore, Plaintiffs further seek claims for actual, punitive and statutory damages, as appropriate against Defendant.

## VII.  PRAYER FOR RELIEF

79.    Wherefore, Plaintiff, on behalf of themselves and on behalf of the other members of the Class, requests that this Court award relief against Defendant as follows:

a.    An order certifying the class and designating MONICA RAEL and ALYSSA HEDRICK as Class Representatives and their counsel as Class Counsel;

b.    Awarding Plaintiffs and the proposed Class members damages;

c.    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of its unlawful, unfair and fraudulent business practices described herein;

d.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervisions, victims of its misconduct and pay them all money they are required to pay;

e.    Awarding actual, punitive and statutory damages as permitted under the California Consumer Legal Remedies Act;

f.    Order Defendant to engage in a corrective advertising campaign;

g.    Awarding attorneys' fees and costs; and

h.    For such other and further relief as the Court may deem necessary or appropriate.

## VIII. DEMAND FOR JURY TRIAL

80.    Plaintiffs hereby demands a jury trial for all of the claims so triable.

1

Dated: August 15, 2016

2

**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**

3

*/s/ Todd D. Carpenter*

4

Todd D. Carpenter (CA 234464)
Brittany C. Casola (CA 306561)

5

402 West Broadway, 29th Floor
San Diego, California 92101

6

Telephone: (619) 347-3517
Facsimile: (619) 756-6990

7

tcarpenter@carlsonlynch.com
bcasola@carlsonlynch.com

8

9

Edwin J. Kilpela
Gary F. Lynch

10

1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222

11

Telephone: (412) 322-9243
Facsimile: (412) 231-0246

12

ekilpela@carlsonlynch.com
glynch@carlsonlynch.com

13

14

*Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23