1

**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**

2

Todd D. Carpenter (CA 234464)
1350 Columbia Street, Suite 603

3

San Diego, California 92101
Telephone: (619) 762-1900

4

Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

5

*Attorneys for Plaintiff and Class Counsel*

6

7

8

9

10              UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  MONICA RAEL and ALYSSA<br>14  HEDRICK, on behalf of themselves and<br>15  all others similarly situated,<br>16              Plaintiffs,<br>17  v.<br>18  THE CHILDREN'S PLACE, INC.,<br>19              Defendant. | Case No:  16CV370-GPC-JMA<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT OF**<br>**UNOPPOSED MOTION FOR**<br>**PRELIMINARY APPROVAL OF**<br>**SETTLEMENT AND PROVISIONAL**<br>**CLASS CERTIFICATION**<br><br>Date: February 9, 2018<br>Time: 1:30 p.m.<br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D |

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2                                                                                          <u>Page</u>

3    MEMORANDUM OF POINTS AND AUTHORITIES……………………………..1

4    I.    INTRODUCTION………………………………………………………...1

5    II.   BACKGROUND OF THE LITIGATION……………………………………1

6    III.  THE SETTLEMENT………………………………………………………...3

7          A. Settlement Negotiations……………………………………………3

8          B. The Settlement Agreement…………………………………………...4

9                1.    The Benefit to Class Members………………………………4

10               2.    Notice Plan and Claims Process……………………..……6

11               3.    Notice and Administration Costs, Attorneys' Fees and

12                     Expenses, and Plaintiffs' Incentive Awards…………………………6

13   IV.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND

14         REASONABLE……………………………………………………………....7

15         A. The Settlement is a Product of Serious, Arms-Length Negotiations………..8

16         B. The Settlement Falls Within a Range of Possible Judicial Approval……...10

17         C. The Settlement Has No Obvious Deficiencies………………………….....11

18         D. The Settlement Does Not Grant Preferential Treatment Over Class

19               Representatives or Segments of Class Members…………………….…..12

20   V.    THE PROPOSED CLASS SHOULD BE PROVISIONALLY CERTIFIED FOR

21         SETTLEMENT PURPOSES……………………………………………….....14

22         A. The Proposed Settlement Class Satisfies Rule 23(a)……………………..14

23               1.    Numerosity……………………………………………...14

24               2.    Commonality…………………………………………......14

25               3.    Typicality………………………………………………16

26               4.    Adequacy……………………………………………...16

27         B. The Proposed Settlement Class Satisfies Rule 23(b)……………………17

28               1.    Common Questions Predominate……………………………17

i

2.   A Class Action is the Superior Method to Settle this Controversy……………………………………………………..18

VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED……………...19

VII.   PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS FOR SETTLEMENT PURPOSES……………………………………………………21

VIII.   THE PROPOSED SCHEDULE OF EVENTS…………………………………22

IX.   CONCLUSION……………………………………………….……………22

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                    *Page*

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007)……………………………………………….7

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)……………………………………………………14, 17, 19

*Balasanyan v. Nordstrom, Inc.*,
    294 F.R.D. 550 (S.D. Cal. 2013)…………………………………………….14

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558 (S.D. Cal. 2012)…………………………………………….17

*Chowning v. Kohl's Dep't Stores, Inc.*,
    2016 WL 1072129 (C.D. Cal. Mar. 15, 2016)……………………………….11

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)………………………………………………..19

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)………………………………………………..7

*Fraser v. Asus Computer Int'l*,
    2012 WL 6680142 (N.D. Cal. 2012)………………………………………...11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)………………………………………*passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964)………………………………………...…14

*Hoffman v. Dutch LLC*,
    317 F.R.D. 566 (S.D. Cal. 2016)…………………………………………....16

*In re M.L. Stern Overtime Litigation*,
    No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009)…….7

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015)………………………………………*passim*

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

*In re Syncor ERISA Litigation*,
    516 F.3d 1095 (9th Cir. 2008)……………………………………………………….7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)……………………………………….8, 10

*In re Tobacco Cases II*,
    2015 WL 5673070 (Cal. App. Sept. 28, 2015)……………………………………10

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation*,
    295 F.R.D. 438 (C.D. Cal. 2014)………………………………………….....7

*Jacobo v. Ross Stores, Inc.*,
    2017 WL 3382053 (C.D. Cal. Aug. 2, 2017)………………………………………..11

*Keirsey v. eBay, Inc.*,
    No. 12-cv-1200-JST, 2014 WL 644697 (N.D. Cal. Feb. 14, 2014)…………...….21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)…………………………………………………….20

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)…………………………………………....11

*Maxin v. RHG & Co., Inc.*,
    2017 WL 748143 (S.D. Cal. Feb. 27, 2017)………………………………………..18

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)……………………………………………………………...19

*Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)…………………………………………………...8, 10

*Radcliffe v. Experian Info. Solutions Inc.*,
    715 F.3d 1157 (9th Cir. 2013)…………………………………………………….13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)…………………………………………………...8, 12

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

*Satchell v. Federal Express Corp.*,
　　Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)…9

*Spann v. J.C. Penney Corp. ("Spann I")*,
　　307 F.R.D. 508 (C.D. Cal. 2015) …………………………..….……………*passim*

*Spann v. JC Penney Corp. ("Spann II")*,
　　314 F.R.D. 312 (C.D. Cal. 2016)…………………………………………*passim*

*Stathakos v. Columbia Sportswear Company*,
　　No. 15-cv-4543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017)…………..11

