**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
Scott G. Braden (CA 305051)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff and Class Counsel*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RAEL and ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHILDREN'S PLACE, INC.,<br><br>Defendant. | Case No: 3:16-cv-00370<br><br>**CLASS ACTION**<br><br>**DECLARATION OF TODD D. CARPENTER IN SUPPORT OF PLAINTIFF'S AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**<br><br>Date: December 6, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D |

DECLARATION OF TODD D. CARPENTER ISO AMENDED UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION
3:16-cv-00370

I, TODD D. CARPENTER, declare:

1.    I am an attorney duly admitted to practice law before all courts of the State of California, and I am a shareholder in the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP for Plaintiffs and the Class herein. I make this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Provisional Class Certification. If called as a witness, I would and could testify to the following:

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement and Release ("Settlement Agreement") negotiated and entered into between the Parties on November 15, 2017.

3.    The Parties conducted pre-mediation discovery, wherein Defendant agreed not to dispute numerosity for purposes of settlement. I have personally been involved in the investigation and prosecution of this class action from its inception through the present, including conducting a thorough investigation into Defendant's pricing scheme at its stores several months before and after Plaintiffs' purchases.

4.    The Parties engaged in arm's-length settlement negotiations, including informal pre-mediation discovery and attending two full day mediation sessions with the Honorable Edward A. Infante (Ret.) of JAMS, Inc. on December 8, 2016 and April 19, 2017.

5.    At the first mediation session, Plaintiffs proffered the Expert Report of Christian Tregillis, CPA, ABV, CFF, CLP, an economist who substantiated Plaintiffs' damages theory and provided an opinion regarding the methodology that can be employed to calculate damages on a class-wide basis.  Attached hereto as Exhibit 2 is a true and correct copy of Mr. Tregillis' report.

6.    Mr. Tregillis generated a comprehensive expert report outlining his proposed damages theory, which effectively assisted the Parties in continuing settlement discussions and in contemplating a subsequent round of mediation.

- 1 -

7.    Mr. Tregillis examined at length the studied phenomenon that consumers are susceptible to advertised reference prices in product tagging and advertisements, and the effect on consumer willingness to purchase products with a high advertised reference price and lower offered sale price. Mr. Tregillis concluded that the maximum exposure at trial for purposes of computing damages was approximately 10% of the purported "sale price". This results in damages of approximately $0.50 to $2.50 per item for clothing sold at The Children's Place.

8.    The Parties did not reach a resolution after the first mediation session and remained at an impasse on numerous issues.

9.    Even after the Parties concluded the first mediation, Class Counsel continued to investigate Defendant's practices in stores outside of California, confirmed that the deceptive pricing scheme was likely occurring nationwide, and was retained by clients in various other states, including Florida and New York.

10.    After the second mediation session, the Parties reached an agreement as to the material terms of the Settlement and executed a Memorandum of Understanding in the following weeks thereafter.

11.    Each aspect of this Settlement was heavily negotiated, including the distribution scheme of the vouchers, and their specifications, such as expiration date and proof of purchase requirements.

12.    The vouchers provide a real benefit to Class Members for use at a retailer like The Children's Place, which sells fashionable merchandise at value prices. Hundreds of items are available for sale at less than the $6.00 voucher amount.

13.    Additionally, both parties were represented by counsel highly-experienced in complex class litigation, which lent to the careful consideration of all strengths and weaknesses in order to achieve efficient resolution.

14.    Ms. Rael and Hedrick's awards were not predicated on the existence of any special treatment.

- 2 -

DECLARATION OF TODD D. CARPENTER ISO AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION
3:16-cv-00370

15.     The basis for such awards is purely to compensate Plaintiffs for their efforts in initiating the lawsuit, staying abreast of all aspects of the litigation, and fairly and adequately protecting the interests of the absent class members.

16.     There is no evidence in the record that either Plaintiff harbors any interests antagonistic to the interests of the Class. Plaintiffs have stayed abreast of the proceedings thus far and if necessary, would sit for depositions and participate in discovery.

17.     Further, Class Counsel are experienced consumer class action attorneys, have litigated many cases involving UCL, FAL, and CLRA claims, and have vigorously investigated and prosecuted this case since its inception.

18.     I believe this Settlement was the result of effective arm's-length negotiations with the assistance of the Mediator, and only after gathering critical facts regarding Defendant's disputed sale discounting policies and practices. Plaintiffs recognize the expense, delay, risks and uncertainties associated with continued prosecution of this action through class certification, trial, and any subsequent appeals that could take several more years to litigate.

19.     Notice costs are presently estimated to be approximately $672,000.

I declare under penalty of perjury that the facts stated in this declaration are true and correct, and that this declaration was executed on October 25, 2019 in San Diego, California.

Date: October 31, 2019

Respectfully submitted,

*/s/    Todd D. Carpenter*

**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
Scott G. Braden (CA 305051)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff and Class Counsel*

- 3 -

DECLARATION OF TODD D. CARPENTER ISO AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION
3:16-cv-00370

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** ("*Settlement Agreement*" or "*Agreement*") is entered into by and between plaintiffs Monica Rael and Alyssa Hedrick, individually, and in their representative capacity on behalf of all others similarly situated ("*Plaintiffs*"), on the one hand, and defendant The Children's Place, Inc. ("*TCP*" or "*Defendant*"), on the other (collectively referred to as the "*Parties*" or singularly "*Party*").

### RECITALS

**A.**     On February 11, 2016, plaintiff Monica Rael ("Rael") filed a putative class action lawsuit against TCP asserting false and/or deceptive advertising claims based on allegations that TCP's advertisement of discounts on merchandise improperly leads consumers to believe that they are receiving a discount on their purchase.  Rael served TCP with the summons and complaint on or about March 4, 2016.

**B.**     Rael filed a first amended complaint on April 25, 2016. Rael then filed a second amended complaint on August 15, 2016 which, among other things, added plaintiff Alyssa Hedrick ("Hedrick") as a new plaintiff.

**C.**     Plaintiffs and TCP thereafter conducted an investigation of the facts and analyzed the relevant legal issues in regard to the claims asserted in the second amended complaint and TCP's potential defenses, including the production of documents and information by TCP.

**D.**     The Parties participated in two full day mediation sessions in San Diego, California before Hon. Edward A. Infante (ret.) of JAMS, Inc. on December 8, 2016 and April 19, 2017.

**E.**     As a result of the progress made at the mediation sessions and the subsequent discussions, the Parties have reached a Settlement of the Action (defined below), the terms of which are set forth in this Settlement Agreement.

**F.**     Plaintiffs and their Counsel believe that the claims asserted in the Complaint (defined below) have merit.  TCP has denied and continues to deny any and all allegations of wrongdoing alleged in the Action (defined below) and believes the claims asserted by Plaintiffs are without merit.  Nonetheless, the Parties have concluded that litigation could be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement in order to limit further expense, inconvenience, and uncertainty.  The Parties also have considered the uncertainties of trial and the benefits to be obtained under the proposed Settlement and have considered the costs, risks, and delays associated with the prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or TCP.

**G.**     It is now the intention of the Parties and the objective of this Settlement Agreement to avoid the costs of trial and settle and dispose of, fully and completely and forever, any and all claims and causes of action in the Action.

<strong>AGREEMENT</strong>

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, Plaintiffs, the Class and TCP, agree to Settlement of the Action, subject to Court approval, under the following terms and conditions.

**1.      DEFINITIONS.**  In addition to the definitions included in the Recitals above, and in later sections of the Agreement, the following shall be defined terms for purposes of this Settlement Agreement.  Some of the definitions in this section use terms that are defined later in the section. All defined terms are capitalized and listed in alphabetical order:

**1.1**      As used herein, the term "***Action***" means the lawsuit styled *Rael v. The Children's Place, Inc. et al*, Case No. 3:16-cv-00370-GPC-JMA (S.D. Cal.).

**1.2**  As used herein, the term "***Authorized Claimant***" means any Class Member who timely submits a complete and sufficient Claim Form according to the terms of this Settlement Agreement and does not validly request exclusion from the Class.

**1.3**  As used herein, the term "***Claim***" means a request made by a Class Member  in order to receive a Settlement Voucher pursuant to the procedures stated in Section 3.6.

**1.4**  As used herein, the term "***Claim Form***" means the form a Class Member must complete and submit to receive a Settlement Voucher under this Agreement.  The Claim Form must be substantially similar to the form attached as **Exhibit E.**

**1.5**  As used herein, the term "***Claimant***" means any Class Member who submits a Claim under this Agreement.

**1.6**  As used herein, the term "***Claims Administrator***" means Kurtzman Carson Consultants LLC, and any successors to that entity, that TCP designates (with approval from Class Counsel, whose approval shall not be unreasonably withheld), to administer the notice, claims, and Settlement relief distribution process provided for in the Settlement Agreement.

**1.7**  As used herein, the term "***Claims Administrator Costs***" means all costs incurred by the Claims Administrator, including the cost of providing notice to the Class and administering the Settlement.

**1.8**  As used herein, the terms "***Class***" and "***Class Members***" mean: All individuals in the United States who, within the Class Period, made a Qualifying Purchase.  Excluded from the Class are TCP's Counsel, TCP's officers, directors, and employees, and the judge presiding over the Action.

**1.9**  As used herein, the term "***Class Period***" means: February 11, 2012 through the date that the Court enters the Preliminary Approval Order.

**1.10** As used herein, the term "***Class Released Claims***" means all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature

whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have, arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint, or any preceding version thereof filed in the Action, including, but not limited to, any and all claims related in any way to the advertisement of prices by The Children's Place, Inc. or any of its subsidiaries or affiliates.

**1.11** As used herein, the term "*Class Releasors*" means Plaintiffs and all Class Members who do not timely and sufficiently request to be excluded from the proposed settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives.

**1.12** As used herein, the term "*Complaint*" means the Third Amended Complaint Plaintiffs shall seek permission to file and file in the Action no later than the filing of the motion for preliminary approval of the Settlement Agreement or thirty (30) calendar days after execution of the Settlement Agreement, whichever is earlier, asserting claims on behalf of themselves and the Class based on claims substantially similar to those in Plaintiffs' second amended complaint.

**1.13** As used herein, the term "*Court*" means the United States District Court for the Southern District of California.

**1.14** As used herein, the term "*Defendant*" means The Children's Place, Inc.

**1.15** As used herein, the terms "*Defendant's Counsel*" and "*TCP's Counsel*" means the law firm of Cooley LLP.

**1.16** As used herein, the term "*Email Notice*" means the legal notice summarizing the proposed Settlement terms, as approved by Class Counsel, TCP's Counsel, and the Court, to be provided to Class Members under Section 3.3 of this Settlement Agreement via electronic mail. The Email Notice must be substantially similar to the form attached as **Exhibit C**.

**1.17** As used herein, the term "*Fairness Hearing*" means the hearing(s) to be held by the Court to consider and determine whether the proposed Settlement of this Action as contained in this Settlement Agreement should be approved as fair, reasonable, and adequate, and whether the Final Order and Judgment approving the Settlement contained in this Settlement Agreement should be entered.

**1.18** As used herein, the terms "*Final Order*" and **"*Order Granting Final Approval of Class Settlement*"** mean the Court order granting final approval of the Settlement of this Action following the Fairness Hearing. The proposed Final Order that Plaintiffs submit to the Court for its approval must be substantially similar to the form attached as **Exhibit F**.

**1.19** As used herein, the term "*Final Settlement Date*" means two Court days after the Final Order and Judgment become "final." For the purposes of this section, "final" means after [i] thirty-one (31) calendar days after the entry of the Final Order and Judgment, if no timely motions for reconsideration and/or no appeals or other efforts to obtain review have been filed; or [ii] in the event that an appeal or other effort to obtain review has been initiated, the date after any and all such appeals or other review(s) have been finally concluded in favor of the Final Order and Judgment, any mandates have been returned to the Court, and the Final Order and Judgment is no

longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing en banc, petitions for certiorari, or otherwise.

**1.20** As used herein, the term "*Full Notice*" means the full legal notice of the proposed Settlement terms, as approved by Class Counsel, TCP's counsel, and the Court, to be provided to Class Members under Section 3.3 of this Settlement Agreement.  The Full Notice must be substantially similar to the form attached as **Exhibit B**.

**1.21** As used herein, the terms "*Judgment*" and *"Final Judgment"* mean a document labeled by the Court as such and that has the effect of a judgment under Fed. R. Civ. P. 54.  The proposed Judgment that Plaintiffs will submit to the Court for entry must be substantially similar to the form attached as **Exhibit G**.

**1.22** As used herein, the term "*Named Plaintiffs*" means Monica Rael and Alyssa Hedrick in their individual capacities only.

**1.23** As used herein, the term "*Online Media Notice*" means a legal notice directing Class Members to the Settlement Website, as approved by Class Counsel, TCP's Counsel, and the Court, to be provided to Class Members under Section 3.3 of this Settlement Agreement via the Internet.  The Online Media Notice must be substantially similar to the form attached as **Exhibit D**.

**1.24** As used herein, the terms "*Plaintiffs' Counsel*" and "*Class Counsel*" mean the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP.

**1.25** As used herein, the terms "*Preliminary Approval Order*" or "*Preliminary Approval and Provisional Class Certification Order*" mean the order provisionally certifying the Class for settlement purposes only, approving and directing notice, and setting the Fairness Hearing.  The proposed Preliminary Approval Order that Plaintiffs submit to the Court for its approval must be substantially similar to the form attached as **Exhibit A**.

**1.26** As used herein, the term "*Qualifying Purchase*" means a purchase of any product bearing a discount from TCP.

**1.27** As used herein, the term "*Released Parties*" means The Children's Place, Inc. and each of its direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with it, or any of them.

**1.28** As used herein, the term "*Response Deadline*" means the deadline by which Class Members must deliver Claim Forms, objections or requests for exclusion.  The Response Deadline shall be one hundred and twenty (120) calendar days after entry of the Preliminary Approval Order.  Thus, Class Members shall have sixty (60) days to deliver Claim Forms, objections or requests for exclusion.

**1.29** As used herein, the term "*Settlement*" means the Settlement of the Action and related claims effectuated by this Settlement Agreement.

**Settlement Agreement and Release**          Page 4 of 18

**1.30** As used herein, the term "*Settlement Website*" means the website that shall be created for settlement administration purposes and administered by the Claims Administrator.

**1.31** As used herein, the term "*Unknown Claims*" means with respect to the Class Released Claims only, Plaintiffs and the Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

As part of this agreement, Plaintiffs and the Class Members state that they fully understand that the facts on which the Settlement Agreement is to be executed may be different from the facts now believed by Plaintiffs and the Class Members and the Class Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that the Settlement Agreement will remain effective despite any difference in facts.  Further, Plaintiffs and the Class Members agree that this waiver is an essential and material term of this release and the settlement that underlies it and that without such waiver the Settlement would not have been accepted.

**1.32** As used herein, the term "*Voucher*" means a voucher good for a purchase either in a The Children's Place store in the United States or online at www.childrensplace.com, for (i) $6 off a purchase (no minimum purchase) or (ii) 25% off a purchase (of the first $100).  The Claim Form will provide a place for Class Members to identify the form of Voucher he or she wishes to receive. Vouchers will be valid for 6 months.  The $6 Vouchers are stackable with each other but may not be combined with any other coupon or promotional offer.  The 25% off Vouchers are not stackable, and may not be combined with any other coupon or promotional offer.  The Vouchers may be used on items that are on sale or otherwise discounted.  The Vouchers shall not be redeemable for cash, and will not be replaced if lost, stolen or damaged.  The Vouchers are transferable.

**1.33** As used herein, the term "*Voucher Fund*" means 800,000 Vouchers.

**2.    SETTLEMENT TERMS.**

**2.1  Tiers.** Authorized Claimants will be categorized into tiers based on the total dollar amount of their Qualifying Purchase(s) during the Class Period:

> **(a)**   Tier 1 Authorized Claimants:  A Tier 1 Authorized Claimant is one who does not submit any proof of Qualifying Purchase(s) with his or her timely and valid Claim Form or if the Qualifying Purchase(s) during the Class Period identified on a timely and valid Claim Form are less than $50.

> **(b)**   Tier 2 Authorized Claimants:  A Tier 2 Authorized Claimant  is one who has Qualifying Purchase(s) during the Class Period totaling $50.01–$150. Class Members are required to submit proof of Qualifying Purchase(s) totaling $50.01–$150 with a timely and valid Claim Form to qualify for Tier

2, unless they received direct notice pursuant to Paragraph 3.3(b).  Such persons only must complete a timely and valid Claim Form identifying Qualifying Purchase(s) totaling $50.01–$150.

**(c)**  Tier 3 Authorized Claimants:  A Tier 3 Authorized Claimant is one who has identified on his or her timely and valid Claim Form Qualifying Purchase(s) during the Class Period totaling more than $150 and submits proof of such purchase(s).

**2.2  Award to the Class.**  To each Authorized Claimant, TCP shall issue:

**(a)**  Tier 1 Authorized Claimants: one (1) Voucher.

**(b)**  Tier 2 Authorized Claimants: two (2) Vouchers.

**(c)**  Tier 3 Authorized Claimants: three (3) Vouchers.

**2.3**  If the Voucher Fund would not be exhausted in a single round of distribution, then additional subsequent rounds of Voucher distribution will occur pursuant to this subsection.

**(a)**  In each subsequent round of distribution, the number of Vouchers each Authorized Claimant receives shall be determined by his or her Tier as described in Section 2.1.

**(b)**  If the number of Vouchers remaining in the Voucher Fund after a prior round of distribution is greater than the total number of Vouchers timely and validly claimed, then for the next round of distribution, Authorized Claimants will receive additional Vouchers in the type and number they elected on their Claim Form.

**(c)**  However, if the number of Vouchers remaining in the Voucher Fund after a prior round of distribution is less than the total number of Vouchers timely and validly claimed, then for the next *and final* round of distribution, no 25% off Vouchers will be distributed.  Instead, all Authorized Claimants will receive a pro rata portion of the remaining Voucher value.  *i.e.*, for exemplar purposes only: if there are 10 Vouchers remaining after the last round of distribution and a total of 8 Tier 2 Authorized Claimants (4 that selected the 25% off Voucher and 4 that selected the $6 Voucher), then for the final round of distribution the 8 Authorized Claimants will each receive two additional $3.75 Vouchers.

**(d)**  The periods of expiry for each "round" of Voucher distribution shall be successive (*i.e.*, if the Vouchers to be distributed in the first "round" are valid between January 1, 2018 and June 30, 2018, those that are part of the second "round" would be valid from July 1, 2018 until December 31, 2018).

**2.4**  If the Voucher Fund would be exhausted by the first round of distribution, then this subsection applies.

**Settlement Agreement and Release**          Page 6 of 18

**(a)** All Vouchers distributed will only be redeemable for a dollar amount off a purchase; no 25% Vouchers will be distributed.

**(b)** The value of the Vouchers will be calculated on a pro rata basis. For instance, for exemplar purposes only, if there are 850,000 Tier 1 Authorized Claimants, the Voucher value will be $5.65 and the 850,000 Authorized Claimants will each receive one $5.65 voucher.