*Staton v. Boeing Co.*,
　　327 F.3d 938 (9th Cir. 2003)………………………………………….....13

*Stearns v. Ticketmaster Corp.*,
　　655 F.3d 1013 (9th Cir. 2011)………………………………………………17

*Tait v. BSH Home Appliances Corp.*,
　　289 F.R.D. 466 (C.D. Cal. 2012)…………………………………………15

*Van Bronkhorst v. Safeco Corp.*,
　　529 F.2d 943 (9th Cir. 1976)…………………………………………..7

*Vasquez v. Coast Valley Roofing, Inc.*,
　　670 F. Supp. 2d 1114 (E.D. Cal. 2009)…………………………………12

*Wal–Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011)………………………………………………15

*Wiener v. Dannon Co., Inc.*,
　　255 F.R.D. 658 (C.D. Cal. 2009)…………………………………………14

*Wolin v. Jaguar Land Rover North America, LLC*,
　　617 F.3d 1168 (9th Cir. 2010)………………………………………16

*Zinser v. Accufix Research Institute, Inc.*,
　　253 F.3d 1180 (9th Cir. 2001)……………………………………………17

**Statutes**
28 U.S.C. § 1715……………………………………………………6

Cal. Bus. & Prof. Code § 17200………………………………………………..3
Cal. Bus. & Prof. Code § 17500………………………………………………..3
Cal. Civ. Code § 1750………………………………………………………3
Fed. R. Civ. P. 23(a)……………………………………………………14
Fed. R. Civ. P. 23(a)(2)…………………………………………………14
Fed. R. Civ. P. 23(a)(3)…………………………………………………16
Fed. R. Civ. P. 23(a)(4)…………………………………………………16
Fed. R. Civ. P. 23(b)(3)………………………………………17, 18, 19
Fed. R. Civ. P. 23(e)……………………………………………………..8, 19
Fed. R. Civ. P. 23(g)(1)(A)…….....…………………………………………..21

***Other Authorities***

*Newberg on Class Actions*
        § 13:15 (5th ed. 2014)…………………………………………………11
        § 11:53 (4th ed. 2013)…………………………………………………20

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs achieved an outstanding Settlement wherein The Children's Place has agreed to make available a total settlement value of at least ***$4.8 million*** for the Class. Plaintiffs' pursuit to protect consumer rights has resulted in a Settlement that effectively deters retailers from eluding transparent price advertising. Class Members will be awarded a significant, usable benefit—***such as $6, $12 or $18 in vouchers***—to spend at The Children's Place retail, outlet, and online stores. This benefit allows consumers to purchase fashionable children's clothing apparel and accessories without having to come out of pocket.

Plaintiffs bring this unopposed motion, seeking an order from the Court to: (1) preliminarily approve the Settlement Agreement; (2) provisionally certify the Class for settlement purposes; (3) preliminarily approve the form, manner, and content of the proposed notices to the Class; (4) conditionally appoint named Plaintiffs as Class Representatives for settlement purposes; (5) conditionally appoint Carlson Lynch Sweet Kilpela & Carpenter, LLP as Class Counsel for settlement purposes; (6) set the date and time of the Final Fairness Hearing; (7) determine that Defendant has complied with the CAFA notice requirements; and (8) stay all proceedings in the Action until final approval of the settlement.

### II.   BACKGROUND OF THE LITIGATION

Plaintiffs' Counsel conducted a years-long investigation into The Children's Place's sale discounting practices at their retail and outlet stores.  Third Amended Complaint ("TAC") at ¶¶ 22–23.  Plaintiffs contend that their Counsel's investigation revealed that The Children's Place was engaged in the pervasive practice of continuously discounting their merchandise from their "original" or "regular" price tag price for a substantial period of time, and sometimes, without ever offering the merchandise at its regular price at all—a practice that Plaintiffs allege squarely violates California law prohibiting retailers from discounting merchandise from its original price for more than ninety (90) days.  *Id.* at ¶¶

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

1, 22–28. Plaintiff Monica Rael filed her initial complaint on February 11, 2016 and her first amended complaint on April 25, 2016. (Dkt. Nos. 1, 9.)  Plaintiff Alyssa Hedrick joined the action in the second amended complaint filed on August 15, 2016. (Dkt. No. 19.) Plaintiffs file the operative third amended complaint concurrently with this motion for preliminary approval.

Plaintiffs allege that prior to August 2015, The Children's Place employed a systematic advertising scheme of continuously discounting its merchandise at sale prices that were significantly lower than the "regular" or "original" price tag prices for its exclusive branded merchandise at its retail and outlet stores. TAC at ¶¶ 1–7.  Plaintiffs further allege that the advertised discounts were nothing more than mere phantom markdowns because the represented "original" price tag prices were false because Defendant rarely, if ever, offered for sale the merchandise at the purported "original" prices. *Id.* at ¶ 2, 6. Plaintiffs allege that Defendant's fraudulent pricing practices mislead consumers into believing they were receiving a significant discount on merchandise they might not have purchased absent the purported discount.  *Id.* at ¶ 4.  Plaintiffs allege that in reality, consumers were induced to pay a higher price than they would have paid had the products been subject to fair market competition and pricing.  *Id.* at ¶ 25.  Plaintiffs allege that this pricing scheme is intended to increase sales, but has the effect of depriving consumers of the benefit of their bargain.  *Id.* at ¶ 4.  Further, Plaintiffs also allege the vast majority of merchandise sold at Defendant's outlet stores is manufactured exclusively for the outlet stores.  *Id.* at ¶¶ 30–31.  Plaintiff Hedrick alleges that this practice misled herself and other consumers by thinking they are getting a substantial discount on merchandise that was formerly sold at the The Children's Place retail stores. *Id.* at ¶ 30.