**(c)** The number of Vouchers each Authorized Claimant receives shall be determined by his or her Tier as described in Section 2.1

**2.5** If the Court approves the Settlement of this Action, TCP, through the Claims Administrator, shall distribute the Voucher Fund to the email address Authorized Claimants designated on their Claim Form within sixty (60) calendar days of the Final Settlement Date. Thus, although the periods of expiry are successive per "round," all Vouchers from the Voucher Fund will be distributed at once.

**2.6 Individual Settlement Award to Named Plaintiffs.** The Parties acknowledge that Named Plaintiffs must petition the Court for approval of any award to Named Plaintiffs for an incentive award (the "Individual Settlement Award"). Named Plaintiffs agree that they will not seek an Individual Settlement Award of greater than $2,500 each. TCP agrees not to object to Named Plaintiffs' request for an Individual Settlement Award of up to a maximum payment of $2,500 each. Named Plaintiffs further agree that, in any event, TCP will not be obligated to pay any Individual Settlement Award in excess of $2,500 for each Named Plaintiff. If the Court approves the Settlement of this Action and an Individual Settlement Award to Named Plaintiffs, TCP agrees to pay the award approved by the Court up to $2,500 for each Named Plaintiff within ten (10) calendar days after both of the following events occur (a) the Final Settlement Date, and (b) Named Plaintiffs provide TCP with their Form W-9s. No interest shall be paid on the Individual Settlement Award.

**2.7 Attorneys' Fees and Costs.** The Parties acknowledge that Plaintiffs must petition the Court for approval of any award to Class Counsel for attorneys' fees and costs. Plaintiffs and Class Counsel agree that Class Counsel will not seek an award greater than $1,080,000 (total) for fees and costs. TCP agrees not to object to Class Counsel's request for up to a maximum payment of $1,080,000 (total) for attorneys' fees and costs. Plaintiffs and Class Counsel further agree that, in any event, TCP will not be obligated to pay any award to Class Counsel and any and all Additional Counsel (defined below) in excess of $1,080,000 (total) for attorneys' fees and costs. If the Court approves the Settlement of this Action and an award of attorneys' fees and costs to Class Counsel, unless the Court orders a different timetable, TCP agrees to pay the attorneys' fees and costs approved by the Court up to $1,080,000 (total) to Class Counsel and any and all Additional Counsel upon the occurrence of both of the following events (a) the Final Settlement Date, and (b) Class Counsel delivery to TCP of the relevant Form W-9. Unless the Court orders a different timetable, any such payment shall be made within ten (10) calendar days of the occurrence of the later of these events and shall be made to the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP. Carlson Lynch Sweet Kilpela & Carpenter, LLP shall have control over and responsibility to distribute any payment of fees and costs to any other attorney or law

firm that may claim entitlement to fees and costs under this Settlement or as a result of the Action (each, and "Additional Counsel"). No interest shall be paid on the attorneys' fees and costs award.

**2.8 Reduction in Plaintiffs' Individual Settlement Awards or Class Counsel's Attorneys' Fees.** Plaintiffs' Individual Settlement Awards are to be paid separate and apart from the award to the Class. A reduction by the Court or by an appellate court of the Individual Settlement Awards sought by the Named Plaintiffs shall not affect any of the Parties' other rights and obligations under the Settlement Agreement. In the event that the Court does not award $1,080,000 in attorneys' fees and costs to Plaintiffs' Counsel, subject to the restrictions in this paragraph, the amount of the fee and cost reduction shall be made available to Authorized Claimants according to the following formula: for each $6 in attorneys' fees and costs not awarded to Plaintiffs' Counsel, an additional Voucher is available for distribution to the Authorized Claimants. Such Vouchers would be distributed to the Authorized Claimants according to the formula stated in Paragraphs 2.1-2.4. Unless otherwise ordered by the Court, such Vouchers will be distributed along with the Voucher Fund under Paragraph 2.5. However, in the event the following three conditions occur: [i] the Court awards less than $1,080,000 in attorneys' fees and costs, [ii] the Court rules that the Vouchers to be distributed under this paragraph are not to be distributed along with the Voucher Fund under Paragraph 2.5, and [iii] it would be economically or administratively infeasible to do a separate distribution of Vouchers in addition to the distribution under under Paragraph 2.5, then the attorneys' fees and costs that are not awarded will instead be subject to a *cy pres* distribution to the National Consumer Law Center.

**2.9 No Tax Liability.** Under no circumstances will TCP or TCP's Counsel have any liability for taxes or tax expenses under the Settlement. Plaintiffs and/or Class Counsel are responsible for any taxes on any recovery or award. Nothing in this Settlement, or statements made during the negotiation of its terms, shall constitute tax advice by TCP or TCP's Counsel.

**2.10 Settlement Implementation Costs.** TCP shall bear the costs of providing notice to the Class in the manner prescribed in Section 3.3 of this Settlement Agreement and the costs associated with independent administration of benefits by the Claims Administrator. The Parties agree, however, that the maximum amount of fees and costs associated with the Claims Administrator for administration costs, notice costs (including any paid Internet publication notice costs), and any other related costs (including, but not limited to, distribution) will not exceed $1,000,000. Plaintiffs agree that TCP will not be obligated to pay more than $1,000,000 for all claims administration costs, the cost of providing notice of the proposed Settlement to the Class, and all related costs (including, but not limited to, distribution).

**2.11 Release as to All Class Members.** Upon entry of the Judgment, Class Releasors shall waive and forfeit, and be deemed to have fully, finally and forever released and discharged all Class Released Claims (including Unknown Claims) against all Released Parties.

**2.12 Release by Named Plaintiffs.** In addition to the releases made by the Class Members set forth in Section 2.11 above, effective upon entry of the Judgment, Named Plaintiffs make the additional following general release of all claims, known or unknown. Upon entry of the Judgment, the Named Plaintiffs, and each of their successors, assigns, legatees, heirs, and personal representatives release and forever discharge the Released Parties, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements,

promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent.

In addition, Named Plaintiffs, and each of Named Plaintiffs' successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Named Plaintiffs fully understand that the facts on which the Settlement Agreement is to be executed may be different from the facts now believed by Named Plaintiffs and Plaintiffs' Counsel to be true and expressly accepts and assumes the risk of this possible difference in facts and agrees that the Settlement Agreement will remain effective despite any difference in facts. Further, Named Plaintiffs agree that this waiver is an essential and material term of this release and the settlement that underlies it and that without such waiver the Settlement would not have been accepted.

**2.13 No Admission of Liability or Wrongdoing.** This Settlement Agreement reflects the Parties' compromise and Settlement of disputed claims. Its constituent provisions, and any and all drafts, communications, and discussions relating thereto, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, matters respecting class certification) by any person, including TCP, and shall not be offered or received in evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission or concession. TCP has denied and continues to deny each of the claims and contentions alleged by Plaintiffs in the Action. TCP has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.

**3. CLASS SETTLEMENT PROCEDURES.**

**3.1 File Third Amended Complaint.** No later than the filing of the motion for preliminary approval of the Settlement Agreement or thirty (30) calendar days after execution of the Settlement Agreement, whichever is earlier, Plaintiffs shall seek permission to file and file the Third Amended Complaint ("Complaint"), in the Action asserting claims on behalf of themselves and the Class based on claims substantially similar to those in Plaintiffs' second amended complaint.

**3.2 Preliminary Approval and Provisional Class Certification.** Plaintiffs shall file their motion for preliminary approval of the Settlement Agreement as soon as feasibly possible, and in no event no later than five (5) Court days after the Complaint is filed. The motion for preliminary approval of the class action settlement and provisional class certification must request the Court to:

**(a)**    preliminarily approve this Settlement Agreement.

**(b)**    preliminarily approve the form, manner, and content of the Full Notice, Email Notice, Online Media Notice, and Claim Form described in Sections 3.3 and 3.6 of this Settlement Agreement, and attached as **Exhibits B - E**;

**(c)**    set the date and time of the Fairness Hearing;

**(d)**    provisionally certify the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, for settlement purposes only;

**(e)**    find that TCP has complied with 28 U.S.C. § 1715(b);

**(f)**    stay all proceedings in the Action against TCP until the Court renders a final decision on approval of the Settlement and sets a briefing schedule for the papers in support of the Final Order;

**(g)**    conditionally appoint Named Plaintiffs as the class representatives for settlement purposes only; and

**(h)**    conditionally appoint the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP as Class Counsel for settlement purposes only.

The proposed Preliminary Approval and Provisional Class Certification Order must be substantially similar to the form attached as **Exhibit A**.  Class Counsel must draft the motion papers and give TCP's Counsel drafts of the motion and proposed order to review at least ten (10) calendar days before the motion's filing and service date/deadline.  TCP shall be permitted, but not required, to file its own brief or statement of non-opposition in support of the Preliminary Approval and Provisional Class Certification Order.

**3.3  Class Notice.**  Subject to the Court entering the Preliminary Approval Order, the Parties agree that TCP and its retained Claims Administrator will provide the Class notice within sixty (60) calendar days after entry of the Preliminary Approval order:

**(a)**    **Settlement Website**.  The claims administrator will post the Full Notice on an Internet website ("Internet Posting") specifically created for the settlement of this Action.  The Full Notice will be substantially similar to the form attached as **Exhibit B**.  The Internet Posting will also contain the Claim Form, Complaint, Settlement Agreement, and Preliminary Approval Order.  Within seven (7) court days of when Class Counsel files a motion for attorneys' fees and costs, the Internet Posting will also post the fees and costs motion.  The Internet Posting shall be operative starting on or before sixty (60) calendar days after entry of the Preliminary Approval Order.  The Internet Posting shall remain active at least until the Final Settlement Date.

**(b)**    **Email Notice.**  TCP shall use reasonable efforts to identify those TCP customers who may be Class Members and for whom it has a valid email address.  Through the Claims Administrator, for those Class Members for

whom TCP has a valid email address, TCP will send an Email Notice to such Class Members.  The Email Notice will be substantially similar to the form attached as **Exhibit C**, and will provide the web address of the Settlement Website and an email and mailing address to contact the Claims Administrator. TCP, through the Claims Administrator, will provide the Email Notice on or before sixty (60) calendar days after entry of the Preliminary Approval Order.

**(c)**   **Online Media Notice**.  Unless otherwise ordered by the Court, within sixty (60) calendar days after entry of the Preliminary Approval Order, TCP, through the Claims Administrator, will start implementing an online notice program through the Google Display Network.  The text of the Online Media Notice will be substantially similar to the form attached as **Exhibit D**.

**3.4   CAFA Notice.**  Within ten (10) calendar days after this Settlement Agreement is filed with the Court, TCP shall serve upon relevant government officials notice of the proposed settlement in accordance with 28 U.S.C. § 1715.

**3.5   Proof of Notice.**  No later than ten (10) calendar days before the Fairness Hearing, TCP and the Claims Administrator will serve upon Class Counsel a declaration confirming that notice to the Class has been provided in accordance with Section 3.3 of this Settlement Agreement.

**3.6   Claims Procedure.**  Class Members must submit complete, valid and sufficient Claim Forms on or before the Response Deadline in order to be included in the distribution of the Vouchers. Class Members shall also be required to provide proof of Qualifying Purchase(s) as described in Section 2.  Any Class Member who fails to submit a valid and timely Claim Form will not receive any benefits under this Settlement Agreement.  Any Authorized Claimant who timely submits a valid Claim Form, but fails to clearly elect the form of Voucher desired (by, e.g., failing to elect either (i) $6 off a purchase (no minimum purchase,) or (ii) 25% off a purchase (of the first $100)), will be deemed to have requested a Voucher for $6 off a purchase (no minimum purchase).

**(a)**   **Date of Submission.**  The Claim Form may be submitted electronically or by postal mail.  The delivery date is deemed to be the date [i] the Claim Form is deposited in the U.S. Mail as evidenced by the postmark, in the case of submission by U.S. mail, or [ii] in the case of submission electronically through the Settlement Website, the date the Claims Administrator receives the Claim Form, as evidenced by the transmission receipt.

**(b)**   **Proof of Qualifying Purchase(s).**   Acceptable proof of Qualifying Purchases include [i] receipt(s) clearly showing the date of purchase(s) and the total of the purchase(s), [ii] online packing slips showing date of purchase(s) and the total of the purchase(s), or [iii] transaction date from a credit or debit card clearly showing the date of purchase(s) and the total of the purchase(s). Copies of such documents must be attached to the Claim Form whether submitted electronically or by postal mail.

**3.7  Right to Verify.**  The Claims Administrator and/or TCP may review all submitted Claim Forms and proof of Qualifying Purchase(s) for completeness, validity, accuracy, and timeliness, and may contact any Claimant to request additional information and documentation to determine the validity of any claim.  In addition, the Claims Administrator and/or TCP may verify that: [i] the information set forth in or attached to a submitted Claim Form is accurate; and [ii] the Claimant is a Class Member.

**3.8  Disputed Claims.**  If the Parties dispute a Claim Form's timeliness or validity, the Parties must meet and confer in good faith to resolve the dispute.  TCP's records shall have a strong presumption of accuracy, which may be rebutted by clear and convincing evidence.

**3.9  Objections.**  Any Class Member who has not submitted a timely written exclusion request pursuant to Section 3.10 of this Settlement Agreement and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, must deliver written objections to the Claims Administrator no later than the Response Deadline.

> **(a)**  The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark.  It shall be the objector's responsibility to ensure receipt of any objection by the Claims Administrator.

> **(b)**  Any written objections must contain: **(1)** the name and case number of the Action; **(2)** the Class Member's full name, address, and telephone number; **(3)** the words "Notice of Objection" or "Formal Objection"; **(4)** in clear and concise terms, the legal and factual arguments supporting the objection; **(5)** facts supporting the person's status as a Class Member (e.g., either any unique identifier included by the Claims Administrator in his/her Email Notice, or the date and location of his/her relevant purchases); **(6)** the Class Member's signature and the date; and **(7)** the following language immediately above the Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding class membership are true and correct to the best of my knowledge."

> **(c)**  Any Class Member who submits a written objection, as described in this section, has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees.  However, Class Members (with or without their attorneys) intending to make an appearance at the Fairness Hearing must include on a timely and valid objection a statement substantially similar to "Notice of Intention to Appear."  If an objecting Class Member intends to speak at the Fairness Hearing in support of the objection, the Class Member's objection must state this intention.  If the objecting Class Member intends to appear at the Fairness Hearing through counsel, he or she must also identify the attorney(s) representing the objector who will appear at the Fairness Hearing and include the

attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted. If the objecting Class Member intends to request the Court to allow the Class Member to call witnesses at the Fairness Hearing, such request must be made in the Class Member's written objection, which must also contain a list of any such witnesses and a summary of each witness's expected testimony. Only Class Members who submit timely objections including Notices of Intention to Appear may speak at the Fairness Hearing. If a Class Member makes an objection through an attorney, the Class Member will be responsible for his or her personal attorney's fees and costs.

**3.10 Exclusion from the Class.** Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement. To make this election, Class Members must send a signed letter or postcard to the Claims Administrator stating: (a) the name and case number of the Action; (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that he/she does not wish to participate in the Settlement, postmarked no later than the Response Deadline. TCP must serve on Class Counsel a list of Class Members who have timely and validly excluded themselves from the Class no later than seven (7) calendar days before the filing date for Plaintiffs' motion in support of the Final Order and Judgment.

**3.11 Final Order and Judgment.** Before the Fairness Hearing, Plaintiffs must apply for Court approval of a proposed Final Order and Judgment, substantially similar to the forms attached as **Exhibits F** and **G,** respectively. Subject to the Court's approval, the Final Order and Judgment shall, among other things:

**(a)** finally approve the Settlement Agreement as fair, reasonable and adequate;

**(b)** finally certify the Class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3);

**(c)** find that the notice and the notice dissemination methodology complied with the Settlement Agreement, Federal Rule of Civil Procedure 23, and the Due Process Clause of the United States Constitution;

**(d)** issue orders related to the relief provided for in the Settlement Agreement, including distribution of the Vouchers, payment of Plaintiffs' Individual Settlement Awards, and payment of Class Counsel's fees and costs;

**(e)** incorporate the releases set forth in the Settlement Agreement;

**(f)** dismiss the Action with prejudice; and

**(a)** retain jurisdiction over the Action and the Parties relating to the administration, consummation, and/or enforcement of the Agreement and/or the Final Order and Judgment, and for any other necessary purpose.

Class Counsel must also draft the motion papers and give TCP's Counsel drafts of the motion and proposed order to review at least ten (10) calendar days before the motion's filing and service

date/deadline.  TCP shall be permitted, but not required, to file its own brief or statement of non-opposition in support of the Final Order and Judgment.

**3.12 Judgment and Enforcement.**  The Parties agree that should the Court grant final approval of the proposed Settlement and enter Judgment, the Judgment shall include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of this Settlement Agreement.

## 4.        Nullification of Settlement Agreement.

**4.1  TCP's Right to Revoke.**  TCP has the right in its sole and exclusive discretion to terminate and withdraw from the Settlement at any time prior to the Fairness Hearing if: (a) the Court makes an order inconsistent with any of the terms of this Settlement (except for an order reducing the Class Counsel award or the Plaintiffs' Individual Settlement Award); or (b) any court following the signing of this Settlement Agreement but before the Fairness Hearing, certifies, whether on a conditional basis or not, a class, collective, or representative action involving a claim described in the Action by potential class members covered by this Settlement; or (c) more than one hundred (100) Class Members timely and validly opt out of the Settlement; or (d) Plaintiffs breach the Settlement Agreement.

**4.2  Effect of Agreement if Settlement Is Not Approved.**  This Settlement Agreement was entered into only for the purpose of Settlement.  In the event that Section 4.1 is invoked by TCP, the Court conditions its approval of either the Preliminary Approval Order or the Final Order and Judgment on any modifications of this Settlement Agreement that are not acceptable to all Parties, or if the Court does not approve the Settlement or enter the Final Order and Judgment, or if the Final Settlement Date does not occur for any reason, then this Agreement shall be deemed null and void *ab initio* and the Parties shall be deemed restored to their respective positions *status quo ante*, and as if this Agreement was never executed.  In that event (a) the Preliminary Approval Order and all of its provisions will be vacated by its own terms, including, but not limited to, vacating conditional certification of the Class, conditional appointment of Plaintiffs as class representative, and conditional appointment of Plaintiffs' Counsel as Class Counsel; (b) the Action will revert to the status that existed before the Plaintiffs filed their motion for approval of the Preliminary Approval Order (allowing TCP to, among other things, move to dismiss the Complaint and/or move to strike allegations contained therein); and (c) no term or draft of this Settlement Agreement, or any part of the Parties' settlement discussions, negotiations or documentation will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding.  If the Court does not approve the Settlement or enter the Final Order and Judgment for any reason, or if the Final Settlement Date does not occur for any reason, TCP shall retain all its rights to object to the maintenance of the Action as a class action, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action.