The purchases Plaintiff Monica Rael and Alyssa Hedrick made at Defendant's retail and outlet stores, respectively, mirrored the fraudulent pricing practice that Plaintiffs' counsel alleges it had observed for several months preceding and subsequent to their purchases.  TAC at ¶¶ 22–28.  Plaintiff Rael alleges that the cargo pants she purchased on sale at Defendant's retail store for $7.47 bore a $14.95 original price tag price and was

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

continuously offered for sale at a discounted price for more than 90 days preceding her purchase. *Id.* at ¶ 22.  Plaintiff Hedrick alleges that the jeans she purchased on sale at Defendant's outlet store for $9.99 were continuously on sale at various discounted prices in the 90 days leading up to her purchase and were never offered at the regular price of $16.50 at any time during that period.  *Id.* at ¶¶ 26–28.  Plaintiffs seek damages, restitution, and injunctive relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* Plaintiffs seek to represent the following nationwide class:

> All individuals in the United States who, from February 11, 2012 through the date the Court enters the preliminary approval order, purchased any product bearing a discount at one of The Children's Place retail or outlet stores. Excluded from the Class are Defendant, Defendant's counsel, Defendant's officers, directors, and employees, and the judge presiding over the action.

TAC at ¶ 42.

## III.   THE SETTLEMENT

### A.   Settlement Negotiations

Since the onset of the litigation, the Parties engaged in arm's-length settlement negotiations, including attending two full day mediation sessions with the Honorable Edward A. Infante (Ret.) of JAMS, Inc. on December 8, 2016 and April 19, 2017. Declaration of Todd D. Carpenter ("Carpenter Decl."), at ¶ 4.  For the first mediation session, Class Counsel also prepared and provided the mediator with Plaintiffs' detailed mediation statement, which included an analysis of the evidence and discovery, the relevant case law, and a proposed settlement structure.  Most importantly, Plaintiffs proffered the Expert Report of Christian Tregillis, CPA, ABV, CFF, CLP, an economist who substantiated Plaintiffs' damages theory and provided opinion regarding the methodology that can be employed to calculate damages on a class-wide basis. *Id.* at ¶ 5. Specifically, Mr. Tregillis proposed a methodology by which consumers' damages could be measured by evaluating consumer expectations and behavior based on both the alleged

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

1    fictitious "original" price of the item, the size of the phantom discount, and the cost to
2    produce the item at issue.  At the close of the first full day session, and after exchanging
3    numerous proposals, the Parties made substantial progress.  However, the Parties remained
4    at an impasse on numerous issues and did not reach a settlement that day. *Id*., at ¶ 8.

5       Feeling that they were close to a final agreement, the Parties appeared for a second
6    full day of mediation with Judge Infante, which concluded with the Parties ultimately
7    agreeing to all material terms of the settlement and executing a Memorandum of
8    Understanding in the following weeks thereafter. Carpenter Decl., at ¶ 10. Each aspect of
9    this Settlement was heavily negotiated, including the distribution scheme of the vouchers,
10   and their specifications, such as expiration date and the possibility of any proof of purchase
11   requirements.  *Id.* at ¶ 11. The Parties subsequently negotiated, drafted, and executed the
12   Settlement Agreement currently before the Court.  Class Counsel is confident that the terms
13   of the Settlement are fair, adequate, and reasonable.

14                  **B.    The Settlement Agreement**

15                       **1.    The Benefit to Class Members**

16       The Children's Place will distribute a maximum of 800,000 Vouchers to Class
17   Members. Carpenter Decl., Ex. 1 ("Settlement Agreement") at § 1.33[1]. Claimants who
18   submit a valid, timely Claim Form, (*see* Settlement Agreement, Ex. E), will receive
19   Voucher(s), which allow Class Members to elect to receive either (1) $6 off a purchase (no
20   minimum purchase) or (2) 25% off a purchase (of the first $100), at any of Defendant's
21   stores in the United States or online.  *Id.* at § 1.32.  Similar to the points system approved
22   in *JC Penney*, Claimants are eligible to receive multiple Vouchers under a tiered benefit
23   structure based upon the total dollar amount of the qualifying purchases they made during
24   the Class Period.  *Id.* at § 2.1.  For example, Claimants who spent less than $50 on qualified
25   purchases will receive 1 Voucher; those who spent between $50.01–150 will receive 2
26
27   _____

28   [1] All references to "Exhibit 1" refers to the Settlement Agreement attached to the Carpenter
     Declaration.

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

Vouchers; and those who spent over $150 will receive 3 Vouchers. *Id.* at §§ 2.1–2.2. Claimants seeking to qualify for Tier 2 are required to submit acceptable proof of purchase, unless they received direct notice. *Id.* § 2.1. Claimants seeking to qualify for Tier 3 are required to submit acceptable proof of purchase. *Id.* If the Voucher fund is exhausted in the first round of distribution, no 25% Vouchers will be distributed and Claimants will receive the pro rata value of the available Vouchers. *Id.* at 2.4.