**5.    ADDITIONAL PROVISIONS**.

**5.1   Change of Time Periods.**  All time periods and dates described in this Settlement Agreement are subject to the Court's approval.  These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Class.

**5.2   Fair, Adequate, and Reasonable Settlement.**  The Parties believe this Settlement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.  This Settlement was reached after extensive negotiations, including two mediation sessions conducted with the assistance of former U.S. federal court Judge Infante.

**5.3   Real Parties in Interest.**  In executing this Settlement Agreement, the Parties warrant and represent that except as provided herein, neither the claims or causes of action released herein nor any part thereof have been assigned, granted, or transferred in any way to any other person, firm, or entity.

**5.4   Voluntary Agreement.**  This Settlement Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

**5.5   Binding on Successors.**  This Settlement Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

**5.6   Parties Represented by Counsel.**  The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Settlement Agreement by independent counsel of their own choosing, that they have read this Settlement Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Settlement Agreement and of its legal effect.

**5.7   Authorization.**  Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**5.8   Entire Agreement.**  This Settlement Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action.  This Settlement Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Settlement Agreement.

**5.9   Construction and Interpretation.**  Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Settlement Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them.  This Settlement Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

**5.10 Headings and Formatting of Definitions.**   The various headings used in this Settlement Agreement are solely for the convenience of the Parties and shall not be used to interpret this Settlement Agreement.  Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Settlement Agreement.

**5.11 Exhibits.**   The exhibits to this Settlement Agreement are integral parts of the Settlement Agreement and Settlement and are hereby incorporated and made a part of this Settlement Agreement as though fully set forth in the Settlement Agreement.

**5.12 Modifications and Amendments.**  No amendment, change, or modification of this Settlement Agreement or any part thereof shall be valid unless in writing signed by the Parties or their counsel.

**5.13 Governing Law.**  This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with the laws of the State of California, without regard to its conflict of law principles.

**5.14 Further Assurances.**  Each of the Parties hereto shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of its obligations hereunder to carry out the express intent of the Parties hereto.

**5.15 Agreement Constitutes a Complete Defense.**  To the extent permitted by law, this Settlement Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted in breach of or contrary to this Settlement Agreement.

**5.16 Execution Date.**  This Settlement Agreement shall be deemed executed upon the last date of execution by all of the undersigned.

**5.17 Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation, effectuation, and implementation of this Settlement Agreement.

**5.18 Counterparts.**  This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.  The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

**5.19 Recitals.**  The Recitals are incorporated by this reference and are part of the Settlement Agreement.

**5.20 Inadmissibility.**  This Settlement Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Settlement Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any court or tribunal in any state, territory, or jurisdiction.  Further, neither this Settlement

Agreement, the Settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession, or presumption that class certification is appropriate, except to the extent necessary to consummate this Settlement Agreement and the binding effect of the Final Order and Judgment.

**5.21 No Conflict Intended.** Any inconsistency between this Settlement Agreement and the attached exhibits will be resolved in favor of this Settlement Agreement.

**5.22 Disposal of the Class List.** Within six (6) months after the Final Settlement Date and completion of the administration, or in the event the Settlement is terminated pursuant to Section 4, after providing TCP's Counsel at least ten (10) calendar days advance notice of its invocation of this section, all originals, copies, documents, transcriptions, iterations, or drafts of the contact information for Class Members or any portion thereof shall be returned to TCP by the Claims Administrator.

**5.23 Notices.** Any notice, instruction, application for Court approval or application for Court orders sought in connection with the Settlement Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to TCP to the attention of TCP's Counsel, and if to Class Members to the attention of Class Counsel on their behalf.

| CLASS COUNSEL | TCP'S COUNSEL |
|---|---|
| Todd D. Carpenter, Esq.<br>CARLSON LYNCH SWEET KILPELA &<br>CARPENTER, LLP<br>1350 Columbia Street<br>Suite 603<br>San Diego, California 92101 | Michelle Doolin<br>COOLEY LLP<br>4401 Eastgate Mall<br>San Diego, CA 92121 |

**5.24 List of Exhibits:** The following exhibits are attached to this Settlement Agreement:

Exhibit A:  [Proposed] Preliminary Approval and Provisional Class Certification Order

Exhibit B:  Full Notice

Exhibit C:  Email Notice

Exhibit D:  Online Media Notice

Exhibit E:  Claim Form

Exhibit F:  [Proposed] Order Granting Final Approval of Class Settlement

Exhibit G:    [Proposed] Final Judgment

**IN WITNESS WHEREOF,** the Parties hereto, acting by and through their respective Counsel of record, have so AGREED.

Dated: 11-10-17

MONICA RAEL

Dated: _____

ALYSSA HEDRICK

Dated: _____

THE CHILDREN'S PLACE, INC.

By: _____
Its: _____

Exhibit G:     [Proposed] Final Judgment

**IN WITNESS WHEREOF,** the Parties hereto, acting by and through their respective Counsel of record, have so AGREED.

Dated: _____

Dated: _11/ 10 /17_ _____

MONICA RAEL

_Alyssa Hedrick_ _____
AL**Y**SSA HEDRICK

Dated: _____

THE CHILDREN'S PLACE, INC.

By: _____
Its: _____

Exhibit G:    [Proposed] Final Judgment

**IN WITNESS WHEREOF,** the Parties hereto, acting by and through their respective Counsel of record, have so AGREED.

Dated: _____

_____
MONICA RAEL

Dated: _____

_____
ALYSSA HEDRICK

Dated: __11/15/2017_____

THE CHILDREN'S PLACE, INC.

_____
By: __JANE ELFERS__
Its: __PRESIDENT & CEO__

**Settlement Agreement and Release**          Page 18 of 18

**EXHIBIT A**
**[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION**
**ORDER**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RAEL AND ALYSSA HEDRICK, on behalf of themselves and all others similarly situated, | Case No.  16CV0370-GPC-JMA |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION** |
| v. | |
| THE CHILDREN'S PLACE, INC., | |
| Defendant. | |

On _____ (month) ___ (day), 2017, this Court heard Plaintiffs Monica Rael and Alyssa Hedrick's ("Plaintiffs") motion for preliminary approval of class settlement and provisional class certification under Rule 23 of the Federal Rules of Civil Procedure.   This Court reviewed the motion, including the Settlement Agreement and Release ("Settlement Agreement").   Based on this review and the findings below, the Court finds good cause to grant the motion.[1]

**FINDINGS:**

**1.**   The Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations with defendant The Children's Place, Inc.

---

[1] Capitalized terms in this Order, unless otherwise defined, have the same definitions as those terms in the Settlement Agreement.

1.

**[PROPOSED] ORDER RE PRELIMINARY APPROVAL OF SETTLEMENT & PROVISIONAL CLASS CERTIFICATION**

("TCP") and falls within the range of possible approval as fair, reasonable and adequate. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (granting preliminary approval where the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval").

**2.** The Full Notice, Email Notice, Online Media Notice and Claim Form (attached to the Settlement Agreement), and their manner of transmission, comply with Rule 23 and due process because the notices and forms are reasonably calculated to adequately apprise Class Members of (i) the pending lawsuit, (ii) the proposed settlement, and (iii) their rights, including the right to either participate in the settlement, exclude themselves from the settlement, or object to the settlement.

**3.** For settlement purposes only, the Class is so numerous that joinder of all Class Members is impracticable.

**4.** For settlement purposes only, Plaintiffs' claims are typical of the Class's claims.

**5.** For settlement purposes only, there are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members.

**6.** For settlement purposes only, Class Certification is superior to other available methods for the fair and efficient adjudication of the controversy.

7. TCP filed a copy of the notice it gave on [Month] [Date], [Year] pursuant to 28 U.S.C. § 1715(b) and the notice complies with the requirements of 28 U.S.C. § 1715(b).

**IT IS ORDERED THAT:**

**1. Settlement Approval**. The Settlement Agreement, including the Full Notice, Email Notice, Online Media Notice and Claim Form, attached to the Settlement Agreement as Exhibits B-E are preliminarily approved.

2.

**[PROPOSED] ORDER RE PRELIMINARY APPROVAL OF SETTLEMENT & PROVISIONAL CLASS CERTIFICATION**

**2.      Provision of Class Notice**.  TCP will notify Class Members of the Settlement in the manner specified under Section 3.3 of the Settlement Agreement.

**3.      Claim for a Voucher or Vouchers**.  Class Members who want to receive a Voucher under the Settlement Agreement must accurately complete and deliver a Claim Form to the Claims Administrator, along with any required supporting proofs of purchase, no later than one hundred and one hundred twenty (120) calendar days after the entry of this Order.

**4.      Objection to Settlement**.  Class Members who have not submitted a timely written exclusion request pursuant to Paragraph 6 below and who want to object to the Settlement Agreement must deliver written objections to the Claims Administrator no later than one hundred twenty (120) calendar days after entry of this Order.  The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark.  The objection must include: **(1)** the name and case number of the Action; **(2)** the Class Member's full name, address, and telephone number; **(3)** the words "Notice of Objection" or "Formal Objection"; **(4)** in clear and concise terms, the legal and factual arguments supporting the objection; **(5)** facts supporting the person's status as a Class Member (e.g., either any unique identifier included by the Claims Administrator in his/her Email Notice, or the date and location of his/her relevant purchases); **(6)** the Class Member's signature and the date; and **(7)** the following language immediately above the Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding class membership are true and correct to the best of my knowledge."  Any Class Member who submits a written objection, as described in this section, has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees.  Class Members, or their attorneys, intending to make an appearance at the Fairness

3.

Hearing, however, must include on a timely and valid objection a statement substantially similar to "Notice of Intention to Appear." If the objecting Class Member intends to appear at the Fairness Hearing through counsel, he or she must also identify the attorney(s) representing the objector who will appear at the Fairness Hearing and include the attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted. If the objecting Class Member intends to request the Court allow the Class Member to call witnesses at the Fairness Hearing, such request must be made in the Class Member's written objection, which must also contain a list of any such witnesses and a summary of each witness's expected testimony. Only Class Members who submit timely objections containing Notices of Intention to Appear may speak at the Fairness Hearing.

**5.     Failure to Object to Settlement.** Class Members who fail to object to the Settlement Agreement in the manner specified above will: (1) be deemed to have waived their right to object to the Settlement Agreement; (2) be foreclosed from objecting (whether by a subsequent objection, intervention, appeal, or any other process) to the Settlement Agreement; and (3) not be entitled to speak at the Fairness Hearing.

**6.     Requesting Exclusion**. Class Members who want to be excluded from the Settlement must send a signed letter or postcard to the Claims Administrator stating: (a) the name and case number of the Action; (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that the person does not wish to participate in the Settlement, postmarked no later than one hundred and twenty (120) calendar days after entry of this Order.

**7.     Provisional Certification**. The Class is provisionally certified as a class of all individuals in the United States who, within the Class Period, made a Qualifying Purchase. The term "Qualifying Purchase" means a purchase of any product bearing a discount from TCP. The term "Class Period" means: February 11, 2012 through the date of entry of this Order. Excluded from the Class are

4.

Defendant's Counsel, Defendant's officers, directors, and employees, and the judge presiding over the Action.

**8.** **Conditional Appointment of Class Representatives and Class Counsel**. Plaintiffs Monica Rael and Alyssa Hedrick are conditionally certified as the Class representatives to implement the Parties' settlement in accordance with the Settlement Agreement. The law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP is conditionally appointed as Class Counsel. Plaintiffs and Class Counsel must fairly and adequately protect the Class's interests.

**9.** **Termination**. If the Settlement Agreement terminates for any reason, the following will occur: (a) Class Certification will be automatically vacated; (b) Plaintiffs will stop functioning as Class representatives; (c) Class Counsel will stop functioning as Class Counsel; and (d) this Action will revert to its previous status in all respects as it existed immediately before the Parties executed the Settlement Agreement, with the exception of Plaintiffs' filing of the Third Amended Complaint. This Order will not waive or otherwise impact the Parties' rights or arguments.

**10.** **No Admissions.** Nothing in this Order is, or may be construed as, an admission or concession on any point of fact or law by or against any Party.

**11.** **Stay of Dates and Deadlines.** All discovery and pretrial proceedings and deadlines, are stayed and suspended until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

**12.** **CAFA Notice.** The Court finds that TCP has complied with 28 U.S.C. § 1715(b).

**13.** **Further Procedures.** Counsel for the Parties are hereby authorized to agree to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the terms of the Agreement.

5.

**[PROPOSED] ORDER RE PRELIMINARY APPROVAL OF SETTLEMENT & PROVISIONAL CLASS CERTIFICATION**

**14.    Fairness Hearing.** On _____ (month) ___ (day), 2017, at _____, this Court will hold a Fairness Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate. Based on the date of this Order and the date of the Fairness Hearing, the following are the certain associated dates in this Settlement:

| Event | Timing | Date |
|---|---|---|
| Last day for Defendant, through the Claims Administrator, to send Email Notice, start operating Settlement Website & begin to provide Online Media Notice | 60 days after entry of this Order | |
| Last day for Plaintiffs to file fee petition | 90 days after entry of this Order | |
| Last day for Class Members to file a claim, request exclusion or object to the Settlement | 120 days after entry of this Order | |
| Last day for Parties to file briefs in support of the Final Order and Judgment | 10 days before Fairness Hearing | |

This Court may order the Fairness Hearing to be postponed, adjourned, or continued. If that occurs, the updated hearing date shall be posted on the Settlement Website but other than the website posting TCP will not be required to provide any additional notice to Class Members.

DATED:_____        _____

                                                U.S. DISTRICT COURT JUDGE

[PROPOSED] ORDER RE PRELIMINARY APPROVAL OF SETTLEMENT & PROVISIONAL CLASS CERTIFICATION

**EXHIBIT B**
**FULL NOTICE**

**Settlement Agreement and Release**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MONICA RAEL AND ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,**<br>**v.**<br>**THE CHILDREN'S PLACE, INC.** | No. 16CV0370-GPC-JMA |

## IF YOU SHOPPED AT ANY U.S. THE CHILDREN'S PLACE STORE OR ONLINE AT CHILDRENSPLACE.COM BETWEEN FEBRUARY 11, 2012 AND [MONTH] [DAY], [YEAR], YOU MAY BE ELIGIBLE TO RECEIVE VOUCHERS OF VARIOUS VALUES, SUCH AS, E.G., $6, $12, OR $18, USABLE AT THE CHILDREN'S PLACE ON FUTURE PURCHASES.

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

A settlement ("Settlement") has been proposed in the class action lawsuit referenced above pending in the United States District Court for the Southern District of California ("Action"). If the Court gives final approval to the Settlement, The Children's Place, Inc. ("TCP") will provide, for each Class Member who properly and timely completes and submits a Claim Form one or more Vouchers good for a purchase either in a The Children's Place store in the United States or online at www.childrensplace.com, for (i) $6 off a purchase (no minimum purchase) or (ii) 25% off a purchase (of the first $100), subject to the additional conditions explained later in this notice.

Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a Voucher under the Settlement.<br><br>Visit the Settlement website located at _____ to obtain a Claim Form. | Deadline:<br>_____ |

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **EXCLUDE YOURSELF** | If you exclude yourself from the Settlement, you will not receive a Voucher under the Settlement. Excluding yourself is the only option that allows you to bring or maintain your own lawsuit against TCP regarding the allegations in the Action ever again. | Deadline: _____ |
| **OBJECT** | You may write to the Court about why you object to (i.e., don't like) the Settlement and think it shouldn't be approved.  Submitting an objection does not exclude you from the Settlement. | Deadline: _____ |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, the request for attorneys' fees and costs of the lawyers who brought the Action, and the Representative Plaintiffs' request for service awards for bringing the Action.<br><br>You may, but are not required to, speak at the Fairness Hearing about any objection you filed to the Settlement.  If you intend to speak at the Fairness Hearing, you must also submit a "Notice of Intention to Appear" indicating your intent to do so. | Hearing Date and Time: _____ |
| **DO NOTHING** | You will not receive a Voucher under the Settlement.  You will also give up your right to object to the Settlement and you will be not be able to be part of any other lawsuit about the legal claims in this case. | N/A |

- These rights and options—**and the deadlines to exercise them**—are explained in more detail below.

- The Court in charge of this Action has preliminarily approved the Settlement and must decide whether to give final approval to the Settlement.  The relief provided to Class Members will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement. ***Please be patient.***

## WHAT THIS NOTICE CONTAINS

BACKGROUND INFORMATION ........................................................................ ##
   1.    Why did I get this notice?
   2.    What is this lawsuit about?

Settlement Agreement and Release

3.      Why is this a class action?

4.      Why is there a Settlement?

5.      How do I know if I am part of the Settlement?

6.      I'm still not sure if I am included.

**THE PROPOSED SETTLEMENT** ........................................................................ **##**

7.      What relief does the Settlement provide to the Class Members?

**HOW TO REQUEST A SETTLEMENT VOUCHER – SUBMITTING A CLAIM FORM** ............................................................................................................ **##**

8.      How can I get a Voucher or Vouchers?

9       When will I get my Voucher or Vouchers?

**THE LAWYERS IN THIS CASE AND THE REPRESENTATIVE PLAINTIFFS ##**

10.     Do I have a lawyer in this case?

11.     How will the lawyers be paid?

12.     Will the Representative Plaintiffs receive any compensation for their efforts in bringing this Action?

**DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS** .............................. **##**

13.     What am I giving up to obtain relief under the Settlement?

**HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT** .......................... **##**

14.     How do I exclude myself from the Settlement?

**HOW TO OBJECT TO THE SETTLEMENT** ........................................................ **##**

15.     How do I tell the Court that I disagree with the Settlement?

16.     What is the difference between excluding myself and objecting to the Settlement?

**FAIRNESS HEARING** ......................................................................................... **##**

17.     What is the Fairness Hearing?

18.     When and where is the Fairness Hearing?

19.     May I speak at the hearing?

**ADDITIONAL INFORMATION** ........................................................................... **##**

20.     How do I get more information?

21.     What if my address or other information has changed or changes after I submit a Claim Form?

**Settlement Agreement and Release**

## BACKGROUND INFORMATION

### 1.   *Why did I get this notice?*

You received this Notice because a Settlement has been reached in this Action. According to TCP's available records you might be a member of the Settlement Class and may be eligible for the relief detailed below.

This Notice explains the nature of the Action, the general terms of the proposed Settlement, and your legal rights and obligations. To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement (which defines certain capitalized terms used in this Notice), see Section 20 below.

### 2.   *What is this lawsuit about?*

Plaintiffs Monica Rael and Alyssa Hedrick (the "Representative Plaintiffs") filed a lawsuit against TCP on behalf of themselves and all others similarly situated. The lawsuit alleges that TCP engaged in deceptive advertising by advertising purportedly improper discounts on merchandise.

TCP denies each and every one of the allegations of unlawful conduct, any wrongdoing, and any liability whatsoever, and no court or other entity has made any judgment or other determination of any liability. TCP further denies that any Class Member is entitled to any relief and, other than for settlement purposes, that this Action is appropriate for certification as a class action.