Claimants have the ability to receive additional Vouchers if the Voucher Fund is not exhausted in the first round of distribution. *Id.* at § 2.3. In this scenario, if the number of Vouchers remaining after the initial distribution exceeds the amount that was initially distributed, then Claimants will receive additional Vouchers in the type and number they originally elected on their Claim Form. *Id.* Alternatively, if the number of Vouchers remaining is less than the total number initially distributed, then the final distribution will allow Claimants to receive a pro rata portion of the remaining $6 Voucher value. *Id.* The Vouchers will be issued to Class Members within thirty (30) days of the Final Settlement Date. *Id.* at § 2.5.

Like the gift cards offered in the *In re Online DVD-Rental* settlement, the Vouchers offered in this Settlement are an alternative to cash and are not "coupons" within the meaning of CAFA. *See In re Online DVD-Rental Antitrust Litigation,* 779 F.3d 934, 951 (9th Cir. 2015). The Vouchers are redeemable for a six-month period upon receipt, are fully transferrable, stackable if used at the $6 value, and may be used in connection with any promotion or discount. Ex. 1 at § 1.32. The Vouchers provide a real benefit to Class Members for use at a retailer like The Children's Place, which sells fashionable merchandise at value prices. Carpenter Decl., at ¶ 12. For example, as of the date of this motion, Defendant's online store offers for sale a variety of girls t-shirts for $3.99–9.75, toddler leggings for $4.47–6.57, baby onesies for $4.97, and jeans for $7.99[2]. Class

---

[2] *See generally,* The Children's Place, www.childrensplace.com/shop/us/home, last accessed September 8, 2017.

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

Members "need not spend any of his or her own money and can choose from a large number of potential items to purchase." *In re Online DVD-Rental*, 779 F.3d at 951.

### 2.   Notice Plan and Claims Process

Defendant retained Kurtzman Carson Consultants LLC ("KCC") to serve as the Claims Administrator. Ex. 1 at § 1.6.  Within sixty (60) days after preliminary approval, Defendant and KCC will send Email Notice to Class Members and will implement an Online Media Notice program through the Google Display Network. *Id.* at § 3.3.  KCC will also establish and administer a Settlement Website from which Class Members can gather information about the Settlement and can: 1) view the Full Notice, Claim Form, Complaint, Settlement Agreement, Preliminary Approval Order, and Motion for Attorneys' Fees and Costs; and 2) electronically submit a Claim Form and valid proof of purchase if necessary. *Id.* at §§ 3.3, 3.6. Moreover, within ten (10) calendar days after this motion and executed Settlement Agreement is filed, Defendant served upon relevant government officials notice of the proposed settlement in accordance with the CAFA Notice provisions set forth 28 U.S.C. § 1715. *Id.*, at § 3.4.

No later than 120 days after preliminary approval, Class Members must submit valid Claim Forms via U.S. Mail or electronically on the Settlement Website. *Id.* at § 1.28, 3.6. Class Members who fail to elect the form of the Voucher will be deemed to have requested a $6 Voucher. *Id.* at § 3.6.

### 3.   Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Incentive Awards

Defendant agrees to bear the costs of administering notice to the Class in an amount not to exceed $1,000,000, and to pay Class Counsel's attorneys' fees, costs, and Plaintiffs' incentive awards. *Id.* at § 2.6–2.7, 2.10. In connection with final approval, Plaintiffs will make an application for incentive awards not to exceed $2,500 each and Class Counsel will make an application for a fee and costs award not to exceed $1,080,000. *Id.* at 2.6–2.7. Unless otherwise ordered by the Court, Defendant will make such Court-approved payments within 10 days after the Final Settlement Date and upon receiving Plaintiffs' and Class Counsel's W-9 forms. *Id.*

## IV. **THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE**

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

Approval of class action settlement "involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (internal citations and quotation marks omitted). At the preliminary approval stage, the focus is simply on whether the settlement is "within the range of possible judicial approval." *In re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. Apr. 13, 2009) (citations and quotation marks omitted). Accordingly, the court need not scrutinize every detail of the settlement at this juncture, since "class members will subsequently receive notice and have an opportunity to be heard" at the time before final approval. *Id.*; *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

The standard inquiry the trial court explores is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Accordingly, the court does not have "the ability to delete, modify or substitute certain provisions." *Id.* (citing *Officers for Justice*, 688 F.2d at 630). In other words, the "settlement must stand or fall in its entirety." *Id.*

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted) (emphasis added). For the reasons set forth in detail below, the proposed Settlement is fundamentally fair, adequate, and reasonable—falling squarely into the range of preliminary approval.

### A. The Settlement is a Product of Serious, Arms-Length Negotiations

The Ninth Circuit cautions that the trial court's evaluation of the parties' agreement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). This Circuit "does ***not*** follow the approach of other circuits that requires district courts to 'specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter.'" *Spann v. JC Penney Corp. ("Spann II")*, 314 F.R.D. 312, 323–24 (C.D. Cal. 2016) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Rather, "[t]his circuit has long deferred to the private consensual decision of the parties." *Rodriguez,* 563 F.3d at 965. Perhaps the most critical inquiry to the assist the court