**The issuance of this Notice is not an expression of the Court's opinion on the merits or the lack of merits of the Representative Plaintiffs' claims in the Action.**

For information about how to learn about what has happened in the Action to date, please see Section 20 below.

### 3.   *Why is this a class action?*

In a class action lawsuit, one or more people called "Representative Plaintiff(s)" (in this Action, Monica Rael and Alyssa Hedrick) sue on behalf of other people who allegedly have similar claims. For purposes of this proposed Settlement, one court will resolve the issues for all Class Members. The company sued in this case, TCP, is called the Defendant.

### 4.   *Why is there a Settlement?*

The Representative Plaintiffs have made claims against TCP. TCP denies that it has done anything wrong or illegal and admits no liability. The Court has **not** decided that the Representative Plaintiffs or TCP should win this Action. Instead, both sides

Settlement Agreement and Release

agreed to a settlement. That way, they avoid the cost of a trial, and the Class Members will receive relief now rather than years from now, if at all.

### 5.   *How do I know if I am part of the Settlement?*

The Court has decided that everyone who fits this description is a Class Member for purposes of the proposed Settlement: All individuals in the United States who, within the Class Period, made a Qualifying Purchase. The term "Qualifying Purchase" means a purchase of any product bearing a discount from TCP. The term "Class Period" means: February 11, 2012 through [date of preliminary approval order]. Excluded from the Class are Defendant's Counsel, Defendant's officers, directors, and employees, and the judge presiding over the Action.

### 6.   *I'm still not sure if I am included.*

If you are still not sure whether you are included, you can write the Claims Administrator for free help. The email address of the Claims Administrator is _____ and the U.S. postal (mailing) address is _____.

## THE PROPOSED SETTLEMENT

### 7.   *What relief does the Settlement provide to the Class Members?*

TCP has agreed to provide to Class Members who complete a claim form a voucher or vouchers good for a purchase either in a The Children's Place store in the United States or online at www.childrensplace.com, for (i) $6 off a purchase (no minimum purchase) or (ii) 25% off a purchase (of the first $100), subject to the following qualifications. Class Members may elect the form of Voucher they wish to receive on the Claim Form.

TCP will issue 800,000 Vouchers. Vouchers will be valid for 6 months. The $6 Vouchers will be stackable with each other but may not be combined with any other coupon or offer. The 25% off Vouchers will not be stackable, and may not be combined with any other coupon or offer. The Vouchers may be used on items that are on sale. The Vouchers shall not be redeemable for cash, and will not be replaced if lost, stolen or damaged. The Vouchers will be transferable.

For each Class Member who submits a timely, complete, valid and sufficient claim form (an "Authorized Claimant") through the process described infra, TCP shall issue:

- Tier 1 Authorized Claimants: one (1) Voucher. A Tier 1 Authorized Claimant is one who does not submit proof of Qualifying Purchase(s) or if the Qualifying Purchase(s) during the Class Period are less than $50.

Settlement Agreement and Release

- Tier 2 Authorized Claimants: two (2) Vouchers. A Tier 2 Authorized Claimant is one who has Qualifying Purchase(s) during the Class Period totaling $50.01–$150 and submits either proof of such purchase(s) or provides a Class Member Number, which is included in the email notice that you may have received.

- Tier 3 Authorized Claimants: three (3) Vouchers. A Tier 3 Authorized Claimant is one who has Qualifying Purchase(s) during the Class Period totaling more than $150 and submits proof of such purchase(s).

If the Voucher Fund would not be exhausted in a single round of distribution, then additional subsequent rounds of Voucher distribution will occur:

- In each subsequent round of distribution, the number of Vouchers each Authorized Claimant receives shall be determined by his or her Tier as described above.

- If the number of Vouchers remaining in the Voucher Fund after a prior round of distribution is greater than the total number of Vouchers timely and validly claimed, then for the next round of distribution, Authorized Claimants will receive additional Vouchers in the type and number they elected on their Claim Form.

- However, if the number of Vouchers remaining in the Voucher Fund after a prior round of distribution is less than the total number of Vouchers timely and validly claimed, then for the next *and final* round of distribution, no 25% off Vouchers will be distributed. Instead, all Authorized Claimants will receive a pro rata portion of the remaining Voucher value. For instance, if there are 10 Vouchers remaining after the last round of distribution and a total of 8 Tier 2 Authorized Claimants (4 that selected the 25% off Voucher and 4 that selected the $6 Voucher), then for the final round of distribution the 8 Authorized Claimants will each receive two additional $3.75 Vouchers.

- The periods of expiry for each "round" of Voucher distribution shall be successive (i.e., if the Vouchers to be distributed in the first "round" are valid between January 1, 2018 and June 30, 2018, those that are part of the second "round" would be valid from July 1, 2018 until December 31, 2018).

In the event the Voucher Fund would be exhausted by the first round of distribution, then:

- All Vouchers distributed will only be redeemable for a dollar amount off a purchase; no 25% Vouchers will be distributed.

**Settlement Agreement and Release**

- The value of the Vouchers will be calculated on a pro rata basis. For instance, for exemplar purposes only, if there are 850,000 Tier 1 Authorized Claimants, the Voucher value will be $5.65 and the 850,000 Authorized Claimants would each receive one $5.65 voucher .

- The number of Vouchers each Authorized Claimant receives shall be determined by his or her Tier.

## HOW TO REQUEST A VOUCHER – SUBMITTING A CLAIM FORM

### 8. *How can I get a Voucher or Vouchers?*

To qualify for a Voucher, you must send in a Claim Form, and, depending upon the Tier sought potentially proof of Qualifying Purchase(s) as explained in Section 7 above. A Claim Form is available by clicking HERE or on the Internet at the website _____. The Claim Form may be submitted electronically or by postal mail. Read the instructions carefully, fill out the form, and postmark it by _____ or submit it online on or before 11:59 p.m. (Pacific) on _____.

### 9. *When will I get my Voucher or Vouchers?*

As described in Sections 17 and 18, the Court will hold a hearing on _____ at _____, to decide whether to approve the Settlement. If the Court approves the Settlement, after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. You can check on the progress of the case on the website dedicated to the Settlement at _____. *Please be patient.*

## THE LAWYERS IN THIS CASE AND THE REPRESENTATIVE PLAINTIFFS

### 10. *Do I have a lawyer in this case?*

The Court has ordered that the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP ("Class Counsel") will represent the interests of all Class Members. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 11. *How will the lawyers be paid?*

TCP has agreed to pay Class Counsel's attorneys' fees and costs up to $1,080,000, subject to approval by the Court. You will not be required to pay any attorneys' fees

or costs.  Please see paragraphs 2.7 and 2.8 of the Settlement Agreement, available HERE, for additional details.

### 12.   Will the Representative Plaintiffs receive any compensation for their efforts in bringing this Action?

The Representative Plaintiffs will request a service award of up to $2,500 each for their services as class representatives and their efforts in bringing the Action.  The Court will make the final decision as to the amount to be paid to the class representatives.

## DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS

### 13.   What am I giving up to obtain relief under the Settlement?

If the Court approves the proposed Settlement, unless you exclude yourself from the Settlement, you will be releasing your claims against TCP.  This generally means that you will not be able to file a lawsuit, continue prosecuting a lawsuit, or be part of any other lawsuit against TCP regarding the claims in the Action.  The Settlement Agreement, available on the Internet at the website _____ contains the full terms of the release.

## HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT

### 14.   How do I exclude myself from the Settlement?

You may exclude yourself from the Class and the Settlement.  If you want to be excluded, you must send a signed letter or postcard stating: **(a)** the name and case number of the Action; **(b)** your full name, address, and telephone number; and **(c)** a statement that you do not wish to participate in the Settlement, postmarked no later than _____ to the Claims Administrator at:

*Rael v. The Children's Place, Inc.* Settlement

c/o _____

_____

_____

If you timely request exclusion from the Class, you will be excluded from the Class, you will not receive a Voucher or Vouchers under the Settlement, you will not be bound by the judgment entered in the Action, and you will not be precluded from prosecuting any timely, individual claim against TCP based on the conduct complained of in the Action.

## HOW TO OBJECT TO THE SETTLEMENT

### 15. *How do I tell the Court that I disagree with the Settlement?*

At the date, time, and location stated in Section 18 below, the Court will hold a Fairness Hearing to determine if the Settlement is fair, reasonable, and adequate, and to also consider Class Counsel's request for an award of attorneys' fees and costs, and service awards to the Representative Plaintiffs.

If you wish to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, you must submit a written objection to the Claims Administrator at the addresses set forth below no later than (*i.e.*, postmarked by) _____.

*Rael v. The Children's Place, Inc.* Settlement

c/o _____

_____

_____

Any written objections must contain: (1) the name and case number of the Action; (2) the Class Member's full name, address, and telephone number; (3) the words "Notice of Objection" or "Formal Objection"; (4) in clear and concise terms, the legal and factual arguments supporting the objection; (5) facts supporting the person's status as a Class Member (e.g., either any unique identifier included by the Claims Administrator in his/her Email Notice, or the date and location of his/her relevant purchases); (6) the Class Member's signature and the date; and (7) the following language immediately above the Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding class membership are true and correct to the best of my knowledge." You may, but need not, submit your objection through counsel of your choice. If you do make your objection through an attorney, you will be responsible for your personal attorney's fees and costs.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FAIRNESS HEARING.**

If you submit a written objection, you may appear at the Fairness Hearing, either in person or through personal counsel hired at your expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees. You are not required, however, to appear. If you, or your attorney, intend to make an appearance at the Fairness Hearing, you must include on your timely and valid objection a statement substantially similar to "Notice of Intention to Appear".

If you intend to appear at the Fairness Hearing through counsel, you must also identify the attorney(s) representing you who will appear at the Fairness Hearing

Settlement Agreement and Release

and include the attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted.  Also, if you intend to request the Court to allow you to call witnesses at the Fairness Hearing, such request must be made in your written objection, which must also contain a list of any such witnesses and a summary of each witness's expected testimony.

**16.   *What is the difference between excluding myself and objecting to the Settlement?***

Objecting is simply telling the Court that you disagree with something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you don't want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## FAIRNESS HEARING

**17.   *What is the Fairness Hearing?***

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement. The purpose of the Fairness Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the award of attorneys' fees and expenses to Class Counsel; and to consider the request for service awards to the Representative Plaintiffs.  You may attend, but you do not have to.

**18.   *When and where is the Fairness Hearing?***

On _____, 2017 at _____ pacific, a hearing will be held on the fairness of the proposed Settlement.  At the hearing, the Court will be available to hear any objections and arguments concerning the proposed Settlement's fairness.  The hearing will take place before the Honorable Gonzalo P. Curiel in Courtroom 2D (2nd Floor) of the U.S. District Court for the Southern District of California, located at 221 West Broadway, Suite 2190, San Diego, CA 92101.  The hearing may be postponed to a different date or time or location without notice.  Please check _____ for any updates about the Settlement generally or the Fairness Hearing specifically.  If the date or time of the Fairness Hearing changes, an update to the Settlement website will be the only way you will be informed of the change.

**19.   *May I speak at the hearing?***

At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.  As described above in Section 15, you may

Settlement Agreement and Release

speak at the Fairness Hearing only if (a) you have timely submitted an objection, and (b) you have timely and validly provided a Notice of Intent to Appear.

If you have requested exclusion from the Settlement, you may not speak at the hearing.

## ADDITIONAL INFORMATION

### 20.  *How do I get more information?*

To see a copy of the Settlement Agreement, the Court's Preliminary Approval Order, Class Counsel's application for attorneys' fees and costs, and the operative complaint filed in the Action, please visit the Settlement website located at: _____. Alternatively, you may contact the Claims Administrator at the email address _____ or the U.S. postal (mailing) address: _____.

This description of this Action is general and does not cover all of the issues and proceedings that have occurred. In order to see the complete file you should visit www.pacer.gov or the Clerk's office at 333 West Broadway, San Diego, CA 92101. The Clerk will tell you how to obtain the file for inspection and copying at your own expense.

### 21.  *What if my address or other information has changed or changes after I submit a Claim Form?*

It is your responsibility to inform the Claims Administrator of your updated information. You may do so at the address below:

*Rael v. The Children's Place, Inc. Settlement*

_____

_____

_____

****

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE.**

Dated: _____2017                    By: Order of the Southern District of California
                                       HONORABLE GONZALO P. CURIEL
                                       UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT C**
EMAIL NOTICE

Settlement Agreement and Release

To: _____
From: _____
Re: LEGAL NOTICE OF SETTLEMENT OF CLASS ACTION

**IF YOU SHOPPED AT ANY U.S. THE CHILDREN'S PLACE STORE OR ONLINE AT CHILDRENSPLACE.COM BETWEEN FEBRUARY 11, 2012 AND [MONTH] [DAY], [YEAR], YOU MAY BE ELIGIBLE TO RECEIVE VOUCHERS OF VARIOUS VALUES, SUCH AS, E.G., $6, $12, OR $18, USABLE AT THE CHILDREN'S PLACE ON FUTURE PURCHASES**.

**Why did I get this notice?** A settlement ("Settlement") has been proposed in a class action lawsuit pending in the U.S. District Court for the Southern District of California ("Court") titled *Rael v. The Children's Place, Inc.* ("Action"). According to available records, you might be a "Class Member." The purpose of this Email Notice is to inform you of the Action and the Settlement so that you may decide what steps to take in relation to it.

**What is the Action about?** The Action was filed against The Children's Place, Inc. ("TCP" or "Defendant") by plaintiffs Monica Rael and Alyssa Hedrick alleging TCP engaged in deceptive advertising by advertising purportedly improper discounts on merchandise. TCP denies wrongdoing and liability and both sides disagree on how much, if anything, the Class could have recovered after trial. ***No court has decided which side is right. But both sides agreed to provide benefits to TCP customers and resolve the case.***

**Am I a Class Member?** You are a "Class Member" if between February 11, 2012 and [Month] [Day], [Year], you purchased any product bearing a discount from TCP, and you are not Defendant's Counsel, Defendant's officers, directors, and employees, or the judge presiding over the Action.

**What relief does the Settlement provide?** If you are a Class Member, you are eligible to receive a Voucher or Vouchers, depending on your total qualifying purchases and the number of timely and valid claims submitted, good for purchase either in a The Children's Place store in the United States or online at www.childrensplace.com, for (i) $6 off a purchase (no minimum purchase), or (ii) 25% off a purchase (of the first $100). To receive a Voucher or Vouchers you must timely complete and submit a valid Claim Form, and, if required, submit proof of such purchase(s). A Claim Form is available by clicking HERE. The deadline to submit a Claim Form is _____.

**What are my other options?** If you don't want to be legally bound by the Settlement, you must exclude yourself by _____, or you won't be able to sue TCP about the legal claims in the Action ever again. If you exclude yourself, you cannot receive a Voucher from this Settlement. If you stay in the Settlement, you may object to it by _____. The detailed notice available at _____ explains how to request exclusion or object. The Court will hold a hearing on _____ at _____ to consider whether to approve the Settlement and a request by the lawyers representing all Class Members (Carlson Lynch Sweet Kilpela & Carpenter, LLP) for $1,080,000 in attorneys' fees and costs, and for the class representatives' (Monica Rael and Alyssa

**Settlement Agreement and Release**

Hedrick) request for $2,500 each for their services.  You may ask to appear at the hearing, but you don't have to.

**More information?**  For complete information about the Settlement, to view the Settlement Agreement, related Court documents and Claim Form, and to learn more about how to exercise your various options under the Settlement, visit _____. You may also write to the Claims Administrator at the email address _____ or the postal address _____.

**Settlement Agreement and Release**

**EXHIBIT D**
**ONLINE MEDIA NOTICE**

Settlement Agreement and Release

Children's Place Settlement – Legal Notice

www.xxx.com

Info on the Children's Place settlement? Visit: www.xxx.com.

**Settlement Agreement and Release**

**EXHIBIT E**
**CLAIM FORM**

**Settlement Agreement and Release**

# RAEL V. THE CHILDREN'S PLACE, INC. CLAIM FORM

**YOU MUST SUBMIT YOUR CLAIM FORM NO LATER THAN _____.**

**PERSONAL INFORMATION.** Please legibly print or type the following information requested below. *This information will be used to deliver your Voucher or Vouchers and communicate with you if any problems arise with your claim.*

Class Member Number (if available):_____

Name (first, middle, and last):_____

Residential Street Address:_____

City, State, and ZIP code:_____

Email Address: _____

Telephone Number: (_____)_____

[Note for Claims Administrator: the language below should only be shown in a Claim Form if a Class Member supplies a valid Class Member Number]

**CONFIRMATION OF CLASS MEMBERSHIP.** I declare that I believe that, during the period of time between February 11, 2012 and [Date], I purchased from The Children's Place an item or items that were advertised with a discount and that my purchases during this period totaled (*select one*):

☐ less than $50.00 (Tier 1).

☐ more than $50.01, but less than $150.00 (Tier 2).

☐ more than $150.00, and I have attached proof of my purchase(s) (Tier 3).

[Note for Claims Administrator: the language below should only be shown in a Claim Form if a Class Member does not supply a valid Class Member Number]

**CONFIRMATION OF CLASS MEMBERSHIP.** I declare that I believe that, during the period of time between February 11, 2012 and [Date], I purchased from The Children's Place an item or items that were advertised with a discount and that my purchases during this period totaled (*select one*):

☐ less than $50.00 and/or I do not have proof of my purchase(s) (Tier 1).

☐ more than $50.01, but less than $150.00 and I have attached proof of my purchase(s) (Tier 2).

☐ more than $150.00 and I have attached proof of my purchase(s) (Tier 3).

[Note for Claims Administrator: the following data entry form should be shown to all Claimants. Claimants should be able to add rows as needed.]

Please provide information about the purchases that you are claiming above:

| Approximate Month and Year of Purchase | Approximate Location (City and State) of Purchase | Approximation of Total Spent on Claimed Items |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ Click here to add an additional row.

**Settlement Agreement and Release**

[Note for Claims Administrator: after the Class Member elects the relevant tier, regardless of whether the Class Member provides a Class Member Number, the online Claim Form should provide a means for the Class Member to upload pictures of receipts.  If the Class Member does not upload receipts, but has elected Tier 3, or does not have a Class Member Number and elected Tier 2, the following disclosure should be provided.]

You have not uploaded any proofs of purchase or receipts.  If you would like to mail them to the Claims Administrator    so    as    to    support    your    claim,    please    send    them    to _____.

*The Claims Administrator and/or TCP may verify your claim.*

**SELECTION OF FORM OF VOUCHER.**  If, under the terms of the Settlement Agreement, I may select the form of Voucher(s) I am to receive, I choose (Tier 1, *select one*; Tier 2, *select two*; Tier 3, *select three*):

[Note to the Claims Administrator: when coding the above on the online Claim Form, show the Class Member the relevant number of vouchers he/she can claim, and display an error message if he/she claims more or less Vouchers than allowed for his/her Tier.]