is determining whether the settlement is "the product of an arms-length, non-collusive, negotiated resolution." *Id.* If the answer is yes, courts will presume the settlement is fair and reasonable. *Spann II*, 314 F.R.D. at 324. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, there is no evidence that this Settlement was founded in collusion or fraud. Rather, agreement was reached after hosting numerous informal settlement discussions that evaluated the strengths and weaknesses of the case, informal pre-mediation discovery, and two full-day private mediation sessions facilitated by a highly-experienced mediator, Hon. Edward A. Infante (Ret.). Carpenter Decl., at ¶ 4. Plaintiffs also consulted economist Christian Tregillis to analyze consumer behavior as applied to price discounting and to assess whether there is an available methodology to estimate compensatory damages suffered by the Class as a result of Defendant's conduct. *Id.* at ¶ 5. Mr. Tregillis generated a comprehensive expert report outlining his proposed damages theory, which effectively assisted the Parties in continuing settlement discussions and in contemplating a subsequent round of mediation. *Id.* at ¶ 6. Even after the Parties concluded the first mediation, Class Counsel continued to investigate Defendant's practices in stores outside of California, confirmed that the deceptive pricing scheme was likely occurring nationwide, and was able to get retained by clients in various other states such as, Florida and New York. *Id.* at ¶ 9. In addition, both parties were represented by counsel highly-experienced in complex class litigation, which lent to the careful consideration of all strengths and weaknesses in order to achieve efficient resolution. *Id.* at ¶ 13. Thus, the Parties were well-versed with the relevant law, the challenges present in calculating damages on a class-wide basis, and the risks of continued litigation and recovery. Accordingly, all evidence indicates that this Settlement was ***not*** "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314 F.R.D. at 324–25.

///

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

**B.     The Settlement Falls Within a Range of Possible Judicial Approval**

This Settlement provides significant relief to the Class and clearly falls within the range of possible judicial approval.  "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.  "As the Ninth Circuit has noted, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Spann II*, 314 F.R.D. at 325 (quoting *Officers for Justice*, 688 F.2d at 624).

Here, the Settlement provides that The Children's Place will distribute a maximum of 800,000 Vouchers to Class Members.  Ex. 1 at § 1.33.  Vouchers allow Class Members to elect to receive either (1) $6 off a purchase (no minimum purchase) or (2) 25% off a purchase (of the first $100), at any of Defendant's stores in the United States or online.  *Id.* at § 1.32.  As addressed in Section III.B.1, Class Members have the ability to claim up to three (3) Vouchers depending upon the amount of money spent at The Children's Place during the Class Period, and also have the potential of earning additional Vouchers in a subsequent round of distribution. *Id.* at § 2.3. If we calculate the total fund based upon an election of the $6 Voucher, this creates a potential Settlement Fund of at least $4.8 million. If calculated based upon the coupon of 25% off the first $100 spent, this creates a potential Settlement Fund of $20 million.[3]  This Settlement benefit is expected to provide Class Members with "sufficient compensation" to purchase at least one, if not a few, items at The Children's Place.  *See Spann II*, 314 F.R.D. at 325.

This recovery is significant not only because of the valuable benefit obtained for the Class, but also because Plaintiffs would have faced a significant risk in litigating this case through trial.  "Even if plaintiff were to prevail at trial, there is a very real risk that plaintiff could recover nothing."  *Spann II*, 314 F.R.D. at 326; *see e.g., In re Tobacco Cases II*, 2015

---

[3] This calculation is based upon the hypothetical that each Class Member claims the 25% off coupon and spends at least $100 to receive a $25 benefit.

MEM. OF P's & A's ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

WL 5673070, at *5–9 (Cal. App. Sept. 28, 2015) (declining to award restitution because plaintiffs failed to establish a price/value differential despite prevailing on liability under the UCL and FAL); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).  While Plaintiffs feel confident about the merits of their case, the state of the law regarding the appropriate method for calculating damages or restitution in these type of false pricing cases is in flux. *See e.g., Stathakos v. Columbia Sportswear Company*, No. 15-cv-4543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017) (granting summary judgment in favor of defendants with regard to plaintiffs' three proposed measures of restitution); *accord Jacobo v. Ross Stores, Inc*., 2017 WL 3382053, at *1 (C.D. Cal. Aug. 2, 2017); *Chowning v. Kohl's Dep't Stores, Inc*., 2016 WL 1072129, at *12 (C.D. Cal. Mar. 15, 2016). In sum, in light of the risks presented by protracted litigation, the Settlement provides the Class a "guaranteed, fixed, immediate, and substantial recovery" and is thus, within the range of possible judicial approval.  *See Spann II*, 314 F.R.D. at 327.

### C.    The Settlement Has No Obvious Deficiencies

"Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability." *Newberg on Class Actions* § 13:15, at p. 326 (5th ed. 2014); *see e.g., Fraser v. Asus Computer Int'l*, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval where settlement provided "nationwide blanket release" in exchange for payment "only on a claims-made basis," without establishment of a settlement fund or any other benefit to the class).

Class Members who do not timely exclude themselves from the Settlement will be deemed to have released Defendant from claims related to the instant litigation.  Ex. 1 at §§ 1.10, 2.11.  Although these provisions release both known "Class Released Claims" and "Unknown Claims," the Release is limited to a universe of claims "arising out of or relating

- 11 -

to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint, or any preceding version thereof filed in the Action, including, but not limited to, any and all claims related in any way to the advertisement of prices by The Children's Place, Inc. or any of its subsidiaries or affiliates." *Id.* at § 1.10. Since the Release is limited to the scope of the litigation, it is fair and adequate for preliminary approval. *See e.g., Spann II,* 314 F.R.D. at 327–28 ("With this understanding of the release, *i.e.*, that it does not apply to claims other than those related to the subject matter of the litigation, the court finds that the release adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality.); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126 (E.D. Cal. 2009) ("These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants."). Accordingly, the Settlement has no obvious defects.