☐ 1      ☐ 2      ☐ 3        Voucher(s) good for $6 off a purchase (no minimum purchase), and/or

☐ 1      ☐ 2      ☐ 3        Voucher(s) good for 25% off a purchase  (of the first $100)

*The full terms and conditions for each type of Voucher are in Section 1.32 of the Settlement Agreement.*

**EMAIL ADDRESS FOR VOUCHER DELIVERY.**  Please confirm the email address to which you would like the Settlement Voucher(s) delivered.

[Note to the Claims Administrator: insert the email address that was provided earlier in the form, for reference, in the blank space below.]

Would you like your Voucher delivered to _____? ☐ Yes      ☐ No

If "no," please provide the email address to which you would like the Settlement Voucher(s) delivered: _____.

**ACKNOWLEDGEMENT.**  I have received notice of the class action Settlement in this case and I am a member of the class of persons described in the notice.  I agree to release all the claims, known and unknown, stated in Section 2.11 of the Settlement Agreement.  I submit to the jurisdiction of the United States District Court, District of the Southern District of California with regard to my claim and for purposes of enforcing the release of claims stated in the Settlement Agreement.  I am aware that I can obtain a copy of the full notice and Settlement Agreement at _____ or by writing the Claims Administrator at the email address _____ or the postal address _____.  I agree to furnish additional information to support this claim if required to do so.

IF SUBMITTED ELECTRONICALLY:
☐  **I agree that by submitting this Claim Form I certify under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that checking this box constitutes my electronic signature on the date of its submission.**

IF SUBMITTED BY U.S. MAIL:
**I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct to the best of my knowledge.**

Dated:_____          Signature: _____

**Settlement Agreement and Release**

**EXHIBIT F**
**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT**

Settlement Agreement and Release

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RAEL AND ALYSSA HEDRICK, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHILDREN'S PLACE, INC., <br><br> Defendant. | Case No.  16CV0370-GPC-JMA <br><br> **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT** |

On _____ (month) ___ (day), this Court heard plaintiffs Monica Rael and Alyssa Hedrick's ("Plaintiffs") motion for final approval of the class action settlement.  This Court reviewed: (a) the motion and the supporting papers, including, the Settlement Agreement and Release ("Settlement Agreement");[1] (b) any objections filed with or presented to the Court; (c) the Parties' responses to any objections; and (d) counsels' arguments.  Based on this review and the findings below, the Court found good cause to grant the motion.

**FINDINGS:**

**1.**     Upon review of the record, the Court hereby finds that the Settlement Agreement is, in all respects, fair, adequate, and reasonable, and therefore approves

_____

[1] Capitalized terms in this Order, unless otherwise defined, have the same definitions as those terms in the Settlement Agreement.

1.

it. The Court has come to this determination pursuant to the factors outlined in cases such as *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982). Among other matters considered, the Court took into account: (a) the complexity of Plaintiffs' theory of liability; (b) the arguments raised by The Children's Place, Inc. ("TCP") in its pleadings that could potentially preclude or reduce the recovery by Class Members; (c) delays in any award to the Class that would occur due to further litigation and appellate proceedings; (d) the amount of discovery that has occurred; (e) the relief provided to the Class; (f) the recommendation of the Settlement Agreement by counsel for the Parties; and (g) the low number of objectors to the Settlement Agreement, demonstrating that the Class has a positive reaction to the proposed settlement.

2. The Court also finds that extensive arm's-length negotiations have taken place, in good faith, between Class Counsel and TCP's Counsel resulting in the Settlement Agreement. Parts of these negotiations were presided over by the experienced mediator Hon. Edward A. Infante (ret.).

3. The Settlement Agreement provides substantial value to the Class in the form of Vouchers.

4. Defendant TCP provided notice to Class Members in compliance with Section 3.3 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to submit written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.

5. The Parties adequately performed their obligations under the Settlement Agreement.

**6.**      For the reasons stated in the Preliminary Approval of Class Settlement and Provisional Class Certification Order, and having found nothing in any submitted objections that would disturb these previous findings, this Court finds and determines that the proposed Class, as defined below, meets all of the legal requirements for class certification, for settlement purposes only, under Federal Rule of Civil Procedure 23 (a) and (b)(3).

**7.**      An award of $_____ in attorneys' fees and costs to Class Counsel is fair and reasonable in light of the nature of this case, Class Counsel's experience and efforts in prosecuting this Action, and the benefits obtained for the Class.

**8.**      Incentive awards to plaintiffs Monica Rael and Alyssa Hedrick of $_____ are fair and reasonable in light of: (a) Plaintiffs' risks (including financial, professional, and emotional) in commencing this action as the Class representatives; (b) the time and effort spent by Plaintiffs in litigating this action as the Class representatives; and (c) Plaintiffs' public interest service.

**IT IS ORDERED THAT:**

**1.**      **Class Members**.  The Class Members are defined as:

All individuals in the United States who, within the Class Period, made a Qualifying Purchase. The term "Qualifying Purchase" means a purchase of any product bearing a discount from TCP.  The term "Class Period" means: February 11, 2012 through [date of preliminary approval of the settlement].  Excluded from the Class are Defendant's Counsel, Defendant's officers, directors, and employees, and the judge presiding over the Action.

**2.**      **Binding Effect of Order**.  This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members, including those who did not properly request exclusion under Paragraph 6 of the Preliminary Approval of Class Settlement and Provisional Class Certification Order. This order does not bind persons who submitted timely and valid Requests for

3.

**[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT**

Exclusion. Attached as Exhibit A is a list of persons who properly requested to be excluded from the settlement.

**3. Release**. Plaintiffs and all Class Members who did not properly request exclusion are: (1) deemed to have released and discharged TCP from all claims arising out of or asserted in this Action and claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims. The full terms of the release described in this paragraph are set forth in Sections 2.11 and 2.12 of the Settlement Agreement and are specifically incorporated herein by this reference.

**4. Class Relief**. TCP will issue Voucher(s) to each Class Member who submitted a valid and timely Claim Form (*i.e.*, each Authorized Claimant) according to the terms and timeline stated in the Settlement Agreement.

**5. Attorneys' Fees and Costs**. Class Counsel is awarded $_____ in fees and costs. Payment shall be made pursuant to the timeline stated in Section 2.7 of the Settlement Agreement.

**6. Incentive Award**. Plaintiffs Monica Rael and Alyssa Hedrick are awarded $_____ each as individual settlement awards. Payment shall be made pursuant to the timeline stated in Section 2.6 of the Settlement Agreement.

**7. Court's Jurisdiction**. Pursuant to the Parties' request, the Court will retain jurisdiction over this action and the parties until final performance of the Settlement Agreement.

DATED:_____          _____
                                    U.S. DISTRICT COURT JUDGE

4.

**[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT**

**EXHIBIT G**
**[PROPOSED] FINAL JUDGMENT**

Settlement Agreement and Release

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MONICA RAEL AND ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE CHILDREN'S PLACE, INC.,

Defendant.

Case No.  16CV0370-GPC-JMA

**[PROPOSED] FINAL JUDGMENT**

The Court hereby issues its Final Judgment disposing of all claims based upon the Settlement Agreement entered between Monica Rael and Alyssa Hedrick ("Plaintiffs") and The Children's Place, Inc. ("TCP" or "Defendant") and the Court's Order Granting Final Approval of Class Settlement.

**IT IS ORDERED AND ADJUDGED THAT**:

**1.** In the Order Granting Final Approval of Class Settlement, the Court granted final certification, for purposes of settlement only, of a class defined as: "All individuals in the United States who, within the Class Period, made a Qualifying

1.

Purchase. The term 'Qualifying Purchase' means a purchase of any product bearing a discount from TCP. The term 'Class Period' means: February 11, 2012 through [date of preliminary approval of the settlement]. Excluded from the Class are Defendant's Counsel, Defendant's officers, directors, and employees, and the judge presiding over the Action."

2.     All persons who satisfy the class definition above are "Class Members." However, persons who timely submitted valid requests for exclusion are not Class Members. The list of excluded persons is attached hereto as Exhibit 1.

3.     In the Order Granting Final Approval of Class Settlement, the Court found that notice of the Settlement Agreement and Release ("Settlement Agreement") was provided to Class Members by email and an online advertisement in compliance with Section 3.3 of the Settlement Agreement, Federal Rule of Civil Procedure 23, and due process.

4.     Plaintiffs Monica Rael and Alyssa Hedrick are awarded $_____ each as individual settlement awards.

5.     Class Counsel (Carlson Lynch Sweet Kilpela & Carpenter, LLP) is awarded $_____ in attorneys' fees and costs.

6.     To each Class Member who submitted a timely and valid Claim Form (an "Authorized Claimant"), TCP shall issue Voucher(s), pursuant to Sections 2.2 – 2.5 of the Settlement Agreement, which are incorporated herein.

7.     All Class Members who did not validly and timely request to be excluded from the Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, shall waive and forfeit, and be deemed to have fully, finally and forever released and discharged all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have, arising out of or relating

2.

to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint, or any preceding version thereof filed in the Action, including, but not limited to, any and all claims related in any way to the advertisement of prices by The Children's Place, Inc. or any of its subsidiaries or affiliates (including Unknown Claims) (collectively "Class Released Claims") against The Children's Place, Inc. and each of its direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with it, or any of them (collectively "Released Parties").

As used in this release, the term "Unknown Claims" means with respect to the Class Released Claims only, Plaintiffs and the Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

As part of this agreement, Plaintiffs and the Class Members state that they fully understand that the facts on which the Settlement Agreement is to be executed may be different from the facts now believed by Plaintiffs and the Class Members and the Class Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that the Settlement Agreement will remain effective despite any difference in facts.  Further, Plaintiffs and the Class Members agree that

3.

this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

8.     In addition to the releases made by the Class Members set forth above, Monica Rael and Alyssa Hedrick make the additional following general release of all claims, known or unknown.  Monica Rael and Alyssa Hedrick, and each of their successors, assigns, legatees, heirs, and personal representatives release and forever discharge the Released Parties, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent.

In addition, Monica Rael and Alyssa Hedrick, and each of their successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Monica Rael and Alyssa Hedrick fully understand that the facts on which the Settlement Agreement is to be executed may be different from the facts now believed by Monica Rael and Alyssa Hedrick and their Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that the Settlement Agreement will remain effective despite any difference in facts.  Further, Monica Rael and Alyssa Hedrick agree that this waiver is an essential and material term of

4.

this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

**9.** All Class Members are bound by this Final Judgment, by the Order Granting Final Approval of Class Settlement, and by the terms of the Settlement Agreement.

NOW, THEREFORE, the Court, finding that no reason exists for delay, hereby directs the Clerk to enter this Final Judgment, pursuant to Federal Rule of Civil Procedure 58, forthwith.

DATED: _____     _____
U.S. DISTRICT COURT JUDGE

5.

# EXHIBIT 2

# EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP

## IN THE MATTER OF:

### MONICA RAEL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED
### v.
### THE CHILDREN'S PLACE, INC.

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

### CASE NUMBER 16cv0370-GPC-JMA

### DECEMBER 1, 2016

*CONFIDENTIAL*



HEMMING
MORSE, LLP
CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

## 1.    INTRODUCTION

1.     As a Partner at Hemming Morse LLP ("Hemming"), I have been engaged by Carlson Lynch Sweet Kilpela & Carpenter, LLP ("Carlson" or "Counsel") in its role as counsel to Monica Rael ("Plaintiff"), on behalf of herself and all others similarly situated to analyze accounting, financial, and economic issues related to claims by Plaintiff against The Children's Place, Inc. ("Children's Place" or "Defendant").[1] Among other claims, I understand that Plaintiff has alleged that Children's Place has employed deceptive trade practices and been unjustly enriched as a result of the manner in which Children's Place has advertised and priced its products, which Plaintiff alleges is misleading and unfair.[2]

2.     Specifically, I have been engaged by Counsel to analyze whether there is available a methodology to estimate compensatory damages suffered by Plaintiff and the putative class as a result of the alleged unlawful conduct of Children's Place. I have also evaluated whether Children's Place has priced its products in a manner that would permit Children's Place, as defined by applicable law, to advertise its products as it has. However, my analysis is based on assumptions about what the applicable law is, and I do not express any legal opinions on this topic. I do not express any opinions on whether Children's Place is ultimately liable under any of the causes of action pled by Plaintiff.

3.     Section 2 of this report outlines my opinions with respect to my analysis, as well as the bases for my opinions. Appendix A contains a listing of the documents, data, and information reviewed and/or relied upon to date in my analysis.

4.     I obtained my A.B. in economics, with Distinction, from Occidental College, and an M.B.A. in finance and accounting from the University of Chicago Graduate School of Business. As a Certified Public Accountant ("CPA"), I was formerly a Partner at Deloitte and Touche, LLP, and I have worked in the field of forensic accounting, including the calculation of economic damages, from 1993 to the present. I am a past chair and current member of the Economic Damages Task Force of the American Institute of Certified Public Accountants ("AICPA"), and a past chair of the Economic Damages section of the

---

[1] Complaint, February 11, 2016 ("First Amended Complaint"), pp. 1-15.
[2] Complaint, pp. 1-15.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

California Society of Certified Public Accountants ("CalCPA"). In these capacities, I have written and taught on the practice of forensic accounting, including the calculation of economic damages in matters similar to the instant dispute, and I have testified as an expert on economic damages many times, including in state and federal courts and in arbitration proceedings. Appendix B is a summary of my qualifications, including my publications and public teachings of the past 10 years. Appendix C contains my testimony history, including all matters in which I have provided expert testimony in the previous four years.

5.      My report is based on the information I have received to date; I may revise this report based on the receipt of additional documents or information. In addition, I expect to consider any criticisms of my analysis offered by Defendants or any of Defendants' experts.

6.      If called to testify in this matter, I may at the request of Counsel prepare demonstrative exhibits to reflect or summarize the information I describe in this report, as permitted by the Court's scheduling orders.

## 1.1      Summary of Opinions

7.      I intend to testify to the following summary opinions, as well as the bases for these summary opinions, as I detail in Section 2 (and its subsections) of this report.

- The information I have gathered shows that it is possible, if not likely, that Children's Place did not price its products in a manner consistent with applicable law.

- There exists a methodology to estimate damages/rescission for the putative class, as well as Ms. Rael.

## 2.      OPINIONS TO BE EXPRESSED AND BASES THEREOF

## 2.1      Background

### 2.1.1    Children's Place

8.      Children's Place, founded in 1969, is "the largest pure-play children's specialty apparel retailer in North America," selling apparel, accessories, footwear, and other items for children.[3] As of January 30,

---

[3] 2015 Annual Report, The Children's Place, Inc., p. 3; http://phx.corporate-ir.net/phoenix.zhtml?c=120577&p=irol-irhome.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

2016, Children's Place operated over 1,000 department stores in North America, including in all 50 states within the U.S., and in Canada.[4] The company's headquarters are in Secaucus, New Jersey.[5]

9.     Children's Place sells "the substantial majority" of its merchandise under the proprietary "The Children's Place," "The Place," and "Baby Place" brands.[6] Its website is www.childrensplace.com.



10.     As the screen shot above (from November 27, 2016) indicates, Children's Place was on that day selling all of its products at between 60% and 75% off.  On November 30, 2016, the site had changed to a different promotion, with everything at least 40% off, and up to 60% off.

---

[4] 2015 Annual Report, The Children's Place, Inc., pp. 3-4, 9.
[5] https://www.google.com/finance?q=PLCE.
[6] 2015 Annual Report, The Children's Place, Inc., p. 3.



**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**



11.    Children's Place has an affinity program, My Place Rewards, which provides awards to members based on the amount of money spent.[7]





---

[7] https://www.childrensplace.com/shop/us/content/myplace-rewards-page.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

12.     In the fiscal years 2014 – 2016, Children's Place had annual net sales of between $1.7 billion and $1.8 billion.[8]

|  | Fiscal Year Ended | | |
|---|---|---|---|
|  | January 30, 2016 | January 31, 2015 | February 1, 2014 |
| Net sales: | | | |
| The Children's Place U.S. | $  1,518,117 | $  1,528,762 | $  1,528,276 |
| The Children's Place International (1) | 207,660 | 232,562 | 237,513 |
| Total net sales | $  1,725,777 | $  1,761,324 | $  1,765,789 |

(1) Net sales from The Children's Place International are primarily derived from revenues from Canadian operations. Our foreign subsidiaries, primarily in Canada, have operating results based in foreign currencies and are thus subject to the fluctuations of the corresponding translation rates into U.S. dollars. For Fiscal 2015, the effects of these translation rate changes on net sales was a decrease of $29.9 million.

($ in thousands)

13.     Children's Place had operating income in those years of between $76 million and $90 million.[9]

|  | Fiscal Year Ended | | |
|---|---|---|---|
|  | January 30, 2016 | January 31, 2015 | February 1, 2014 |
| Operating income: | | | |
| The Children's Place U.S. | $  65,221 | $  63,586 | $  60,267 |
| The Children's Place International (1) | 24,859 | 16,457 | 16,016 |
| Total operating income | $  90,080 | $  80,043 | $  76,283 |

($ in thousands)

14.     Children's Place stock has been traded on the Nasdaq Global Select Market in 1997 and has a total market capitalization (equity value) of approximately $1.9 billion as of the market close, November 25, 2016.[10]

**Childrens Place Inc**   (NASDAQ:PLCE)

**105.03** -0.62 (-0.59%)
Nov 25 - Close
NASDAQ real-time data - Disclaimer
Currency in USD

| | | | |
|---|---|---|---|
| Range | 104.20 - 106.55 | Div/yield | 0.20/0.76 |
| 52 week | 47.96 - 106.55 | EPS | 4.45 |
| Open | 105.10 | Shares | 18.04M |
| Vol / Avg. | 246,904.00/606,422.00 | Beta | 0.16 |
| Mkt cap | 1.91B | Inst. own | 125% |
| P/E | 23.75 | | |

---

[8] https://www.google.com/finance?q=PLCE.  The company uses a fiscal year end at approximately the end of January each year, on a Saturday.
[9] https://www.google.com/finance?q=PLCE.  The company uses a fiscal year end at approximately the end of January each year, on a Saturday.
[10] https://www.google.com/finance?q=PLCE (market capitalization as of market close November 25, 2016).  The market capitalization as of November 30, 2016 was also $1.9 billion.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

### 2.1.1.1    Children's Place Price Tags and Price Communications to Consumers

15.    In selling its products online, Children's Place frequently uses advertised reference prices to show the price at which a product "was" selling, or for which it "regularly" sells. Below are examples from the Children's Place website. The first image is from the "Accessories" page as of November 28, 2016.[11]

   

Boys 3-In-1 Gloves
$5.98 Was : 14.95
QUICK VIEW+

Toddler Girls Shimmery Owl Pom Pom
Hat And Mittens Set
$9.98 Was : 24.95
QUICK VIEW+

Girls Shimmery Cat Ears Hat
$5.98 Was . 14.95
QUICK VIEW+

Boys 3-In-1 Gloves
$5.98 Was : 14.95
QUICK VIEW+

16.    The following image is from the same page, as of March 5, 2016.[12]

   

Boys 3-In-1 Gloves
$5.98 Regularly: 14.95
QUICK VIEW+

Toddler Girls Shimmery Owl
Pom Pom Hat And Mittens Set
$9.98 Regularly: 24.95
QUICK VIEW+

Girls Shimmery Cat Ears Hat
$5.98 Regularly: 14.95
QUICK VIEW+

Boys 3-In-1 Gloves
$5.98 Regularly: 14.95
QUICK VIEW+

17.    From the Wayback Machine internet archive, it is possible to generally see when Children's Place changed its advertised reference price on its internet pages from "Regularly" to "Was." As of May 16, 2016, the Accessories page used "Regularly" advertised reference prices, whereas by October 28, 2016,

---

[11] http://www.childrensplace.com/shop/us/c/kids-accessories-us (as of November 28, 2016); http://www.iheartthemart.com/wp-content/uploads/2015/12/tcp-sale1.jpg.
[12] https://web.archive.org/web/20160305082052/http://www.childrensplace.com/shop/us/c/kids-accessories-us.