### D. The Settlement Does Not Grant Preferential Treatment Over Class Representatives or Segments of Class Members

The Settlement Agreement authorizes each named Plaintiff to seek an Individual Settlement Award in an amount no greater than $2,500 for their service to the Class in bringing the lawsuit. Ex. 1 at § 2.6. Importantly, the Plaintiffs' incentive awards are to be paid separate and apart from the Class award, and any reduction of the incentive awards by the Court shall not affect the rights and obligations under the Settlement. *Id.*, at § 2.8.

The Ninth Circuit recognizes that service awards given to named plaintiffs are "fairly typical" in class actions. *Rodriguez,* 563 F.3d at 958. Incentive awards serve "to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. In evaluating whether the Settlement grants preferential treatment to Plaintiffs, "the court must examine whether there is a 'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann II*, 314 F.R.D. at

MEM. OF P's & A's ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)). In arriving at such determination, courts will consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, the requested awards are unlikely to create a conflict of interest between named Plaintiffs and absent Class Members because the Settlement Agreement will remain in full force and effect, notwithstanding any reduction of the awards. *See Spann II*, 314 F.R.D. at 328–29. Ms. Rael and Hedrick's awards were not predicated on the existence of any special treatment. Carpenter Decl., at ¶ 14. The basis for such awards is purely to compensate Plaintiffs for their efforts in initiating the lawsuit, staying abreast of all aspects of the litigation, and fairly and adequately protecting the interests of the absent class members. *Id.*, at ¶ 15. Thus, the awards do not constitute preferential treatment over Plaintiffs.

Most importantly, even though $2,500 represents more than the individual share that each absent Class Member will receive from the Settlement, it is also unlikely that this rises to the level of unduly preferential treatment. *See Spann II*, 314 F.R.D. at 329. Only two Class Representatives will, at most, seek $2,500 each, representing only 0.001% of the potential $4.8 million total Class Settlement amount (if calculated based off the $6 Voucher election). This amount is undoubtedly reasonable considering its miniscule proportion to the overall settlement fund. *See e.g., id.* at 328–29 (approving a $10,000 plaintiff incentive award which made up only 0.02% of the total $50 million settlement fund); *In re Online DVD-Rental*, 779 F.3d at 947–48 (approving nine plaintiff incentive awards of $5,000 which made up only .17% of the total settlement fund); *Cf. Staton*, 327 F.3d 938 (reversing approval of incentive awards that made up roughly 6% of potential $14.8 million settlement fund). Accordingly, the Settlement does not grant preferential treatment of Plaintiffs Rael and Hedrick over the rest of the Class.

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

## V.    THE PROPOSED CLASS SHOULD BE PROVISIONALLY CERTIFIED FOR SETTLEMENT PURPOSES

The Ninth Circuit recognizes the propriety of certifying a settlement class to resolve consumer lawsuits. *See Hanlon*, 150 F.3d at 1019.  At the preliminary approval stage, the Court's threshold task is to determine whether the proposed class satisfies the Rule 23(a) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and the requirements set forth in Rule 23(b)(3). *Id.*, *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Here, when ruling on class certification in the settlement context, the court need not explore the issue of manageability, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  Here, provisional certification of the proposed Class for purposes of the Settlement is warranted because Plaintiffs satisfy all requirements set forth in Rule 23.

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

#### 1.    Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009); *see also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) ("impracticability" exists where there is a "difficulty or inconvenience of joining all members of the class"). "In determining whether numerosity is satisfied, the court may consider reasonable inferences drawn from the facts before it." *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 558 (S.D. Cal. 2013.) Numerosity is clearly established here.  The Parties conducted pre-mediation discovery and investigation, wherein Defendant agreed to not dispute numerosity for purposes of settlement. Carpenter Decl., ¶ 3. Accordingly, because the Class Members are certainly too numerous to join as plaintiffs, the numerosity requirement is met.

#### 2.    Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The inquiry regarding commonality involves whether Plaintiffs can show a common contention such that "determination of its truth or falsity

- 14 -

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. "District courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL and UCL." *Spann v. J.C. Penney Corp. ("Spann I")*, 307 F.R.D. 508, 518 (C.D. Cal. 2015), *citing Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

Here, the proposed Class Members each suffered the same injury: they all purchased exclusive, branded merchandise from The Children's Place (whether at the retail store, outlet store, or online) that was subjected to Defendant's alleged false price discounting scheme. *See* TAC at ¶¶ 9, 45. Thus, Class Members' claims involve the same alleged misrepresentations (i.e. an advertised discount from a "regular" or "original" price) as applied to items with the same common characteristics (i.e. Children's Place exclusive branded merchandise). *See Spann I*, 307 F.R.D. at 518. Moreover, Class Members share several additional common questions of law and fact, including: (1) whether Defendant's deceptive discount pricing scheme violates the UCL, the FAL, and the CLRA; (2) whether Defendant used false "price tag" or "original" price labels and falsely advertised price discounts on its Children's Place branded products sold in its retail and outlet stores; (3) whether Defendant's advertised "price tag" or "original" prices were the prevailing market prices for the respective Children's Place branded products during the 90 days preceding dissemination and/or publication of the advertisement; and (4) whether Class Members are entitled to damages and/or restitution and the proper measure of such loss. TAC at ¶ 45; *see e.g., Spann I*, 307 F.R.D. at 518. These common questions regarding whether The Children's Place "original" or "regular" prices are false and misleading are undoubtedly susceptible to common proof which will drive common answers for each Class Member. *See e.g., Spann II*, 314 F.R.D. at 321. Thus, the commonality requirement is readily satisfied.