**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

the site had changed to "Was" advertised reference prices.[13]  As shown above, "Was" advertised reference prices were still in use as of November 28, 2016.  The "Toddler Girl" page on the www.childrensplace.com website used "Was" advertised reference prices as of August 21, 2016.[14]






| | | | |
|---|---|---|---|
| Toddler Girls Long Sleeve Printed Hooded 3-In-I Jacket<br>**$23.98** Was : 59.95<br>QUICK VIEW+ | Unisex Kids Long Sleeve 'Ho Ho Ho' Top And Fair Isle Print Fleece Pants Pj Set<br>**$6.78** Was : 16.95<br>QUICK VIEW+ | Unisex Kids Long Sleeve 'Ho Ho Ho' Top And Fair Isle Print Fleece Pants Pj Set<br>**$6.78** Was : 16.95<br>QUICK VIEW+ | Girls Long Sleeve Unicorn Galaxy Graphic Top And Galaxy Printed Pants Pj Set<br>**$6.78** Was : 16.95<br>QUICK VIEW+ |

18.    The "Baby" page archive from May 21, 2016 shows that at that time "Regularly" advertised reference prices were still used.[15]






| | | | |
|---|---|---|---|
| Unisex Baby And Toddler Long Sleeve 'Ho Ho Ho' Fair Isle Print Blanket Sleeper<br>**$6.78** Regularly: 16.95<br>QUICK VIEW+ | Unisex Baby And Toddler Long Sleeve 'Ho Ho Ho' Fair Isle Print Blanket Sleeper<br>**$6.78** Regularly: 16.95<br>QUICK VIEW+ | Unisex Long Sleeve 'Peace Love And Family' Holiday Stripe Footed Stretchie<br>**$5.98** Regularly: 14.95<br>QUICK VIEW+ | Unisex Baby And Toddler Long Sleeve 'Ho Ho Ho' Fair Isle Print Blanket Sleeper<br>**$6.78** Regularly: 16.95<br>QUICK VIEW+ |

19.    As a result, it appears that Children's Place shifted from "Regularly" to "Was" advertised reference prices between May and August of 2016, for at least its online sales.

---

[13] https://web.archive.org/web/20161028133852/http://www.childrensplace.com/shop/us/c/kids-accessories-us;
https://web.archive.org/web/20160516215336/http://www.childrensplace.com/shop/us/c/kids-accessories-us.
[14] https://web.archive.org/web/20160821163809/https://www.childrensplace.com/shop/us/c/toddler-girl-clothes.
[15] https://web.archive.org/web/20160521125903/http://www.childrensplace.com/shop/us/c/baby-clothes?.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

20.    For its in-store sales, Children's Place employs a different approach, with tags that show a price, and discounts from that sale price, with the discount varying by day. For example, I took this photo as I entered the Redondo Beach, California (South Bay Galleria) store on the evening of November 28, 2016.



21.    There are several stores in the Los Angeles metropolitan area.[16]



---

[16] http://www.childrensplace.com store locator, stores within 25 miles of 90266.



22.　As can be seen in the photo I took of the entry to the Redondo Beach store, the store offered everything at 40% to 75% off. There is small print on the 40% to 75% banner, however, indicating that sleepwear and new arrivals are exempt from the 40% to 75% discounting. I found, on closer inspection and in talking with the store manager, that sleepwear was, in fact, 30% off of regular prices.

23.　In terms of what "off" meant (e.g., 40% "off"), it is compared to the price shown on the tag, before discounts. For example, the picture below shows that all leggings were priced at 60% off of the "original price."



24.　In some instances, the store had products that were, as seen in the leggings advertisement shown above, sold at a discount off of an original price, which was shown on the product tag. That can also be seen in the photo below, of ballet flats shoes, which were advertised at 40% off. However, the store also had products that were sold at a specified price, such as can be seen in the image below on the right, of "active tops." Those have a regular price, shown on the tag, of between $12.95 (the two shirts on the top shelf) and $16.95 (the one on the bottom shelf). At $6.99, that is 46% off of a regular price of $12.95 and 59% off of a regular price of $16.95.





25.    I did not see any products without any discount from the original price when I visited the Redondo Beach store.

26.    Children's Place has been criticized for its use of advertised reference prices that have been alleged to not actually be "regular" prices, and particularly not as these terms are defined by law.[17] Notably, Plaintiff has alleged that customers are misled about the price of the products at issue and convinced to buy these products at the prices paid by consumers.[18]   Plaintiff alleges that consumers would not have paid the price they paid, or perhaps not bought the products at all, were the products not

---

[17] First Amended Complaint, pp. 1-16.
[18] First Amended Complaint, pp. 1-16.

to have been advertised or represented to have reference prices as they did, but instead had been described accurately, in a manner that has been approved by law.[19]

### 2.1.2 Advertised Reference Prices

27.    The question of whether consumers are susceptible to advertised reference prices in product pricing/tagging has been studied, with these studies generally indicating that consumers' willingness to buy products increases when the products have a high but believable advertised reference price and a lower offer price.

28.    For example, Kan, Lichtenstein, Grant, and Janiszewski found that "[t]hirty years of research supports the conclusion that advertised reference prices (e.g., $119.99) exert an influence on consumers' responses to offer prices (e.g., $39.99) via their assimilative influence on consumers' internal reference prices."[20]  According to the authors, "[a]dvertised reference prices have been shown to exert a favorable influence across a range of consumer responses, including judgments of a fair price, the normal price, the average market price, the lowest available price in the market, expected savings, purchase value, and purchase intentions (e.g., Grewal et al. 1998; Lichtenstein and Bearden 1989; Lichtenstein, Burton, and Karson 1991; Urbany, Bearden, and Weilbaker 1988) as well as actual marketplace sales (Kaufmann et al. 1994)."[21]  The study found that, in general, when a consumer has an internal sense of the value of a product (an "internal reference price"), that value tends to decline when a consumer sees that a product is being sold for a lower offer price than the internal reference price.  However, "[a]n advertised reference price is beneficial because it can counteract the downward influence of the offer price on the internal reference price. To the extent an advertised reference price is considered valid price information, it can

---

[19] First Amended Complaint, pp. 1-16.

[20] Christina Kan, Donald R. Lichtenstein, Susan Jung Grant, and Chris Janiszewski (April 2014), "Strengthening the Influence of Advertised Reference Prices through Information Priming," *Journal of Consumer Research*, Vol. 40, No. 6, p. 1078.

[21] Christina Kan, Donald R. Lichtenstein, Susan Jung Grant, and Chris Janiszewski (April 2014), "Strengthening the Influence of Advertised Reference Prices through Information Priming," *Journal of Consumer Research*, Vol. 40, No. 6, p. 1078.

increase the level of the internal reference price and, consequently, make the offer price appear more attractive."[22]

29.    Gotlieb and Fitzgerald (1990) similarly found that reference prices play a prominent role in purchasing decisions and that consumers are willing to pay significantly more for products with a high reference price compared to products with a lower reference price.[23]    In the study, on average, consumers presented with a reference price of $289 were willing to pay $178.60 for a product, while consumers presented with a reference price of $429 were willing to pay $250.80 for the same product.[24]

30.    Compeau and Grewal (1998) had similar findings in their review of research on the topic.  As they explained, whether the consumer actually got what they bargained for depends on the validity of the advertised reference price.[25]

> An advertised reference price (e.g., regular price, original price, manufacturer's suggested price) suggests that consumers will save money, that they will "get a deal." Advertisers often appeal to this desire to "get a deal" by comparing the offering price (e.g., sale price) with some higher reference price (e.g., regular price), thereby making the offered price more attractive.  Whether the consumers actually save money depends primarily in the validity of this advertised comparative reference price."

**2.2    The information I have gathered shows that it is possible, if not likely, that Children's Place did not price its products in a manner consistent with applicable law.**

31.    I understand that California law and federal law prohibit false or misleading trade practices such as false advertising.  For example, the Federal Trade Commission ("FTC") guideline 16 CFR § 233.1, Former Price Comparisons, addresses advertised reference prices and what is necessary to qualify as a bona fide advertised reference price.

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona

---

[22] Christina Kan, Donald R. Lichtenstein, Susan Jung Grant, and Chris Janiszewski (April 2014), "Strengthening the Influence of Advertised Reference Prices through Information Priming," *Journal of Consumer Research*, Vol. 40, No. 6, p. 1079.
[23] Jerry Gotlieb and Cindy Fitzgerald (1990), "An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product," *Journal of Applied Business Research*, 6 (1), 59-69.
[24] Jerry Gotlieb and Cindy Fitzgerald (1990), "An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product," *Journal of Applied Business Research*, 6 (1), 59-69
[25] Larry Compeau and Dhuruv Grewal (1998), "Comparative Price Advertising: An Integrative Review, *Journal of Public Policy & Marketing*, 17 (2), 257.



fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level - $7.50 - and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered. [Guide I]

[Highlighting added]

32.    I understand that California Business & Professions Code §17501, "Value determinations; Former price advertisement," defines that no price can be advertised as a former price unless that price is the

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

prevailing market price over the prior three months, or unless that advertised price is clearly denoted otherwise.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

33.     I understand that Plaintiff has brought a claim with three causes of action: §17200 (unfair competition), §17500 (false advertising), and the Consumer Legal Remedies Act ("CLRA"), §1750. I understand that the remedies available under these causes of action vary and may include restitution, injunctive relief, and actual punitive, and statutory damages.

34.     As described above, information I have reviewed indicates that it is Children's Place normal course of business to advertise and sell its products at a discount from an "original," "regularly," or "was" price. I was not able to find in my review of the Children's Place website and Redondo Beach retail store any products sold off sale.

35.     It is possible that I happened to be looking at pricing and sales that were unique to the time of my investigation. For example, I looked at pricing available soon after Thanksgiving, which is typically a time of significant discounting in retail sales.

36.     Unfortunately, I have not at this time been provided a fulsome supply of data on Children's Place sales (e.g., pricing and sales volumes by product over time). I plan, if I receive such, to consider it and further refine and develop my analysis. For example, if I am able to see the pricing of products over time, I will be better able to test whether the "original price" was in fact the prevailing price during the 90 days prior to a sale.

37.     For the purposes of my analysis, I understand that a prevailing price is the price at which a product is most frequently sold. One could look at this as being a price at which a product was sold on the most days in the past 90 days (e.g., if a product was only sold for $19.99 for 46 out of 90 days, that would be, by definition, the greatest number of days at a given price). One could also look at the prevailing price in terms of transactions (e.g., if a product was sold 501 times, out of 1,000 total transactions, for $19.99, then that would be the greatest number of transactions at a given price).

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

38.    I have in the past, on my work in the *Murillo v. Kohl's* matter (case number 2:16-cv-00196-JPS, venued in the Eastern District of Wisconsin), calculated the percentage of sales transactions and sales prices offered by date, for purposes of analyzing this issue. With the data produced, I could do such an analysis in this matter as well. It would show what the prevailing price is, which could possibly be defined based on days offered for sale, or possibly on transaction volume.

39.    For example, below is a chart similar to charts I prepared in the *Murillo v. Kohl's* matter, showing the sales volume by day, both on sale and off sale. In the data below, which I have fabricated for the example, the product was offered and sold off sale (denoted in blue) on 64% of the days (68 out of 106 days with transactions). However, only 46% of the transactions were on those days (1,161 out of 3,635 total transactions). This discrepancy is because there are more sales, generally, on "on sale" days, with a big spike on "Black Friday."



40.    In addition, I understand from Counsel that the following retail and sales price data points have been collected. On the right I have calculated the discount percentage off of retail for these pricing observations.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

Rael v. The Children's Place
Observed Discounts

| | Retail | Date 1 | Date 2 | Date 3 | Date 4 | Date 5 | Discount Percentage off of Retail | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | Date 1 | Date 2 | Date 3 | Date 4 | Date 5 | Average |
| **Girls** | Retail | 9/5/2015 | 10/6/2015 | 11/9/2015 | 11/18/2015 | 12/9/2015 | | | | | | |
| Long Sleeve Winter Graphic | $10.50 | $5.00 | $5.25 | $5.25 | $5.25 | $5.25 | 52.4% | 50.0% | 50.0% | 50.0% | 50.0% | 50.5% |
| Short Sleeve Graphic Tee | $10.50 | $5.00 | $5.25 | $5.25 | $5.25 | $5.25 | 52.4% | 50.0% | 50.0% | 50.0% | 50.0% | 50.5% |
| Girls Jeans all styles (Skinny | $19.50 | $12.00 | $12.00 | $9.00 | $7.99 | $9.98 | 38.5% | 38.5% | 53.8% | 59.0% | 48.8% | 47.7% |
| **Boys** | Retail | 8/1/2015 | 9/4/2015 | 10/26/2015 | 11/19/2015 | 12/10/2015 | | | | | | |
| Boys Graphic Tee Shirts | $10.50 | $4.00 | $5.25 | $5.25 | $5.25 | $5.25 | 61.9% | 50.0% | 50.0% | 50.0% | 50.0% | 52.4% |
| Boys Longsleeve graphic tee | $10.50 | $5.00 | $5.25 | $5.25 | $5.25 | $5.25 | 52.4% | 50.0% | 50.0% | 50.0% | 50.0% | 50.5% |
| **Toddler Boy** | Retail | 9/5/2015 | 10/29/2015 | 11/13/2015 | 11/19/2015 | 12/11/2015 | | | | | | |
| Pull-On Cargo Pants | $17.95 | $15.00 | $15.00 | $10.77 | $10.77 | $7.47 | 16.4% | 16.4% | 40.0% | 40.0% | 58.4% | 34.3% |
| Chino Pants (All Skinny Style | $17.95 | $15.00 | $15.00 | $12.48 | $10.77 | $7.47 | 16.4% | 16.4% | 30.5% | 40.0% | 58.4% | 32.3% |
| Pull On Cargo Shorts | $17.95 | $10.00 | $12.00 | $10.17 | $10.17 | $6.47 | 44.3% | 33.1% | 43.3% | 43.3% | 64.0% | 45.6% |
| **Toddler Girl** | Retail | 9/10/2015 | 10/6/2015 | 11/8/2015 | 11/17/2015 | 12/12/2015 | | | | | | |
| Pull-On Skorts (All Styles) | $14.95 | $11.21 | $8.97 | $8.97 | | | 25.0% | 40.0% | 40.0% | | | 35.0% |
| Denim Knit Jeggings | $16.95 | $12.00 | $8.25 | $10.17 | $7.99 | $8.25 | 29.2% | 51.3% | 40.0% | 52.9% | 51.3% | 44.9% |
| Odyssey Wash (Bootcut) | $16.50 | $8.99 | $8.25 | $8.40 | $7.99 | $8.25 | 45.5% | 50.0% | 49.1% | 51.6% | 50.0% | 49.2% |
| Active Ruched Pocket Sweat | $14.95 | $11.96 | $8.97 | $8.97 | | | 20.0% | 40.0% | 40.0% | | | 33.3% |
| Microfleece Pants | $12.95 | $11.65 | $7.12 | $6.22 | $5.18 | | 10.0% | 45.0% | 52.0% | 60.0% | | 41.8% |
| All Knit Jeggings | $16.95 | $10.00 | $10.17 | $10.17 | $10.17 | $8.48 | 41.0% | 40.0% | 40.0% | 40.0% | 50.0% | 42.2% |
| **Baby Girl** | Retail | 9/10/2015 | 10/23/2015 | 11/4/2015 | 11/17/2015 | 1/4/2016 | | | | | | |
| Stretchie (All designs) | $14.50 | $10.00 | $7.25 | $10.15 | $8.70 | $10.00 | 31.0% | 50.0% | 30.0% | 40.0% | 31.0% | 36.4% |
| Blanket Sleepers (All design | $14.50 | $10.00 | $7.25 | $10.15 | $10.88 | $12.00 | 31.0% | 50.0% | 30.0% | 25.0% | 17.2% | 30.6% |
| **Baby Boy** | Retail | 9/11/2015 | 10/4/2015 | 10/13/2015 | 11/13/2015 | 12/9/2015 | | | | | | |
| Basic Jeans | $14.95 | | | $8.97 | $8.97 | $7.47 | | | 40.0% | 40.0% | 50.0% | 43.3% |
| Knit Cargo Pants | $9.50 | $7.00 | | $5.70 | $5.70 | $4.75 | 26.3% | | 40.0% | 40.0% | 50.0% | 39.1% |
| Railroad Stripe Overalls | $24.95 | $18.71 | | $14.97 | $14.97 | $12.48 | 25.0% | | 40.0% | 40.0% | 50.0% | 38.7% |
| Pull-On Denim Pants – Acad | $19.95 | | | $11.97 | $11.97 | $9.98 | | | 40.0% | 40.0% | 50.0% | 43.3% |
| **Girls Shoes** | Retail | 9/5/2015 | 10/6/2015 | 10/31/2015 | 11/15/2015 | 12/12/2015 | | | | | | |
| Knit Mili Boot | $32.95 | $29.66 | $19.77 | | | | 10.0% | 40.0% | | | | 25.0% |
| Mili Foldover Boots (Tan, Br | $29.95 | $26.95 | $17.97 | | $20.97 | | 10.0% | 40.0% | | 30.0% | | 26.7% |
| **Boys Shoes** | Retail | 9/5/2015 | 10/19/2015 | 11/8/2015 | 11/15/2015 | 12/12/2015 | | | | | | |
| Kalahari Desert Boot (Black | $26.95 | $24.25 | $18.86 | $20.21 | $20.21 | | 10.0% | 30.0% | 25.0% | 25.0% | | 22.5% |
| Slip-On Printed Sneaker (Ca | $24.95 | $23.70 | $14.87 | $17.47 | $17.47 | $12.48 | 5.0% | 40.4% | 30.0% | 30.0% | 50.0% | 31.1% |
| **Girls Accessory** | Retail | 9/5/2015 | 10/8/2015 | 11/5/2015 | 11/18/2015 | 12/12/2015 | | | | | | |
| MicroFleece Hat (Glacier) | $8.95 | $7.61 | $5.37 | $5.37 | $5.37 | $4.47 | 15.0% | 40.0% | 40.0% | 40.0% | 50.1% | 37.0% |
| 3-In-1 Gloves | $14.95 | $13.45 | $8.97 | $8.97 | $8.97 | $7.47 | 10.0% | 40.0% | 40.0% | 40.0% | 50.0% | 36.0% |
| Knit Cat Scarf | $9.95 | $8.46 | $7.77 | $7.77 | | | 15.0% | 21.9% | 21.9% | | | 19.6% |
| **Boys Accessory** | Retail | 10/6/2015 | 10/25/2015 | 11/8/2015 | 11/21/2015 | 12/9/2015 | | | | | | |
| Spiderman Mask Hat | $18.95 | $11.37 | $9.48 | $14.21 | $14.21 | | 40.0% | 50.0% | 25.0% | 25.0% | | 35.0% |
| Solid Beanie | $9.95 | $5.47 | $4.97 | $5.97 | $4.97 | $4.97 | 45.0% | 50.1% | 40.0% | 50.1% | 50.1% | 47.0% |
| 49ers Logo Pom Pom Beanie | $18.95 | $11.37 | $9.48 | $14.21 | $14.21 | | 40.0% | 50.0% | 25.0% | 25.0% | | 35.0% |
| **Total** | | | | | | | 29.2% | 41.3% | 39.1% | 41.4% | 49.0% | 38.6% |

Notes: Data collected by Counsel.