- 15 -

### 3.      Typicality

Typicality is satisfied if the class representatives' claims or defenses are typical to those of the Class. Fed. R. Civ. P. 23(a)(3). The Ninth Circuit applies the typicality requirement liberally: "representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The "typicality" requirement is essential to ensure that the claims of the class representative is aligned with those of the class as a whole. *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* As addressed immediately above, Plaintiffs Rael and Hedrick's claims are typical to those of the Class because they are based upon the same facts and the same legal and remedial theories as those of the Class. *See Spann I*, 307 F.R.D. at 519.

### 4.      Adequacy

Adequacy is satisfied if the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit utilizes two questions to determine legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs Rael and Hedrick are adequate class representatives because they share the common goal to pursue truthful advertising regarding retailer's sale discount pricing practices. *See Hoffman v. Dutch LLC*, 317 F.R.D. 566, 574–75 (S.D. Cal. 2016). There is no evidence in the record that either Plaintiff harbors any interests antagonistic to the interests of the Class. Carpenter Decl., at ¶ 16. Plaintiffs have stayed abreast of the proceedings thus far and if necessary, would sit for depositions and participate in discovery. *Id.* Further, Class Counsel are experienced consumer class action attorneys, have litigated many cases involving UCL, FAL, and CLRA claims, and have vigorously investigated and

- 16 -

1   prosecuted this case since its inception.  Carpenter Decl., at ¶ 17. Therefore, the adequacy

2   requirement is satisfied.

3         **B.**      **The Proposed Settlement Class Satisfies Rule 23(b)**

4         Class actions under Rule 23(b)(3) must also satisfy the following two requirements,

5   which are commonly referred to as "predominance" and "superiority," respectively: (1)

6   "the questions of law and fact common to class members predominate over any questions

7   affecting only individual members, and" (2) "that a class action is superior to other

8   available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

9   23(b)(3). Plaintiffs have satisfied both of these requirements.

10        **1.**      **Common Questions Predominate**

11        Predominance inquires "whether proposed classes are sufficiently cohesive to

12  warrant adjudication by representation."  *Hanlon*, F.3d at 1022 (*citing Amchem*, 521 U.S.

13  at 623).  Although predominance is inherently related to commonality in that it assumes a

14  prerequisite of common issues of law and fact, "Rule 23(b)(3) focuses on the *relationship*

15  between the common and individual issues." *Id* (emphasis added). Where the core question

16  driving the litigation "would require the separate adjudication of each class member's

17  individual claim or defense, a Rule 23(b) action would be inappropriate." *Zinser v. Accufix*

18  *Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal citation omitted).

19        The Ninth Circuit makes clear that since California consumer protection laws apply

20  a reasonable consumer standard, "relief under the UCL is available without individualized

21  proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

22  1020 (9th Cir. 2011), *abrogated on other grounds*.  "Similarly, because Plaintiff's other

23  claims under the FAL and CLRA rely on the same objective test, that is, whether members

24  of the public are likely to be deceived, these other claims also do not require individual

25  analysis of class members' injury." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568

26  (S.D. Cal. 2012) (internal quotation marks and citation omitted). "For the purposes of class

27  certification, it is sufficient that the alleged material omission was part of a common

28  advertising scheme to which the entire class was exposed." *Id.* (finding predominance

- 17 -

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

1  where the core of plaintiff's claims rested on the deceptive marketing of defendant's

2  heating pads, which failed to include an injury warning despite any variations in

3  packaging); *see also Spann I*, 307 F.R.D. at 521–22 (finding predominance where plaintiff

4  claimed defendant's pricing practices are likely to deceive consumers because they do not

5  reflect bona fide original prices).Where the "thrust of plaintiff's claim, which is that

6  defendant operated a systematic and pervasive unlawful price comparison policy,…

7  evidence of such a policy or scheme is common to all putative class members and

8  predominates over any individual facts or questions." *Spann I*, 307 F.R.D. at 522. Similar

9  to *Spann*, Plaintiffs' theory of liability is rooted in the allegation that The Children's Place

10  engaged in a scheme of deceptive discount pricing applied uniformly to all of Defendant's

11  merchandise.  TAC at ¶ 49.  Plaintiffs also allege that each class member was exposed the

12  same uniform pricing misrepresentations about the merchandise's "bona fide" regular price

13  and corresponding phantom discount, regardless of the product type or size of the discount.

14  *Id*.  "Further, for purposes of settlement, Class Members are not required to prove any

15  evidentiary or factual issues that could arise in litigation." *Maxin v. RHG & Co*., *Inc.,* 2017

16  WL 748143, at *4 (S.D. Cal. Feb. 27, 2017).  Here, similar to *Spann*, where "essential

17  questions at the heart of plaintiff's claims [are] common", these issues "would predominate

18  over any other individualized issues, largely due to the fact that plaintiff would rely almost

19  entirely on common evidence in the form of defendant's internal pricing guidelines . . . and

20  California sales data." *Spann II*, 314 F.R.D. at 322.

21  **2.    A Class Action is the Superior Method to Settle this Controversy**

22  Superiority examines whether the class action device "is superior to other available

23  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

24  In evaluating superiority, courts consider the following factors: "(A) the class members'

25  interests in individually controlling the prosecution or defense of separate actions; (B) the

26  extent and nature of any litigation concerning the controversy already begun by or against

27  class members; (C) the desirability or undesirability of concentrating the litigation of the

28  claims in the particular forum; and (D) the likely difficulties in managing a class action."