41.　　As can be seen above, for each of the 30 products tested, in 10 product groups, across five days on which price data were collected, there was never a day, for any product, on which the product was

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

sold at the advertised reference price (retail). The amount of the discount ranged from 5.0% to 64.0%, and the average across all days and products was 38.6%.[26]

42.      These data also support the notion that Children's Place has priced and sold its products in a manner inconsistent with the applicable law.

**2.3      There exists a methodology to estimate damages/rescission for the putative class, as well as Ms. Rael.**

43.      As described above, I understand that three causes of action have been pled, and the financial remedies available may include at least actual damages and rescission. For the purposes of my analysis, I have evaluated whether this is a methodology to estimate the effect on consumers of a false advertised reference price, compared to the value that the consumers received in the transaction in question. Damages, as well as an amount due under rescission, then, are the amount overpaid by customers in the actual purchase compared to the but-for purchase had the customer not been provided inaccurate information about the advertised reference price.

44.      This methodology is well demonstrated using an example. Above, I included a photo I took of ballet flats with an advertised reference price of $24.95, and a sale price of 40% off, or $14.97 (a $9.98 discount).

---

[26] There were some days on which products were not available/found, so they were left blank in the schedule.





45.     To calculate damages/rescission, one must first determine the prevailing price. I understand that the prevailing price is the most common price that has been charged for the product in question. For purposes of my example, I will assume that the prevailing price is the price shown above: 40% off of $24.95, or $14.97. I note that it is possible that the prevailing price can change by day, given the "most recent 90 days" vary depending on the date of the sale. For example, if a transaction occurs on July 1, then the most recent 90 days are from April 2 through June 30. It is possible that the prevailing price for that 90-day window will be different from the prevailing price during the 90 days preceding a sale on, for example, October 1 (for which the preceding 90 days are from July 3 to September 30). As a result, the prevailing price needs to be calculated for each day in the damages/rescission period.

46.     Assuming that $14.97 is the prevailing price, then the question arises of what the value was that the consumer received in the "actual world" transaction. As advertised, the product was "originally"

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

$24.95, but was on sale for $14.97. If the consumer had known that the qualifying advertised reference price was in fact, $14.97, what is the value that the consumer would place on the product for which the consumer paid $14.97?

47.    I have for this question looked to survey evidence (e.g., in my analysis for the *Murillo v. Kohl's* case), and I would do that again here. Importantly, a survey, properly crafted, can provide insight into the question I pose above regarding the value that a consumer receives by virtue of a purchase of a product that was received, albeit not for the discount for which the consumer bargained.

48.    One possibility is that the consumer would be equally well off with the same discount as had been part of the actual transaction (in my example, 40% off), which would result in a "but-for sale" price of 40% off of the $14.97 price, or $8.98 (a discount of $5.99 off of the $14.97 "but-for original price"). This scenario represents what I call zero discount compression. It represents an expectation that the consumer requires the same 40% discount off of the lower price in order to be equally well off – in economic terms, to have the same level of "utility." This is an extreme input – to have zero discount compression.

49.    At the other end of the spectrum is that the consumer would require no additional discount in order to be equally well off as had been bargained for in the "actual world" transaction of $14.97 for the $24.95 "original price" ballet flats. This scenario represents that the discount is completely compressed to nothing. Again, this is an extreme input – to have complete discount compression.

50.    The survey performed in the *Murillo v. Kohl's* matter showed that there was an expectation of some discount compression, but not to eliminate the discount. In fact, I understand that the extent of the discount compression varied depending on the amount of the promised discount. This makes sense.

51.    For example, assuming a pair of shoes with an original price of $100.00 and a 5% discount to $95.00, the question in the survey tests whether the consumer would be equally willing to buy the shoes with the same picture of the shoes shown to the respondent, and the "original price $100.00., sale price $95.00" as if the respondent sees the same shoes with "original price $95.00, sale price $90.25" ($90.25 is 5% off of $95.00). I understand that the survey results showed that a consumer requires a discount of exactly or nearly the same discount in this situation in order to be equally interested in buying the product.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

52.     On the other end of the scale are, for example, shoes that are advertised as "original price $10.00, sale price $10.00" (90% off). If there is no discount compression, then the consumer expects another 90% discount off of the $10.00 price, or to pay $1.00 for the shoes. In that instance, discount compression is likely greater, such that the consumer may only expect a very small discount off of the shoes in order to be just as well off (e.g., 10% off of $10.00 = $9.00).

53.     My damages/rescission calculation accounts for discount compression based on the results of the survey, which I expect will be based on the actual Children's Place products and pricing, to estimate what amount of discount is expected on the "but-for original price" (the prevailing price), in order to put a consumer in an equal position, taking into account that the consumer has received the product in question. In other words, the amount due is the amount that the consumer overpaid, as a result of the false representation about the advertised reference price, compared to the price that would put the consumer in an equally well off situation if they knew the proper advertised reference price.

54.     My damages/rescission calculation also takes into account returns and exchanges (by looking at actual transactions), which eliminate transactions that would potentially have resulted in damages but were returned by consumers.

55.     In the event that my damages/rescission calculation results in a but-for discounted price that is lower than the direct cost to Children's Place, I would use that cost as a floor. In other words, I do not expect Children's Place to have sold its products below its direct costs. I would, as a result, consider Children's Place's costs in setting this floor for the products in question.

56.     The damages/rescission I calculate are based on the amounts overpaid by consumers in the subject transactions. The other side of the transaction is the amount received by Children's Place. As a result, the damages/rescission I calculate are equal to the amount improperly received by Children's Place, which is its ill-gotten gain. In other words, the amount of unjust enrichment is equal to the amount of damages/rescission I calculate. As a result, to the extent that there is a need to evaluate unjust enrichment, my analysis also addresses that issue.

57.     To the extent that as information is produced, data I expect would be available are not available, I would consider such and possibly modify my methodology as appropriate. At this time, because there

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

have been no depositions or information produced, I am only able to opine on what I expect would be available for a national retailer such as Children's Place, given my experience working matters involving retailers such as Kohl's, Sears, JC Penney, and Target. In my experience, retailers such as these typically keep sales transaction data such as that I have identified above (e.g., original price, actual price, date, and store location – all by product).

58.    Assuming U.S. sales of $1.5 billion per year, and an average discount of 20%, and 50% discount compression, that implies that the discounted price should have been 10% lower, or $150 million per year lower (but-for sales of $1.35 billion per year). If one were to multiply that reduction by 4.6 years (going back to February of 2012), that is $690 million due back to consumers for overpayments by them as a result of the false advertising.

Submitted this 1st day of December, 2016.

Christian Tregillis, CPA, ABV, CFF, CLP

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

## APPENDIX A.   INFORMATION CONSIDERED

### Non-Bates Numbered Documents

- Christina Kan, Donald R. Lichtenstein, Susan Jung Grant, and Chris Janiszewski (April 2014), "Strengthening the Influence of Advertised Reference Prices through Information Priming," *Journal of Consumer Research*, Vol. 40, No. 6
- Jerry Gotlieb and Cindy Fitzgerald (1990), "An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product," *Journal of Applied Business Research*, 6 (1), 59-69
- Larry Compeau and Dhuruv Grewal (1998), "Comparative Price Advertising: An Integrative Review, *Journal of Public Policy & Marketing*, 17 (2), 257
- 2015 Annual Report, The Children's Place, Inc.
- California Business & Professions Code §17200
- California Business & Professions Code §17500, *et seq.*
- Consumer Legal Remedies Act, §1750
- Federal Trade Commission guideline 16 CFR § 233.1, Former Price Comparisons
- Schedule summarizing price checks of products at Children's Place

### Pleadings

- Complaint, February 11, 2016

### Websites

- http://phx.corporate-ir.net/phoenix.zhtml?c=120577&p=irol-irhome
- https://www.google.com/finance?q=PLCE
- https://www.childrensplace.com/shop/us/content/myplace-rewards-page
- http://www.childrensplace.com/shop/us/c/kids-accessories-us
- http://www.iheartthemart.com/wp-content/uploads/2015/12/tcp-sale1.jpg
- https://web.archive.org/web/20160305082052/http://www.childrensplace.com/shop/us/c/kids-accessories-us
- https://web.archive.org/web/20160821163809/https://www.childrensplace.com/shop/us/c/toddler-girl-clothes
- https://web.archive.org/web/20160521125903/http://www.childrensplace.com/shop/us/c/baby-clothes?
- http://www.childrensplace.com store locator

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**



## APPENDIX B.  QUALIFICATIONS OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP

Christian Tregillis is a partner in Hemming Morse's Los Angeles office. In this role he analyzes financial, accounting, economic, statistical, and market issues, primarily in regard to disputes and valuations, including the negotiation of license agreements covering intellectual property. He has participated in mediations and has testified in depositions, hearings, arbitrations, and at trial in state and federal courts.

Mr. Tregillis has worked on over 500 matters in his 25 years of financial consulting and investigations, including 11 years at big four accounting firms. He was previously the leader of the Damages, Valuation & IP practice area globally for LECG.  Prior to that he led the Forensic Accounting & Litigation Consulting group in the Western U.S. for Kroll and was the leader of Kroll's Intellectual Property Services practice. Before his work at Kroll he was a partner in the Financial Advisory Services practice at Deloitte & Touche.

Mr. Tregillis was formerly the chair and is currently a member of the Economic Damages Task Force of the American Institute of Certified Public Accountants; he is also a past chair of the Economic Damages Section and is currently on the Steering Committee of the Forensic Services Section of the California Society of Certified Public Accountants.  From 2003 to 2007 he was on the Board of Trustees of the Center for Law in the Public Interest and served as the Center's Chief Financial Officer.  Early in his career he spent two years at First Interstate Bank, where he helped design a portfolio hedging system to manage interest rate exposure, valued acquisition targets and lines of business, statistically forecasted loan losses, and set reserve levels.

### EDUCATION AND CERTIFICATIONS

- Occidental College, A.B. Economics with Distinction
- University of Chicago Graduate School of Business, M.B.A. Finance and Accounting
- Certified Public Accountant, Licensed in California and Certified in Illinois
- Accredited in Business Valuation, American Institute of Certified Public Accountants
- Certified in Financial Forensics, American Institute of Certified Public Accountants
- Certified Licensing Professional, Licensing Executives Society

### SELECT ENGAGEMENTS

- ***Putative class v. department store company***.  Plaintiffs alleged that defendant falsely advertised its products by improperly using advertised reference prices.  Mr. Tregillis issued an expert report regarding whether defendant's transactional records evidenced compliance or a lack of compliance with requirements regarding advertised reference prices, and also on the question of whether there was available a methodology to calculate damages relating to the alleged false advertising.

- ***Non-profit corporation v. manufacturers/sellers of personal care products***.  Plaintiff brought a claim against companies that sell personal care products (e.g., lotion, shampoo, and conditioner). Allegations included that the products were packaged and marketed as "natural" and/or organic, when the products in question were alleged to in fact not meet particular ingredient criteria.  Mr. Tregillis analyzed the amount of economic benefit that defendants received as a result of the claims/packaging in question, including price premia and enhanced sales volumes, each of which were elements of incremental profits.  After Mr. Tregillis issued a declaration the matter settled.

- ***Putative class v. manufacturer of artificial sweetener***.  Plaintiffs alleged that defendant falsely advertised its artificial sweetener as being natural.  Mr. Tregillis issued a declaration on the question of whether there was available a methodology to calculate damages relating to the alleged false advertising.

- **Putative class v. insurance company.**  Plaintiffs alleged that defendant insurance company breached its contracts with plaintiffs by virtue of the implementation of a policy that limited the reimbursement rate for body work on automotive damage claims.  Given that policies for more expensive vehicles had higher premiums than those for lower-priced vehicles, plaintiffs alleged that it was inappropriate to pay the same rate for all vehicles – especially in light of particular training needed to perform certain repairs in order to keep vehicles under warranty.  As part of the class certification process, Mr. Tregillis analyzed whether there was available a methodology to calculate damages for the class.

- **Putative class v. pharmaceutical company.**  Plaintiffs alleged that defendant paid other drug companies to delay their launch of generic drugs, in order to preserve defendant's monopoly on the branded drug Adderall XR.  Mr. Tregillis valued consideration included in multiple transactions between defendant and the other companies, so as to better evaluate whether there had been overpayments and underpayments that would effectively transfer money to the other companies in exchange for their willingness, by delaying their competitive drugs' release, to help defendant earn additional profits during the years in question.

- **Tuna importer v. tuna importer.**  Plaintiff accused defendant, its biggest competitor in the importing of tuna into the US, of falsely advertising its product as being "wood smoked," but instead being treated with carbon monoxide to preserve the fresh appearance of the fish.  Mr. Tregillis quantified financial remedies available to plaintiff, including lost profits and disgorgement of defendant's profits, with consideration of whether the alleged false advertising could be linked to any damage, which analysis included the market share of the two companies over time, the products' pricing, and overlapping customers.  Mr. Tregillis was deposed and testified at trial in federal court.

- **Franchisor v. franchisee.**  After the franchisee discovered that the franchisor had been sued for fraud, with trial occurring during the negotiations with the franchisee, franchisee stopped paying franchise fees, and later shut down his locations (pizza restaurants).  The franchisor brought a claim for trademark infringement, and Mr. Tregillis testified as to damages, including the value of the mark and a reasonable royalty.  He also testified as to a rescission calculation for a counterclaim by the franchisee regarding the failure to disclose the litigation prior to the signing of the agreement.

- **Financier v. founder/owner of restaurant chain and hotel/casino.**  Defendant opened a chain of restaurants and a successful hotel/casino, and later sold all of these interests.  Plaintiff claimed that he was entitled to a portion of the sales price of the hotel/casino - the value of the trademark and expansion rights - even though he had not financed the hotel/casino.  Mr. Tregillis provided expert analysis of the value of the hotel/casino and different components of the $770m transaction, including the value of the trademark rights as a part of the purchase price allocation.

- **Beverage company founder v. financier.**  After signing an agreement to take plaintiff's new beverage product to market, defendant failed to fund the operation as called for in the agreement, which resulted in plaintiff reaching an agreement with another financier on inferior terms, with a lesser percentage maintained by the founder.  The financier counterclaimed that he owned the trademarks, which he alleged were therefore infringed.  Mr. Tregillis quantified damages, measured as lost profits and lost value of the business and IP, and testified at trial in federal court.

- **Estate of founder of Greek restaurant v. founder of Greek Restaurant.**  Pursuant to an agreement between the two founders of a successful Greek restaurant on Coronado Island, on the death of one of the founders the surviving owner could buy out the ownership interest of the other at a price set by the agreement.  Mr. Tregillis valued the rights of the estate for purposes of the dispute and was deposed regarding his analysis.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**



- ***Investigation of accounting issues, license agreements and valuation.*** A well-known and successful athlete and his business advisor parted ways after two decades of working together. As part of the dissolution of their partnership and a dispute between the parties, Mr. Tregillis analyzed transactions and the operations of the dozens of businesses the parties had started, purchased, licensed, and in some cases sold, including a restaurant, partial ownership in a casino, a night club, and a talent agency. Mr. Tregillis and his team evaluated accounting improprieties and the value of the investments/entities for purposes of the dissolution and related litigation.

- ***Manufacturer/seller of auto air intake products adv. Manufacturer/seller of auto air intake products.*** The parties brought claims against each other for false advertising and packaging on air filters and air intake kits, which had horsepower gain guarantees and ratings, claims of gas savings, and language about whether the products were street legal. Mr. Tregillis quantified damages and other remedies in the claim and counterclaim, including an apportioned disgorgement of profits, using sales histories, surveys, and other market and company information. He was deposed and testified at trial in federal court.

## PROFESSIONAL ACTIVITIES, GROUPS & AFFILIATIONS

- California Society of Certified Public Accountants
  - Member, Steering Committee for Forensic Sections
  - Past Chair, Economic Damages Section
- American Institute of Certified Public Accountants
  - Past Chair and current Member, Economic Damages Task Force
  - Past Member, Forensic & Litigation Services Committee
- Licensing Executives Society/Certified Licensing Professionals
  - Past Chair, Exam Development and Maintenance Committee

## PUBLICATIONS, PRESENTATIONS & SPEAKING

- *Income Statement Analysis.* Practicing Law Institute, *Basics of Accounting and Finance* (September, 1998).

- *The Use of Outside Accountants.* Practicing Law Institute course *Basics of Accounting and Finance* (September, 1998) – instructor and chapter author, "*Overview of Services Provided by CPAs.*"

- *Evaluating IP Lost Profits: From Panduit to Grain Processing.* California Society of CPAs publication, *The Witness Chair* (Summer, 2001).

- *The Valuation of Trademarks.* American Intellectual Property Lawyers Association Annual Meeting (October, 2001).

- *The Valuation of Intellectual Property.* San Diego Institute of Intellectual Property Lawyers Association Meeting (April, 2002).

- *Issues to Consider in Evaluating a Reasonable Royalty.* American Institute of CPAs publication, *CPA Expert* (Summer, 2002).

- *IP Through the Life of Your Business.* The Phelps Group: IP Summit (July, 2002).

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

- *The Use of Multiple Regression in Commercial Litigation.* California Society of CPAs, Economic Damages Section Meeting (October, 2002).

- Review of *Valuation for Financial Reporting: Intangible Assets, Goodwill, and Impairment Analysis, SFAS 141 & 142* (by Michael J. Mard, et al.). American Institute of CPAs publication, *CPA Expert* (Winter 2003).

- *The Use of Surveys and Statistics in Litigation.* California Society of CPAs, California Society of CPAs, *Advanced Business Litigation Institute* (May, 2003).

- *Current Issues in IP Litigation Damages.* California Society of CPAs, California Society of CPAs, *Advanced Business Litigation Institute* (May, 2003).

- *The Role of the Financial Expert in Trade Secret Litigation.* California Society of CPAs, Economic Damages Section Meeting (July, 2003).

- *Notes and Numbers: Does the Data on Declining Music Sales "Sing" In an Age of Music Downloading?* Los Angeles County Bar Assoc., Music Section Meeting (December, 2003).

- *Peer to Peer File Sharing Suits: What's Next?* California Society of CPAs publication, *The Witness Chair* (Winter, 2004).

- *AICPA Statement on Standards for Business Valuation.* California Society of CPAs, Economic Damages Section Meeting (February, 2004).

- *Research on Current Issues in Economic Damages.* California Society of CPAs, Economic Damages Section Meeting (May, 2004).

- *Assessing and Proving Damages from Infringement, Program Moderator.* University of Southern California *Intellectual Property Institute* (May, 2004).

- *Daubert Case Law.* American Institute of CPAs, *Conference on Fraud and Litigation Services* (September, 2004).

- *Cost Shifting and Electronic Discovery: How Experts Can Help Clients Minimize Costs.* California Society of CPAs publication, *The Witness Chair*, with Rachel Laybourn (Fall 2004).

- *Valuation of Intellectual Property.* California State Bar Intellectual Property Law Section, *Intellectual Property Institute* (November, 2004).

- *From Qualifications to Unsupported Opinions: A Review of Motions to Exclude Financial Experts.* California Society of CPAs, Economic Damages Section Meeting (February, 2005).

- *Challenges for the Intellectual Property Damages Expert: Apportionment of Value, Multiple Patent Litigation, Price Erosion, and the Entire Market Value Rule.* California Society of CPAs, *Advanced Business Litigation Institute* (May, 2005).

- *You've Been Sued for Infringement – Now What?* University of Southern California Gould School of Law, *Intellectual Property Institute* (May, 2005).

- *Fraud Identification, Protection and Management.* Financial Executives International, Seattle Section meeting (September, 2005).

- *Spending Your IP Dollars Wisely in Foreign Markets.* AeA Oregon Section Meeting (December, 2005).



- *Differences Between Lost Profits and Diminution in Business Value as a Measure of Damages.* American Institute of CPAs publication, BV-FLS Section Update, with Michael Thompson (January, 2006).

- *Practice Aid on Damages in Intellectual Property Disputes* (contributor/editor). American Institute of CPAs publication (February, 2006).

- *The Top 10 Things About IP Every Technology Manager Needs to Know.* Mentor Graphics User2User Conference (May, 2006).

- *Financing Issues in Managing Intellectual Property Risk.* Risk & Insurance Management Society, Los Angeles Chapter Meeting (June, 2006).

- *Awards for Future Damages in Patent Infringement Cases after eBay v. MercExchange.* American Bar Association, *IPL Newsletter* (Summer, 2006, Volume 24, Issue 4).

- *The Forensic Accountant's Role in Claims of Alter-Ego, Successor Liability, and Fraudulent Transfers.* California Society of CPAs, Economic Damages Section Meeting (October, 2006).

- *The Financial Expert Post-eBay: The Four-Factor Test and Future Royalties.* Law Seminars International, *Calculating and Proving Patent Damages* (February, 2007).

- *Econometric Analysis and Multiple Regression.* Chapter in *Litigation Services Handbook: The Role of the Financial Expert, (Fourth Edition)*, with Dr. Mohan Rao, edited by Peter Frank, Michael Wagner and Roman Weil (February, 2007); also in the supplement to the third edition.

- *Patent Rights in the Post-eBay Era: What You Need to Survive.* University of Southern California Gould School of Law, *Intellectual Property Institute* (March, 2007).

- *Current Issues in Patent Damages.* IQPC, 3rd Patent Strategies (March, 2007).

- *Conducting Internal Corporate Investigations.* Association of Corporate Counsel of America, Southern California quarterly meeting (April, 2007).

- *Managing Digital Intellectual Property Risk.* Automotive News Webinar (April, 2007).

- *Protecting Your Intellectual Property: Essential Strategies to Building a Successful IP Protection Program.* Microsoft CSO Summit (April, 2007).

- *Top 10 Reasons Financial Experts Get Excluded and What to Do About It.* American Institute of Certified Public Accountants National Conference on Fraud and Litigation Services (September, 2007).

- *Forensic Accounting Investigations and Valuation Analysis in an XBRL World.* 16th XBRL International Conference (December, 2007).

- *The CPA's Handbook on Fraud and Commercial Crime Prevention.* American Institute of Certified Public Accountants publication (lead author – 2008 update) (May, 2008).

- *Forensic Investigation of Financial Statement Fraud: Case Studies.* Florida Institute of Certified Public Accountants, *Accounting and Business Expo* (May, 2008).

- *Discovery and Production Issues.* American Institute of Certified Public Accountants, *National Conference on Fraud and Litigation Services* (September, 2008).

- *Quanta, Exhaustion and Patent Damages.* IP360 (October, 2008).

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

- *Discount Rates and the Time Value of Money in Litigation.* California Society of CPAs, Economic Damages Section Meeting (May, 2009).

- *Understanding, Developing & Managing Forensic Engagements.* American Institute of Certified Public Accountants Webinar, "Creating a Niche Forensic Practice Series" (February, 2010).

- *Economic Damages: An Overview.* American Institute of Certified Public Accountants Webinar, "Creating a Niche Forensic Practice Series" (May, 2010).

- *Reasonable Royalties and Apportionment of Value: Part 2 (Royalty Stacking).* California Society of Certified Public Accountants and Los Angeles Intellectual Property Lawyers Association, *IP Damages Institute* (November, 2010).

- *Hot Issues in Reasonable Royalty Patent Damages* (topics led: *The Use of Surveys and Demand Curves,* and *The Use of Settlement Agreements*). University of Southern California Gould School of Law, *Intellectual Property Institute* (March, 2011).

- *Differences Between Lost Profits and Diminution in Business Value as a Measure of Damages.* American Institute of Certified Public Accountants, *FVS Consulting Digest* (Issue 1, January 2012).

- *Discount Rates, Risk, and Uncertainty in Economic Damages Calculations.* American Institute of Certified Public Accountants Practice Aid (April, 2012).

- *Discount Rates, Risk, and Uncertainty in Economic Damages Calculations.* American Institute of Certified Public Accountants Webinar (July, 2012).

- *Discount Rates, Risk, and Uncertainty in Economic Damages Calculations; Attaining Reasonable Certainty in Economic Damages Calculations.* California Society of Certified Public Accountants Forensic Services Section Meeting (October, 2012).

- *Financial Forensic Accounting Education Series: Applicable Professional Standards.* (Course Author) American Institute of Certified Public Accountants (May, 2013).

- *Interpreting and Reconciling Recent Case Decisions: Raising the Bar on Lost Profits, Business Valuation and Intellectual Property Damages.* American Institute of Certified Public Accountants Forensic and Valuation Services Conference (November, 2013).

- *Reasonable Certainty Round 2: An Inside Look at the Findings of the Damages Task Force - Reasonable Certainty for New or Unestablished Businesses.* American Institute of Certified Public Accountants Forensic and Valuation Services Conference (November, 2013).

- Reasonable Certainty in Economic Damages Calculations. California Society of Certified Public Accountants Forensic Services Section Meeting (February, 2015).

- Patent Damages Roundtable. University of Southern California Gould School of Law, Intellectual Property Institute (March, 2015).

- Reasonable Certainty in Economic Damages Calculations. American Institute of Certified Public Accountants Practice Aid (August, 2015).

- Author of quarterly *"AICPA Update"* (2006-2009), and *"Economic Damages Section Update"* (2008-2010). California Society of CPAs publication, *The Witness Chair.*

- Research assistant in the publication of textbooks in Microeconomics, Macroeconomics and Econometrics.

- Instructor, the Conviser Duffy (Becker) CPA Review Course.

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

## APPENDIX C.  TESTIMONY HISTORY

Testified for counsel for <u>underlined party</u>.  ** indicates matters that involved counterclaims.

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| <u>Post Advisory Group</u> | Lawrence Post, et al. | JAMS Arbitration | X | | |
| <u>PNY Technologies, Inc.</u> | Miller, Kaplan & Arase, LLP | US District Court - Northern District of California | X | X | |
| <u>Michael Torgan</u> | Stephen Reissman, et al. | ADR Services Arbitration | | X | |
| <u>Ahmad Alkayali</u> | Fatma Houkhari, et al. | California Superior Court – Riverside County | X | X | |
| Synopsys, Inc. | <u>ATopTech, Inc.</u> | US District Court - Northern District of California | X | | |
| Ruth McClamma Stueve, et al. | Raymond Novell, <u>et al.</u> | California Superior Court – Orange County | X | | |
| <u>Monica Barba, et al.</u> | Shire U.S., et al. | US District Court - Southern District of Florida | X | | |
| <u>Taylored Services Parent Co., Inc.</u> | Taylored Acquistion Corporation, et al. | JAMS Arbitration | X | X | |
| <u>Tessera, Inc.</u> | UTAC (Taiwan) Corp. | US District Court - Northern District of California | X | | |
| Yellow Pages Photos, Inc. | <u>SuperMedia, Inc.</u> | US Bankruptcy Court - District of Delaware | X | | |
| SCA Promotions, Inc. | <u>Yahoo! Inc.</u> ** | US District Court - Northern District of Texas | X | | |
| <u>Omega Patents, LLC</u> | CalAmp Corporation | US District Court - Middle District of Florida | X | X | |

*CONFIDENTIAL*

MONICA RAEL v. THE CHILDREN'S PLACE, INC.
EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Tullett Prebon Financial Services, LLC, et al. | Suncica Reljic, et al. ** | Financial Industry National Regulatory Authority Arbitration | | X | |
| LendingTools.com, Inc. | Bankers' Bank of Kansas, et al. | Kansas District Court - Sedgwick County | X | X | |
| Klauber Brothers, Inc. | Target Corporation, et al. | US District Court - Southern District of New York | X | | |
| Vopak Terminal Los Angeles Inc. | Petro-Diamond Incorporated ** | California Superior Court – Orange County | X | X | |
| AAMP of Florida, Inc. d/b/a AAMP of America | Automotive Data Solutions, Inc. | US District Court - Middle District of Florida | X | | |
| Emmett McDonough, et al. | James Knell, et al. | California Superior Court – Santa Barbara County | X | X | |
| Samy Abdou, M.D. | Alphatec Spine, Inc. | US District Court - Central District of California | X | | |
| John Ibarra | Jacob Christopher Ortiz, a/k/a Tito Ortiz, et al. | California Superior Court - Los Angeles County | X | | |
| Angel Aguiar | Merisant Company, et al. | US District Court - Central District of California | X | | |
| Calista Enterprises Ltd. | Tenza Trading Ltd. ** | US District Court - District of Oregon | X | | |
| Tessera, Inc. | Powertech Technology, Inc. and Macrotech Technology, Inc. | US District Court - Northern District of California | X | | |
| Nomadix Inc. | iBAHN Corporation | US District Court - Central District of California | X | | |
| Irvine Fuel, et al. | ConocoPhillips, et al. ** | California Superior Court – Orange County | X | | |

CONFIDENTIAL



**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Casino Marketing Alliance | Pinnacle Entertainment | ADR Arbitration | X | X | |
| Tessera, Inc. | Sony Corporation | US District Court - Northern District of California | X | | |
| Jim Marshall Photography LLC | John Varvatos Enterprises, Inc., et al. ** | US District Court - Northern District of California | X | | |
| iTradeNetwork, Inc. | Emeric McDonald | California Superior Court – Santa Clara County | X | | |
| Nomadix Inc. | Aruba Networks, Inc. | US District Court - Central District of California | X | | |
| NurseGate, Inc., et al. | Parkview Community Hospital Medical Center | California Superior Court – Riverside County | X | | |
| Banning Lary, M.D., et al. | Boston Scientific Corporation ** | US District Court - Southern District of Florida | X | | |
| SanDisk Corporation | PNY Corporation ** | California Superior Court - Santa Clara County | X | X | |
| Nomadix Inc. | Wayport, Inc. and Superclick Networks Inc. | US District Court - Central District of California | X | | |
| Crestview Service, Inc. | Brian Graver, Trustee of the Graver Family Trust | JAMS Arbitration | X | X | |
| Nomadix Inc. | Hewlett Packard Corporation ** | US District Court - Central District of California | X | | |
| Alayne Batsakes | Spiro Chaconas, et al. | California Superior Court – Riverside County | X | | |

CONFIDENTIAL

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/Arbitration | Hearing |
|---|---|---|---|---|---|
| Signal Hill Service, Inc., et al. | Macquarie Bank Limited | US District Court - Central District of California | X | | |
| Steven Short | Charles Ware ** | California Superior Court – Riverside County | X | | X |
| Jeffrey Malone, et al. | Jerry Berger, Montemar Homeowners Association, et al. | California Superior Court – San Diego County | X | | |
| John Woodford Hansen, et al. | Tri-Valley Corporation, et al. | California Superior Court – Ventura County | X | | |
| ACN Digital Phone Service, LLC | Universal Microelectronics Co., Ltd. ** | AAA Arbitration | X | X | |
| Compulink Management Center, Inc. | SAP America Inc., et al. ** | US District Court - Central District of California | X | | |
| Barry Gustin, et al. | HighPoint Capital Management, LLC, et al. | California Superior Court - Alameda County | X | | |
| Motorola Mobility, Inc. | Microsoft Corporation ** | US District Court - Southern District of Florida | X | | |
| Brandy Flores | Chemi-Source, Inc. | California Superior Court - Orange County | X | X | |
| K&N Engineering, Inc. | Spectre Performance, Inc. ** | US District Court - Central District of California | X | X | |
| Kathrein-Werke, KG | Radiacion Y Microondas S.A., et al. | US District Court - Northern District of Illinois | X | | |
| Jivago Inc. | Kleinberg & Lerner, LLP, et al. | California Superior Court - Los Angeles County | | X | |

*CONFIDENTIAL*



**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Worth Bargain Outlet, et al. | AMCO Insurance Company, et al. | US District Court - Central District of California | X | | |
| Baker, Marquart, Crone & Hawxhurst, LLP | Kevin Sullivan ** | AAA Arbitration | | X | |
| King Tuna, Inc. | Anova Foods, Inc. ** | US District Court - Central District of California | X | X | |
| Sunrise Biotechnology, Inc. | Orchid Way, Inc., et al. | California Superior Court - Los Angeles County | | X | |
| Camp Scandinavia AB, et al. | Trulife, Inc., et al. | US District Court - Central District of California | X | | |
| Fun With Phonics, LLC | Leapfrog, Inc. | US District Court - Central District of California | X | | |
| Milton Okun | Peter Morton | California Superior Court - Los Angeles County | X | X | |
| Arista Records, LLC, et al. | Myxer, Inc. | US District Court - Central District of California | X | | |
| Advanced Thermal Systems Corporation | Applied Materials, Inc. ** | US District Court - Central District of California | X | X | |
| Nicoleta Jacoby | Bennett Jacoby | Family Court - State of Hawaii | | X | |
| Daniel Holzman, et al. | Farmers Insurance Exchange, et al. | California Superior Court - Los Angeles County | X | | |
| Lora Vrastil | Madison Marquette Realty Services LP, et al. | California Superior Court - Los Angeles County | | X | |

CONFIDENTIAL

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**



| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Vinetta Lough | Richard Lough, et al. | California Superior Court - Los Angeles County | X | X | X |
| Walters Golf, et al. | Travel Golf Media, Inc., et al. | District Court - Clark County, Nevada | | X | |
| Ann Becher Smead, et al. | Michael Danzi | California Superior Court -Orange County | X | X | |
| Jay Bharat Developers, Inc, et al. | Jim Minidis, et al. ** | California Superior Court - Los Angeles County | | X | |
| Kevin Sullivan | Thomas Sullivan, et al. | AAA Arbitration | X | X | |
| McKesson Corporation | Family Meds, Inc. | US Bankruptcy Court - Northern District of California | | | X |
| Blue Mako, Inc., et al. | Jim Minidis, et al. ** | US District Court - Central District of California | X | | |
| City of St. Petersburg, et al. | Canam Steel Corporation, et al. | US District Court - Middle District of Florida | X | | |
| DealerTrack, Inc. | Finance Express LLC, et al. ** | US District Court - Central District of California | X | | |
| Sugar Association, et al. | McNeil Nutritionals, LLC | US District Court - Central District of California | X | | |
| Troy Valdez | Philip Neuman ** | US District Court - Central District of California | X | X | |
| Phillips, Spallas & Angstadt LLP | Shahab Fotouhi | US Bankruptcy Court - Northern District of California | | X | |



**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Lockheed Martin Corporation | L-3 Communications Corporation, et al. | US District Court - Middle District of Florida | X | | |
| Netalog, Inc. | Belkin Corporation | US District Court - Middle District of North Carolina | X | | |
| Hub City Solid Waste Services, Inc. | City of Compton ** | California Superior Court - Los Angeles County | X | | |
| Dimension One Spas, Inc. | Coverplay, Inc., et al. | US District Court - Southern District of California | X | | |
| Huntleigh USA Corporation | The United States | US District Court - Court of Federal Claims | X | X | |
| Grupo Televisa, S.A., et al. | Telemundo Communciations Group, Inc., et al. | US District Court - Southern District of Florida | X | | |
| CCE-TV Music Promotions, Inc. | Henry Cardenas, et al. ** | AAA Arbitration | X | X | |
| V.K. Enterprises, Inc. | Vartan Markarian | California Superior Court - Los Angeles County | X | X | |
| Sundance Spas, Inc. | Clark Manufacturing, Inc., et al. | California Superior Court - Riverside County | X | X | |
| NED Corporation | Soff-Cut International, Inc. | US District Court - Central District of California | X | | |
| TeeVee Toons, Inc. | Thelen Reid & Priest LLP ** | California Superior Court - San Francisco County | X | | |
| ABC Imaging, LLC | American Reprographics Company, LLC | California Superior Court - Los Angeles County | X | | |

**MONICA RAEL v. THE CHILDREN'S PLACE, INC.**
**EXPERT REPORT OF CHRISTIAN TREGILLIS, CPA, ABV, CFF, CLP – OCTOBER 26, 2016**

| Plaintiff/Claimant | Defendant/Respondent | Venue | Deposition | Trial/ Arbitration | Hearing |
|---|---|---|---|---|---|
| Southwestern Bell Corporation | P&R Metals, Inc. | California Superior Court - Los Angeles County | X | | |
| Mary Magner and Patrick Magner, et al. | Sears Roebuck & Company | California Superior Court - San Diego County | X | | |
| Dalia Sharvit | Michael Henschel, a.k.a. Mickey Henschel, et al. | US Bankruptcy Court - Central District of California | | X | |
| Stanley Mosler, et al. | Hawthorne Savings and Loan Association, et al. | California Superior Court - Los Angeles County | | X | |
| Sun-Pro, Inc., et al. | Deposition Technologies, Inc. ** | California Superior Court - San Diego County | X | | X |
| Coopers & Lybrand LLP ** | Karen Colin | JAMS Arbitration | | X | |

CONFIDENTIAL