- 18 -

*Id.* "[T]he purpose of the superiority requirement is to assure that the class action is the most effective means for resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wollin*, 617 F.3d at 1175–76 (citation and internal quotation marks omitted). In the settlement context, manageability of the class action device is not a concern. *See Spann II*, 314 F.R.D. at 323 ("the other requirements of Rule 23(b)(3) such as the desirability or undesirability of concentrating the litigation of the claims in the particular forum and the likely difficulties in managing a class action, are rendered moot and irrelevant"); *see also Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Accordingly, because each Class Members' claim is common to the class and relatively small in amount, a class action is the superior method for efficiently adjudicating Plaintiffs' claims.

## VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Rule 23(e) requires the trial court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). This requirement contemplates that class notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Toys R Us*, 295 F.R.D. at 448 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A class action settlement notice is deemed "satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "However, Rule 23(e) 'does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

those claims.'" *In re Online DVD-Rental*, 779 F.3d at 946 (citing *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)).

The content of the Full Notice, Email Notice, and Online Media Notice provides sufficient information to satisfy these standards. *See* Exhibits B, C, and D to the Settlement Agreement. Each Notice clearly and conspicuously: identifies who is a Class Member; describes the factual background of the litigation and the Parties to the action; outlines Class Members' legal rights, including the right to either participate in the Settlement, exclude themselves, or object, and deadlines to pursue each available course of action; provides the amount of the benefit and details of the relief; states the amount of attorneys' fees and Plaintiffs' incentive awards requested by Class Counsel; and sets forth the contact information of the Claims Administrator. *See generally*, *id*. The Full Notice includes a table of contents modeled in a "frequently asked questions" format and includes answers to questions such as, "How do I know if I am part of the Settlement," "What is the difference between excluding myself and objecting to the Settlement," and "How can I get a Voucher or Vouchers?" *See* Settlement Agreement, Exhibit B. This format constitutes adequate notice in that it is conducive to providing essential Settlement information to the Class. *See 4 Newberg on Class Actions* § 11:53, at p. 167 (4th ed. 2013) ("[N]otice is adequate if it may be understood by the average class member.").

Moreover, the method of providing notice to Class Members is adequate and reasonably likely to ensure all claimants are apprised of the Settlement terms and given an opportunity to be heard. Within sixty (60) calendar days after entry of this Order, the following Notice will disseminate to the Class: KCC will post the Full Notice on the Settlement Website where it will remain until at least the Final Settlement Date; Defendant will provide Email Notice to those Class Members for whom it has valid email addresses and will provide the Settlement Website address, along with KCC's contact information; and KCC will implement the Online Media Notice program through Google Display Network. Ex. 1 at § 3.3. These forms of Notice constitute "the best notice practicable" under the circumstances. *See e.g., Keirsey v. eBay, Inc.*, No. 12-cv-1200-JST, 2014 WL

644697, at *1–2 (N.D. Cal. Feb. 14, 2014) (finding that disseminating notice primarily through email, and supplemented with information on the class website and through internet news sources constituted a proper form and method of notice).

Accordingly, both "the procedure of providing notice and the content of the class notice constitute the best practicable notice to class members." *Spann II,* 314 F.R.D. at 332; *see also In re Online DVD-Rental*, 779 F.3d at 946 (describing adequate notice).

## VII.  PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS FOR SETTLEMENT PURPOSES

Plaintiffs also request that the Court designate Plaintiffs Monica Rael and Alyssa Hedrick as Class Representatives to implement the terms of the Settlement.  As detailed above, Plaintiffs will fairly and adequately represent and protect the interests of the Class.

Plaintiffs also seek to appoint Todd D. Carpenter of the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP ("Carlson Lynch") as Class Counsel for the Class.  In appointing Class Counsel pursuant to Rule 23(g), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). As set forth above, Carlson Lynch is highly experienced and knowledgeable in complex consumer class action litigation and well-equipped to vigorously and efficiently represent the proposed Class.  *See* Carpenter Decl., at ¶ 17.  Moreover, Class Counsel has expended a substantial amount of time investigating The Children's Place fraudulent sale discounting practices and researching the viability of Plaintiffs' claims for liability and damages.  *Id.* Accordingly, the Court should appoint Todd Carpenter of Carlson Lynch as Class Counsel for the Class.

///

///

///

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION

## VIII.    THE PROPOSED SCHEDULE OF EVENTS

Based on the date of entry of the Preliminary Approval Order and the date the Court sets for the Final Fairness Hearing, the following represents certain Settlement-related dates:

| Event | Timing |
|---|---|
| Last day for Defendant, through KCC, to send Email Notice, start operating Settlement Website, and begin to provide Online Media Notice | 60 days after entry of this Order |
| Last day for Plaintiffs to file fee petition | 90 days after entry of this Order |
| Last day for Class Members to file a claim, request exclusion or object to the Settlement | 120 days after entry of this Order |
| Last day for Parties to file briefs in support of the Final Order and Judgment | 10 days before Fairness Hearing |
| First day Final Fairness Hearing can be set | No earlier than 160 calendar days after entry of this Order |

## IX.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the instant unopposed motion for preliminary approval of class action settlement and all related requests therein.

Date: November 22, 2017

Respectfully submitted,

/s/ Todd D. Carpenter
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 762-1900
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff and Class Counsel*

MEM. OF P'S & A'S ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION