UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MONICA RAEL and ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE CHILDREN'S PLACE, INC., a DELAWARE corporation, and DOES 1-50, inclusive,

Defendant.

Case No.: 3:16-cv-00370-GPC-LL

**ORDER**

**(1) CERTIFYING PROVISIONAL SETTLEMENT CLASS;**

**(2) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**(3) PROVIDING FOR NOTICE TO THE SETTLEMENT CLASS;**

**(4) APPOINTING NAMED PLAINTIFFS, CLASS COUNSEL, AND CLAIMS ADMINISTRATOR; AND**

**(5) SETTING FINAL APPROVAL HEARING AND CRITICAL DATES.**

**ECF NO. 60.**

Before the Court is the Plaintiffs' amended, unopposed motion for preliminary

approval of settlement and provisional class certification. (ECF No. 60.) For the reasons detailed below, the Court **GRANTS** Plaintiffs' motion.

To assist the reader, the Court sets out the structure of the opinion to follow. In **Section I**, the Court summarizes the factual and procedural background to this motion, including the material terms of the Settlement Agreement ("SA"). (*See* ECF No. 60-2, Ex. 1, SA.) **Section II** addresses the motion for provisional class certification under Federal Rules of Civil Procedure ("Rules") 23(a) and 23(b)(2). **Section III** addresses the motion for preliminary approval of the Settlement Agreement. The Court analyzes four discrete questions: (a) whether what has been agreed upon is a coupon settlement; (b) whether the Settlement is fair, reasonable, and adequate; (c) whether the Settlement shows signs of collusion between Defendant and Class Counsel; and (d) whether the Notice Plan is adequate. Finally, in the Conclusion at **Section IV**, the Court summarizes its holdings, findings, and orders to the Parties.

The Court advises Class Members reading this opinion that any summary of the Settlement Agreement is not a substitute for the Agreement itself and directs the reader to review the Settlement Agreement.

## I.     Background

### a.  Procedural Background

On February 11, 2016, Plaintiff Monica Rael brought suit on behalf of herself and all others similarly situated against Defendant the Children's Place, Inc. ("TCP" or "Defendant") and fifty unnamed Does (collectively, "Defendants"). (ECF No. 1.) Plaintiff Rael amended the complaint three times and added a second Named Plaintiff, Ms. Alyssa Hendrick (collectively, "Plaintiffs" or "Named Plaintiffs"). (ECF Nos. 9, 19, 29, 37-2.) On November 22, 2017, Plaintiffs filed the Third Amended Complaint ("TAC") alleging three causes of actions for violations of (1) California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*; (2) California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*; and (3) California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.*

(ECF No. 37-2, Ex. B, TAC at ¶¶ 51–78.) In short, Plaintiffs' three causes of action stem from the accusation that Defendant routinely advertises discounted prices from false original prices to deceive customers as to the real value of their goods and unlawfully drive sales. (*Id.* at ¶¶ 1–9.)

On November 22, 2017, Plaintiffs also filed the initial unopposed motion for preliminary approval of settlement and provisional class certification. (ECF No. 36.) The Court heard that motion on February 8, 2018. (ECF No. 42; *see also* Transcript for February 8, 2018 Hearing ("2018 Tr.")). On April 2, 2018, the Court stayed proceedings pending the Ninth Circuit's decision on the petitions for rehearing *en banc* in *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). (ECF No. 48.) The Court denied Plaintiffs' initial settlement motion on June 8, 2018 as moot. (ECF No. 49.) The Parties filed status updates during the pendency of the stay. (ECF Nos. 50, 53.)

On June 17, 2019, the Court lifted the stay. (ECF No. 57.) Then, on October 31, 2019, Plaintiffs filed an amended motion for preliminary approval of settlement and provisional class certification. (ECF No. 60). Plaintiffs included the declarations of Mr. Todd Carpenter as Class Counsel, (ECF No. 60-2, 2019 Declaration of Todd Carpenter ("2019 Carpenter Decl.")), and Ms. Carla Peak of the firm Kurtzman Carson Consultants LLC ("KCC" or "Claims Administrator"). (ECF No. 60-3, Declaration of Carla Peak "Peak Decl.")).[1] On November 22, 2019, TCP filed a notice of non-opposition. (ECF No. 61.)

On December 6, 2019, the Court held a second hearing on Plaintiffs' unopposed motion. (ECF No. 63; *see also* Transcript for December 6, 2019 Hearing ("2019 Tr.")). The Court then ordered the Parties supplement the record with factual support for their assertions at the hearing. (ECF No. 65.) On January 3, 2020, the Parties filed three

---

[1] To be more precise, Plaintiffs first filed the amended motion on October 25, 2019, which the Court then rejected for a minor procedural error. (ECF Nos. 58, 59.) Plaintiffs quickly corrected that error and re-filed the amended motion a few days later. (ECF No. 60).

documents complying with the Court's order: (a) another declaration by Class Counsel Todd Carpenter dated January 3, 2020, (ECF No. 66, Declaration of Todd Carpenter ("2020 Carpenter Decl.")); (b) Plaintiffs' supplemental briefing, (ECF No. 67); and (c) the declaration of Vipul Jain, a TCP employee. (ECF No. 68 at 2, Declaration of Vipul Jain ("Jain Decl.")).

### b. Factual Background

This Section summarizes the material facts of the Settlement Agreement, including (i) the proposed Class, (ii) the releases and warranties provided to Defendant, (iii) the Voucher Fund created by Defendant to compensate the Class, (iv) the awards to Class Counsel and the Named Plaintiffs entailed in the Settlement, and (v) the Notice Plan.

### i. The Proposed Class

Plaintiffs seek provisional certification of a nationwide class including "[a]ll individuals in the United States who, from February 11, 2012 through the date the Court enters the preliminary approval order, purchased any product bearing a discount at one of The Children's Place retail or outlet stores" (the "Class"). (ECF No. 37-2, TAC at § 43; ECF No. 60-2, Ex. 1, SA at § 1.8.) "Defendant, Defendant's counsel, Defendant's officers, directors, and employees, and the judge presiding over the action" are to be excluded. (*Id.* at § 1.8.)

Plaintiffs further divide the Class into three Tiers. (*Id.* at § 2.1.) "Tier 1 Authorized Claimants" include individuals whose qualifying purchases total less than $50, or any individuals who do not submit proof of their purchases. (*Id.* at § 2.1(a)). "Tier 2 Authorized Claimants" include individuals whose qualifying purchases total $50.01 to $150. (*Id.* at § 2.1(b)). "Tier 3 Authorized Claimants" include individuals whose qualifying purchases total more than $150. (*Id.* at § 2.1(c)). Tier 2 and Tier 3 Claimants are required to submit proof of their purchases. (*Id.* at §§ 2.1(a)–(b)). Tier 1 Claimants get one voucher, Tier 2 Claimants get two vouchers, and Tier 3 Claimants get three vouchers. (*Id.* at § 2.2.)

### ii. The Releases & Warranties

Under the Settlement Agreement, the Class agrees to release TCP from any and all claims they have against it. (ECF No. 60-2, Ex. 1, SA at § 2.11.) This includes all "Class Released Claims," i.e. all claims "arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint." (*Id.* at § 1.10.)

Class Members also agree to waive all "Unknown Claims." (*Id.* at §§ 1.31, 2.11.) Under this provision, Class Members waive the protection of California Civil Code § 1542 and thereby relinquish claims which they do "not know or suspect to exist . . . at the time of executing the release and that, if known . . . would have materially affected . . . settlement."[2] (Cal. Civ. Code § 1542; *Id.* at § 1.31.) Per the representation of Class Counsel, the release of Unknown Claims only extends to "issues that were alleged in the complaint related to [TCP's] advertising." (2019 Tr. at 14.)

The Named Plaintiffs likewise release Defendant from future liability. (*Id.* at § 2.12.) Defendant, moreover, admits no wrongdoing and affirmatively denies "each of the claims and contentions alleged by Plaintiffs in the Action." (*Id.* at § 2.13.)

### iii.  The Voucher Fund

To compensate the Class for settling this action, the Settlement Agreement provides for a "Voucher Fund" which will contain 800,000 vouchers to be awarded to qualifying Class Members. (ECF No. 60-2, Ex. 1, SA at §§ 1.33, 2.1–2.4) Vouchers may be used at a TCP store, outlet, or online, and come in one of two forms: "(i) $6 off a purchase (no minimum purchase) or (ii) 25% off a purchase (of the first $100)." (*Id.* at § 1.32.) Vouchers are "transferable," valid for 6 months, and "may be used on items that are on sale or otherwise discounted." (*Id.*) Vouchers cannot be "combined with any other coupon or promotional offer," redeemed for cash, or replaced if lost, stolen, or damaged.

---

[2] As with the known claims, the release language encompassing "Unknown Claims" is "limited to a universe of claims 'arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint . . .'" (ECF No. 60-1 at 25 (quoting (ECF No. 60-2, Ex. 1, SA at § 1.10)).

(*Id.*) The $6 vouchers are "stackable" while the 25% vouchers are not. (*Id.*)

To obtain a voucher, Class Members must comply with the Claims Procedure detailed in the Settlement Agreement. (ECF No. 60-2, Ex. 1, SA at §§ 3.6–3.10.) The Procedure permits Class Members to file a claim with the Claims Administrator, object to the Settlement Agreement, or request to be excluded from the Class. (*Id.*) Class Members must perform these actions on or before the response deadline, which would initially be set at 120 calendar days after the entry of this Order. (*Id.* at §§ 1.28, 3.6.) Class Members may also request to appear at the Fairness Hearing. (*Id.* at § 3.9(c)). In addition to collecting biographical information, the Claim Form asks Claimants to select their Tier, note their purchases and any available proof, choose which voucher to obtain, and provide an e-mail address for electronic delivery. (ECF No. 60-2, Ex. E, Claim Form).

As noted, the number of vouchers each Claimant receives will be equal to the Tier number. (ECF No. 60-2, Ex. 1, SA at § 2.2.) If there are timely claims to more than 800,000 vouchers in the first round of distribution, the Fund will only distribute dollar-based vouchers, and the value of those vouchers will be calculated on a pro rata basis. (*Id.* at § 2.4) In subsequent rounds of distribution, Claimants receive vouchers according to the selections made in their Claim Forms. (*Id.* at § 2.3(a)–(b)). Again, if there are fewer vouchers left in the Voucher Fund than are timely claimed in any subsequent round of distribution, the Fund will then disburse only dollar-value vouchers at a pro-rated value. (*Id.* at § 2.3(c)).

### iv. Awards to Counsel and Named Plaintiffs

The Settlement Agreement also permits the Named Plaintiffs and Class Counsel to recover fees independent of the Voucher Fund. Each Named Plaintiff may recover an "Individual Settlement Award" of $2,500 or less, subject to the Court's approval. (ECF No. 60-2, Ex. 1, SA at § 2.6.). Class Counsel may seek up to $1,080,000 in costs and fees (total), subject to the Court's approval. (*Id.* at § 2.7.) If the Court awards less than that maximum amount in fees and costs to Class Counsel, the difference between the actual award and $1,080,000 will go to the Voucher Fund or, if certain criteria are met, become

a *cy pres* distribution to the National Consumer Law Center. (*Id.* at § 2.8.)

### v. The Notice Plan

The Settlement Agreement provides for a tri-part notice structure, hereafter referred to as the Notice Plan. (ECF No. 60-1 at 9–12.) First, the Claims Administrator will post the Full Notice – a document explaining the Settlement Agreement, the Class, this Order, and other information critical to the Class Members – to an internet website specifically created for this settlement (the "Settlement Website"). (*Id.* at 9; ECF No. 60-2, Ex. 1, SA at § 3.3(a); ECF No. 60-2, Ex. B, Full Notice)). The Settlement Website will also contain the Claim Form, TAC, Settlement Agreement, a notice of attorneys' fees and costs, and this Order. (ECF No. 60-2, Ex. 1, SA at § 3.3(a)). Claimants may file claims electronically through the Settlement Website. (*Id.*)

Second, the Claims Administrator will "use reasonable efforts to identify those TCP customers who may be Class Members for whom it has a valid email address" and provide e-mail notice to those addresses. (*Id.* at § 3.3(b)). These e-mails will come, in part, from Defendant's e-mail records of its "rewards club members." (*See* 2018 Tr. at 2.) The e-mails – which would go to addresses "in the range of 12.5 million" – will contain the address of the Settlement Website, and the e-mail and mailing addresses of the Claims Administrator. (ECF No. 60-3, Peak Decl. at ¶ 4.)

Third, the Claims Administrator "will start implementing an online notice program through the Google Display Network." (ECF No. 60-2, Ex. 1, SA at § 3.3(c); *see also* ECF No. 60-2, Ex. D, Online Media Notice.) In sum, these notices will be short online advertisements, posted to the Google Display Network,[3] that target individuals 18 years of age or older and contain a link to the Settlement Website. (ECF No. 60-3, Peak Decl. at ¶¶ 5–8.)

The Parties claim that their tri-part Notice Plan will reach approximately 70% of

---

[3] *See* Google, Inc., *Display Network Overview*, https://www.google.ca/ads/displaynetwork/index.html (last visited November 24, 2019).

the class on average 2.5 times each. (ECF No. 60-3, Peak Decl. at ¶ 8.) TCP agrees to bear the "administration costs, notice costs . . . and any other related costs (including, but not limited to, distribution)," consistent with § 3.3 of the Settlement Agreement, and up $1,000,000. (*Id.* at § 2.10.) The Parties, through the Claims Administrator, will execute the Notice Plan within sixty days (60) of the entry of this order. (*Id.* at § 3.3.)

## II. Certifying Provisional Settlement Class

This Section examines Plaintiffs' request for provisional certification of the Class. Pursuant to Rules 23(a) and 23(b)(3), the Court **GRANTS** this request and provisionally certifies the Class.

### a. Rule 23(a) Requirements

Class certification is governed by Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. For the foregoing reasons, the Court finds Rule 23(a) is satisfied.

### i. Numerosity

The numerosity "requirement is met if the class is so large that joinder of all members is impracticable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(a)). Impracticability "does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (quotations omitted). "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04-CV-01226-DOC, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or

8

more members." *Krzesniak v. Cendant Corp.*, No. C-05–05156-MEJ, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).

Here, numerosity is satisfied. Though an estimate of the total number of potential Class Members eludes the parties, it is reasonable to assume that number may be in the millions. (*See* ECF No. 60-3, Peak Decl. at ¶ 4 (noting the Claims Administrator expect to receive e-mail addresses "in the range of 12.5 million" for potentially affected consumers)). Defendant, moreover, has not disputed numerosity since pre-mediation discovery took place. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 3.)

### ii. Commonality

"To establish commonality, the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quotations and citations omitted). In other words, not all questions of fact and law need to be common to satisfy commonality. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (finding commonality for a class of more than 15,000 Boeing workers facing company-wide discriminatory practices).

Here, commonality is satisfied. The Class Members' claims stem from the same factual circumstances, namely, the purchasing of TCP merchandise bearing some discount at a TCP store, outlet, or webpage after February 11, 2012. Likewise, each Class Member's claims involve common questions of law, including: "(1) whether defendant's price-comparison advertising scheme regarding its private and exclusive branded apparel and accessories was false or misleading within the meaning of the UCL, FAL or CLRA; (2) whether defendant made false statements in its advertisements; [and] (3) whether defendant's advertisements were likely to deceive a reasonable consumer." *See Spann v. J.C. Penney Corp.* ("*Spann I*"), 307 F.R.D. 508, 518 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016). Thus, like the class action in *Spann I*, here the class meets the requirement of Rule 23(a)(2). *Spann I*, 307 F.R.D. at 518.

### iii.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 417 (9th Cir. 2019) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, typicality is satisfied. Plaintiffs have claims, and suffered injuries, typical of the Class. As with the other Members, Plaintiffs raise claims under UCL, FAL, and CLRA pertaining to TCP's pricing scheme. Also, like other Class Members, Plaintiffs' primary injury is the loss of income from purchases made at TCP stores as a result of TCP's false discounts. Plaintiff Monica Rael, for example, purchased jeans for "approximately $7.47" with the understanding that she was receiving a "50%" discount, only to find that the jeans were not sold at the "original" price in the 90 days preceding her purchase, and that those jeans "were of lesser value than what she paid." (ECF No. 37-2, TAC at §§ 13–14.) Similarly, Plaintiff Alyssa Hendrick was "enticed to purchase jeans" for $9.99 under the presumption that she had received a 40% discount, only to find that the jeans were "never offered for sale as the [TCP outlet] at the full regular price of approximately $16.50." (*Id.* at §§ 15–16.) Plaintiffs' purchases, moreover, are likely comparably priced to those of many potential Class Members as "[h]undreds of items are available [at TCP locations and online] for sale at less than $6.00." (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 12.)

### iv.  Adequacy of Representation

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted). Thus, to determine adequacy, the Court must "resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest

with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'". *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (en banc) (quoting *Hanlon*, 150 F.3d at 1020). Adequacy of representation is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011).

Here, Plaintiffs have no conflicts of interest with other Class Members that would render them inadequate representatives. Plaintiffs' claims are typical of the other potential members' claims, so Plaintiffs are unlikely to act against the interests of the Class. Plaintiffs, moreover, have "stayed abreast of the proceedings" and are willing to "sit for depositions and participate in discovery" as necessary. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 16.) Plaintiffs and the Class Members also "share the common goal of protecting consumer's rights to have properly [priced] products." *Cf. Hofmann v. Dutch LLC*, 317 F.R.D. 566, 573–74 (S.D. Cal. 2016).

Likewise, Class Counsel is adequate. Class Counsel – the law firm of Carlson Sweet Kilpela & Carpenter, LLP – is a firm with "experienced consumer class action attorneys" that have "litigated other cases involving UCL, FLA, and CLRA claims." (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 17.) Class Counsel have advised Plaintiffs through the settlement process, and have made diligent strides to advance their clients' interests by, for example, conducting "informal pre-mediation discovery," "attending two full day mediation sessions with the Honorable Edward A Infante (Ret.) of JAMS, Inc.," obtaining the "Expert Report of Christian Tregillis CPA, ABV, CFF, CLP," and "heavily negotiat[ing]" this Settlement Agreement. (*Id.* at §§ 4, 5, 11.) These facts show that Plaintiffs and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### b. Rule 23(b)(3) Requirements

"In addition to meeting the numerosity, commonality, typicality, and adequacy prerequisites, the class action must fall within one of the three types specified in Rule

23(b)." *In re Hyundai*, 926 F.3d at 556. Here, Plaintiffs seek certification under Rule 23(b)(3). (ECF No. 37-2, TAC at §§ 41–50.)

Plaintiffs contend that the "questions of law or fact common to Class Members predominate over any questions affecting only individual members," and a class action would be the "superior . . . method[] for fairly and efficiently adjudicating the controversy." (ECF No. 60-1 at 28 (quoting Fed. R. Civ. P. 23(b)(3)). For the foregoing reasons, the Court agrees with Plaintiffs' arguments and finds Rule 23(b)(3) is satisfied.

### i. Predominance

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). In other words, the Court asks whether issues "subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 634 (S.D. Cal. 2010) (internal quotations and alterations omitted). A finding of predominance ensures "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).

Here, common questions predominate over individual questions. As discussed with respect to commonality, multiple facts and common questions of law bind the class together. *See supra* Section II.a.ii. Most importantly, regardless of the volume, price, timing, or location for any Claimant's qualifying purchase, all claims will require the Court to analyze whether Defendant's pricing scheme and pattern of discounting prices was lawful under California law. Therefore, the Class is sufficiently cohesive to merit a joint adjudication, and thus the Class meets the predominance requirement.

### ii. Superiority

The superiority requirement focuses on the determination of "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). The class action method is superior if "classwide litigation of common issues will reduce litigation costs and promote greater

12

efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Likewise, the class-action method is superior where individual litigants are unlikely to pursue meritorious claims merely because their respective awards would be too small individually to merit the costs of such litigation. *See Barani v. Wells Fargo Bank, N.A.*, No. 12-CV-2999-GPC, 2014 WL 1389329, at *4 (S.D. Cal. Apr. 9, 2014).

Here, the superiority requirement is satisfied. As discussed with respect to numerosity, it is possible that the number of Claimants will range in the hundreds of thousands. *See supra* Section II.a.i. Consequently, judicial economy favors class-based adjudication. *Cf. In re Activision Sec. Litig.*, 621 F. Supp. 415, 435 (N.D. Cal. 1985) (finding joint litigation economic where only 150 claims existed). The Class Members, moreover, only suffered damages approximately equal to 10% of the sale price of their respective purchases. (ECF No. 60-2, Ex. 2, Expert Report of Christian Tregillis ("Tregillis Report") at ¶ 58; ECF No. 66 at 4, 2020 Carpenter Decl. at ¶ 8.) Thus, given the low prices of TCP's inventory, (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 12), "it is unlikely that individual actions will be filed." *Barani*, 2014 WL 1389329, at *4. And, those damages are "relatively modest compared to the burden and expense that would be entailed by individual litigation." (ECF No. 37-2, TAC at ¶ 48.)

## III. Granting Preliminary Approval of Class Action Settlement

Section III of this Order addresses Plaintiffs' unopposed motion for preliminary approval of the Settlement Agreement. (ECF No. 60-1.) As a threshold matter, the Court holds that the Settlement Agreement does not call for a distribution of coupons within the meaning of the Class Action Fairness Act of 2005 ("CAFA"), 28 USC 1711 *et seq. See generally In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015). The Court next finds that the Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2). The Court also applies heightened scrutiny to the Settlement Agreement because it was reached before the Class was approved and finds there is no indication of collusion between Class Counsel and Defendant. *See generally Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019). Lastly, the Court finds that the

Settlement Agreement provides for the "best notice that is practicable under the circumstances." Fed. R. Civ. Pro. 23(c)(2).

### a. Whether the Settlement is a Coupon Settlement

Congress passed CAFA "primarily to curb perceived abuses of the class action device." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)). "One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.* (citation omitted). Coupon settlements present the risk that Class Counsel may "negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees." *Id.* (quoting S. Rep. 109–14, at 29–30 (2005)). As a result, the unidentified Class Members may be "shortchanged." *See Redman v. RadioShack Corp.*, 768 F.3d 622, 636-37 (7th Cir. 2014).

To mitigate the risk of unfair coupon settlements, CAFA provides for increased judicial scrutiny. 28 U.S.C. § 1712(e). CAFA also awards attorney's fees "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a)," instead of "the amount of time class counsel reasonably expended working on the action" per the "lodestar" method. *See In re HP Inkjet*, 716 F.3d at 1183. Thus, delineating settlements that award cash or cash-equivalent certificates from those awarding coupons affects the calculation of attorneys' fees and bears upon the fairness of the settlement. *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1130 (S.D. Cal. 2018) (quoting *In re HP Inkjet*, 716 F.3d at 1182–86).

Congress did not define the term "coupon" when promulgating CAFA. *In re Online DVD*, 779 F.3d at 950. However, the Ninth Circuit has since fashioned a three-part test to identify coupons: "(1) whether Class Members have to 'hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards*

*Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (citing *In re Online DVD*, 779 F.3d at 951). Applying these factors in *In re Online DVD*, the Ninth Circuit found that a $12 gift card to Walmart was not a coupon because the "class member need not spend any of his or her own money" to make another Walmart purchase. *In re Online DVD*, 779 F.3d at 951. Such gift cards, moreover, were transferable, did not expire, and could be used to purchase "one of many different types of products" sold for $12 or less. *Id.* at 951–52. In addition, consumers could opt to receive $12 in cash instead of a $12 gift card. *Id.* at 941. The Court finds that the $6 vouchers offered in this Settlement, as with the $12 gift cards offered in *In re Online DVD*, are not coupons for the following reasons.[4]

First, Plaintiffs do not need to "hand over more of their own money before they can take advantage of" the vouchers. *In re Easysaver*, 906 F.3d at 757 (quotations omitted). Plaintiffs present compelling evidence that the purchasing power of a $6 voucher at TCP is significant. Of the 1,024 items available for purchase online in October 2019, 435 were listed for sale under $6.00 (i.e., 42%). (ECF No. 66 at 2–3, 2020 Carpenter Decl. at ¶ 4.) The median price point of those items was only $4.20. (*Id.* at ¶ 5.) Also, about 760 items were listed for sale under $10.00 (i.e., about 75%). (*Id.* at ¶ 4.) These figures, moreover, likely represent above-average prices for TPC's retail inventory as winter seasonal items tend to be "slightly more expensive." (*Id.*).

Defendant likewise asserts that, as of December 18, 2019, TCP had "several hundred thousand items, totaling more than 20 million units, available in its stores and online for less than $6. These items include tops, bottoms, sleepwear, shoes, bags, jewelry, and other accessories in baby, toddle, girls and boys." (ECF No. 68 at 2, Jain Decl. at ¶ 3.) Thus, the instant facts differ from those present in coupon settlements. *See, e.g.*, *In re Easysaver.*, 906 F.3d at 757 ("Defendants only claim to sell '15–25 products'

---

[4] It is beyond dispute that the 25% vouchers are coupons within the meaning of *In re Online DVD*. However, "having a coupon *option* does not necessarily transform a class action settlement into a coupon settlement under CAFA." *Foos v. Ann, Inc.*, No. 11-CV-2794-L, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013). Consequently, this does not change the Court's coupon analysis.

for under $20. And that meager list does not even account for shipping charges."); *Seegert*, 377 F. Supp. 3d at 1132 ("Of the 62,000 products, only about 5,800 of them are under $ 18" voucher limit); *Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 780 (S.D. Ohio 2019) ("It is undisputed that Class Members will have to spend money . . . as Vita-Mix containers and blenders . . . exceed the $70 Gift Card" with prices starting at "$144.95").

It is unlikely, moreover, that the Voucher Fund will distribute vouchers of a value substantially less than $6 in the first round of distribution. (ECF No. 60-2, Ex. 1, SA at §§ 2.3–2.4 (describing the procedure by which vouchers would be disbursed "on a pro rata basis" in the event that the Voucher Fund is "exhausted by the first round of distribution")). The Parties estimate that the "approximately 1% of the Class will submit a claim." (ECF No. 66 at 3, 2020 Carpenter Decl. at ¶ 6.) This estimate "is based on the historical claims rate for four similar consumer cases that offered a voucher of similar value as part of the settlement." (*See id.*; ECF No. 66-1, Table of Comparable Cases (including four cases with filing rates ranging from 0.23% to 2.07%)). And, as Plaintiffs note, consumer class actions tend to result in claims rates in the low single digits. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376-EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving settlement with a "claims rate for the monetary relief portion of the settlement of roughly 1.9%"); *Spillman v. RPM Pizza, LLC*, No. CIV-A-10-349-BAJ, 2013 WL 2286076, at *2 (M.D. La. May 23, 2013) (noting that "less than one percent of the total class" filed claims); *Touhey v. United States*, No. ED-CV-08-01418-VAP, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (noting that "approximately 2%" of Class Members filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377–78 (S.D. Fla. 2007) (noting that about 1.1%, i.e. 118,663 of about 10.3 million Class Members, filed claims). Considering the Parties' claims and authorities, the Court finds it likely that Class Members who file claims and elect the dollar-based vouchers will receive vouchers of approximately $6 in value.

Second, the vouchers are applicable to a wide variety of products. *In re Online*

*DVD*, 779 F.3d at 951. Like the consumer in *In re Online DVD*, a Class Member need not apply their voucher to the same item, or the same category of items, that would give rise to their claim against Defendant. *Id.* at 952 (noting "class members are suing due to an online-DVD rental agreement" but could purchase "many products beyond DVDs" with the gift card). Moreover, in contrast to the minimal "inventory" available at the flower and chocolate store defendant in *In re Easysaver*, TCP operates 961 stores in the United States, Canada, and Puerto Rico" and an "online store at www.childrensplace.com." *Compare In re Easysaver*, 906 F.3d at 757 *with* (ECF No. 68 at 2, Jain Decl. at ¶¶ 2–3) *and* (ECF No. 60-2, Ex. 2, Tregillis Report at 3 n.4.) TCP is thus a sufficiently large retailer – even if not a "giant" one like Walmart – to avoid restricting a consumer to a "meager list" of goods for purchase. *In re Easysaver*, 906 F.3d at 757. And, while vouchers cannot be used in conjunction "with any other coupon or promotional offer," they are applicable to "items that are on sale or otherwise discounted." (ECF No. 60-2, Ex. 1, SA at § 1.32.)

Third, the vouchers are subject to some concerning limitations in use – but not so concerning that the vouchers should be treated as coupons within the meaning of CAFA. On the one hand, the vouchers are "transferrable," "stackable with each other," (ECF No. 60-2, Ex. 1, SA at § 1.32), and have no "blackout periods." *In re Easysaver*, 906 F.3d at 757. On the other hand, they expire in "6 months." (ECF No. 60-2, Ex. 1, SA at § 1.32). Plaintiffs' argument that a six-month window is appropriate "where Class Members are purchasing products for growing children" does not fully assuage the Court's concerns, (ECF No. 67 at 6), as "redemption periods usually are longer" than six months. *Redman*, 768 F.3d at 630 (J. Posner). At a minimum, courts have differed as to whether six months is appropriate. *Compare Chaikin v. Lululemon USA Inc.*, No. 3:12-CV-02481-GPC, 2014 WL 1245461, at *3 (S.D. Cal. Mar. 17, 2014) (approving a class action settlement offering vouchers that expire within six months), *and Foos v. Ann, Inc.*, No. 11-CV-2794-L, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013) (same), *with In re HP Inkjet*, 716 F.3d at 1176 (noting that Defendants' "e-credits" were "coupons" in part because

they "expire six months after issuance"), *and Davis v. Cole Haan, Inc.,* No. C-11-01826-JSW, 2013 WL 5718452, at *3 (N.D. Cal. Oct. 21, 2013) (finding a class action settlement was a coupon settlement, in part, because of "significant limitations" including that "the vouchers expire after six months"). The vouchers are also not "redeemable for cash." (ECF No. 60-2, Ex. 1, SA at 1.32); *see In re Easysaver*, 906 F.3d at 757–58 (relying in part the lack of redeemability to find the credits were coupons)*; Seegert*, 377 F. Supp. 3d at 1132 (same).

On the balance, the Court finds that the $6 vouchers are not coupons. The vouchers here are intended to provide real value to the consumer and are not the kinds of "rebates and coupons aim[ed] to facilitate a sale to a purchaser who would not otherwise purchase a product at a higher price." *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010). The vouchers, moreover, satisfy the first two *In re Online DVD* factors and do not present such overwhelming concerns as to the third factor that the Court's analysis should shift. Thus, because a Class Member may use the vouchers without spending more of their own money and the vouchers do not apply only to a limited set of products or services, the Court finds that the vouchers' limitations on how flexibly a Class Member can spend them do not render the vouchers coupons within the meaning of CAFA. *In re Online DVD*, 779 F.3d at 951.

### b. Whether the Settlement Agreement is Fair, Adequate, and Reasonable

Rule 23(e) requires that the Court approve any settlement of class claims. Fed. R. Civ. P. 23(e)(2). The Court's oversight function operates on a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citations omitted). Thus, in approving a class action settlement, the Court advances the "overriding public interest in settling and quieting litigation," particularly where resource-intensive class actions are concerned. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

To fulfill its duty, the Court must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952 (internal quotation

marks and citations omitted). Courts should consider some or all of the following factors in determining if a settlement is fair: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959.

Upon evaluating the foregoing factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

### i. The Strength of Plaintiffs' Case; The Risk, Expense, Complexity and Likely Duration of Further Litigation; and The Risk of Maintaining Class Action Status Throughout the Trial

Settlement is favored where a case is "complex and likely to be expensive and lengthy to try." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1300 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) *(*quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). Here, the balance of strengths and risks favors settlement.

On the one hand, Plaintiffs' claims appear strong. Counsel conducted a "years-long investigation into The Children's Place's sale discounting practices" across multiple jurisdictions which they contend shows "pervasive" violations of California law. (ECF No. 60-1 at 12.) Plaintiff also obtained an expert whose report corroborates these accusations and helps calculate damages. (ECF No. 60-2, Ex. 2, Tregillis Report.)

On the other hand, the Parties recognize the challenges in continuing to litigate this matter, including that "the expense, delay, risks and uncertainties associated with continued prosecution. . . could take several more years to litigate." (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 18.) Similarly, Class Counsel acknowledges that the "state of the law regarding the appropriate method for calculating damages or restitution in these types of false pricing cases is in flux." (ECF No. 60-1 at 20; ECF No. 67, 2020 Carpenter Decl. at 3.) Hence, it may be possible that years from now the class would succeed on the merits

only to "recover nothing" in damages. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("*Spann II*"); *see also Chowning v. Kohl's Dep't Stores, Inc.*, No. CV-15-08673-RGK-, 2016 WL 1072129, at *1 (C.D. Cal. Mar. 15, 2016), *aff'd*, 735 F. App'x 924 (9th Cir. 2018), *amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018), *and aff'd*, 733 F. App'x 404 (9th Cir. 2018) (granting defendants summary judgment in a suit based on allegations of deceptive pricing because the plaintiffs "failed to demonstrate a viable measure of restitution"); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (discussing in detail the complexity of estimating damages in cases where the harm arises from deceptive advertising).

### ii. The Amount of Settlement

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial; nor must the settlement provide full recovery of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.* at 628.

Here, Plaintiffs claim that the settlement provides real value to the class, and the Court agrees for three reasons. (ECF No. 60-1 at 14–15.) First, the Court finds that the $6 vouchers provide Class Members with adequate purchasing power given the low prices common to much of Defendants' inventory. *See supra* Section III.a. Second, the Court finds that the number of vouchers is sufficient for Claimants to receive vouchers valued at or about $6 in the first round of distribution. *Id.* Third, the Court finds that the total amount in the Voucher Fund – approximately $5.4 million dollars assuming everyone opts for $6 vouchers – is adequate. At the February 8, 2016 hearing, Plaintiffs' counsel

estimated that full relief, i.e. "mak[ing] a voucher available for every single class member," would require Defendant to create a Voucher Fund of $40 million dollars. (*See* 2018 Tr. at 5.) Assuming that the total potential relief in this action ranges up to that amount, Defendant's proposed award of $5.4 million dollars would give the Class a certain recovery of 13% of the potential award at trial. This number aligns with other large class actions entailing small-dollar claims. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a total amount estimated to be 6% of the maximum possible recovery). This amount represents, moreover, a fair compromise given the surrounding questions regarding the calculation of damages at trial, (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 18; ECF No. 60-1 at 20), and the limited damages that stem from each sale. (ECF No. 60-2, Ex. 2, Tregillis Report at ¶ 58 (finding that damages would be equal to a "10% discount" on the price of each qualifying purchase)).

Thus, because the Voucher Fund contains sufficient vouchers with real purchasing power, and the total award represents an informed, negotiated compromise, the Court finds that the Settlement Amount is fair and reasonable.

### iii.  The Extent of Investigation and Discovery and the Stage of Litigation

The Settlement Agreement is the result of an arms-length negotiation predicated on sufficient investigation, discovery and negotiations. First, the parties only exchanged pre-mediation discovery. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 3.) They did not engage in more "substantial discovery," which could reduce Plaintiffs' ability to evaluate the appropriateness of the Settlement. *Cf. Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-00964-GPC, 2014 WL 3519064, at *3 (S.D. Cal. July 14, 2014).

The Settlement, however, is informed by Plaintiffs' thorough investigation. Class Counsel engaged in the multi-district, "years-long" investigation undertaken to assess Plaintiffs' claims and the class claims. (ECF No. 37-2, TAC at ¶ 22–40; ECF No. 60-1 at 12.) During this investigation, counsel photographed and compared "price tags and retail discount signage in the Defendant's retail and outlet stores throughout California as well as select stores in" eight other states. (ECF No. 66, 2020 Carpenter Decl. at ¶ 2.)

Plaintiffs reinitiated the investigation over the 2019 holiday season to corroborate their findings. (*Id.* at ¶ 3.)

In addition, the Parties met over two full-day mediation sessions conducted by the Honorable Edward A. Infante of JAMS, Inc. on December 8, 2016 and April 19, 2017, and subsequently negotiated, drafted, and executed the instant Agreement. (ECF No. 60-1 at 13–14; ECF No. 60-2, Ex. 2, Tregillis Report). Collectively, these efforts are enough to satisfy this factor.

### iv. Adequacy and Experience of Class Counsel

As discussed with respect to adequacy for class certification, *see supra* Section II.a.iv, Class Counsel are adequate advisors to the Class. There is no evidence of animosity or conflicting interests (aside from the clear sailing clause discussed below), and Class Counsel is sufficiently experienced to advocate on behalf of the Class. (ECF No. 60-2, 2019 Carpenter Decl. at ¶¶ 1, 13, 17, 18.)

### c. Applying Heightened Scrutiny for Signs of Collusion

The "[C]ourt's role in the class action settlement process is to protect the rights of those not involved in negotiating the settlement, generally the unnamed class members." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) (quotations omitted); *see also Officers for Justice*, 688 F.2d at 624 (collecting cases). Where a settlement is agreed upon prior to certification, there is a "greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Consequently, the Court applies greater scrutiny and considers whether the Settlement Agreement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted).

"This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quotations omitted). Most commonly, these unjust

3:16-cv-00370-GPC-LL

benefits take the form of (1) a "disproportionate distribution of the settlement" to Class Counsel; (2) "a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)"; or (3) "a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

Here, the Settlement Agreement "bears none of the typical signs of collusion between class counsel and defendants." *In re Hyundai*, 926 F.3d at 569. For example, if the Court does not award full fees and costs to Class Counsel, the Settlement Agreement requires that the amount by which the fees were reduced be made available to the Class as additional vouchers. (ECF No. 60-2, Ex. 1, SA at § 2.8.) The absence of a clause reverting funds to the Defendant mitigates the fear that the Settlement Agreement is the product of collusion between Defendants and Class Counsel. *Cf. In re Bluetooth*, 654 F.3d at 947 (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.)) (noting that the reversion of unpaid fees to the defendant may signal collusion).

Likewise, the Agreement does not award Class Counsel disproportionate fees. As noted, Defendant is likely to pay at least $5.4 million towards the vouchers. Hence, because Class Counsel agrees not to seek more than $1,080,000 to cover fees and costs, (ECF No. 60-2, Ex. 1, SA at § 2.7), Counsel's maximum fees do not exceed 20% of the value of the Voucher Fund. *Cf. Hanlon*, 150 F.3d at 1029 (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)) (noting that the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees.") The Court, moreover, finds that the $5.4 million estimated value of the Voucher Fund accurately reflects the vouchers' value to the Class Members because they are not coupons, as discussed earlier. *See supra* Section III.B. Unlike the vouchers in *Roes*, for example, these vouchers are useable by Class Members, provide enough purchasing power that Class Members need not spend additional funds to use them, and are not exchangeable for only 10% of their value in cash. *Cf. Roes*, 944 F.3d at 1052. In addition, even if the vouchers are limited by a 6-month expiration window, they are both

transferrable and stackable, and can be used in conjunction with existing sales at any TCP store or online. *See In re HP Inkjet*, 716 F.3d at 1179 (noting that "a coupon settlement is likely to provide less value to Class Members if . . . the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated").

In addition, the Court recognizes that the Agreement contains a potentially problematic "clear sailing" clause as to Class Counsel's fees. (ECF No. 60-2, Ex. 1, SA at § 2.7) ("TCP agrees not to object to Class Counsel's request . . .") Such clauses create the risk that "the plaintiff may agree to less for the class in exchange for a higher fee." *See* Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. LEGAL ANALYSIS 167, 200 (2009). This risk, however, is mitigated by the Settlement Agreement's terms. First, "Plaintiffs must petition the Court for approval of any award to Class Counsel of attorney's fees and costs." (ECF No. 60-2, Ex. 1, SA at § 2.7.) Consequently, when the Parties bring forward motions for final approval of the Settlement Agreement, and then report on the vouchers' distribution, the Court will be in a position to scrutinize whether the final amount to be awarded should, in fact, reach $1,080,000. And, the Court may then reduce the petitioned amount as is reasonable and assign that the value by which the award is reduced to the Class Members. (*Id.* at § 2.8.)

Also, there is no indication that the awards to the Named Plaintiffs here are the result of collusion or special treatment contrary to the Class's interest. Awards to Named Plaintiffs are "fairly typical" in class action settlements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They properly compensate Named Plaintiffs for the additional duties required of them to bring forward the litigation and execute a settlement. *Id.* at 958–59. Here, the awards are reasonable. *Cf. In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (granting preliminary approval of an agreement allotting $15,000 in fees for each Named Plaintiff from a fund of $945,960). Afterall, the Named Plaintiffs have served in their role since 2016 and have made themselves available to confer with Class Counsel and for discovery, as needed. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 16.)

Consequently, for the foregoing reasons, the Court finds that the Settlement Agreement's clear sailing clause, awards to Class Counsel and Named Plaintiffs, and language on reversion show the absence of collusion.

**d. Approving the Form, Manner, and Content of the Proposed Notices**

Plaintiffs request that the Court approve the proposed Notice Plan and Claims Procedure. (ECF No. 60-1 at 9–12, 15, 21–22, 31–32.) Rule 23(c)(2) requires the "best notice practicable under the circumstances" and permits notice to be served by "United States mail, electronic means, or other appropriate means." The Notice Plan must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Rinky Dink Inc v. Elec. Merch. Sys. Inc.*, No. C13-1347-JCC, 2015 WL 11234156, at *7 (W.D. Wash. Dec. 11, 2015) (quotations omitted). The Ninth Circuit has found that a Notice Plan is satisfactory if it "alert[s] those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD*, 779 F.3d at 946.

Here, Plaintiffs hired a "leading notice and settlement administration firm," Kurtzman Carson Consultants LLC, to design and implement the Notice Plan. (ECF No. 60-3, Peak Decl. at ¶ 2.) Plaintiffs intend to disseminate notice through a tri-part plan: direct e-mail notice to approximately 12 million potential members, a website containing the relevant information to understand and file a claim, and a series of online advertisements targeting individuals 18 years of age or older through Google's Display Network. (*Id.* at ¶¶ 5–8.) Based on their experience, and the filings rates in other class actions offering similar vouchers, Plaintiffs and the Claims Administrator expect that the Notice Plan will reach approximately 70% of the class on average 2.5 times each. (ECF No. 60-1 at 10; ECF No. 60-3, Peak Decl. at ¶ 8.)

The Court finds that the Notice Plan satisfies the requirements of Rule 23. Courts assessing voucher-based settlements in class actions that deliver notice "primarily through email" have found similar notice programs to comply with Rule 23. *See, e.g.*, *Keirsey v. eBay, Inc.*, No. 12-CV-01200-JST, 2014 WL 644697, at *1 (N.D. Cal. Feb. 14, 2014) (finding that a program delivering notice supported by a "class website" was the "best notice practicable under the circumstances"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *4 (N.D. Ga. Jan. 13, 2020) (approving a comparable notice plan – i.e., one that includes a settlement website, online advertising, e-mails, and contact information for the Claims Administrator – which adds only a "full-page ad in USA Today").

The proposed notices and Settlement Website, moreover, will collectively contain all of the information necessary to adequately inform interested Class Members how to engage with the Settlement, including (1) information on the meaning and nature of the Class; (2) the basic terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the Settlement Fund; (4) the procedures and deadlines for submitting Claim Forms, objections, and/or requests for exclusion; and (5) the date, time and place of the fairness hearing. (*See* ECF No. 60-2, Ex. B, Full Notice; ECF No. 60-2, Ex. C, E-Mail Notice; ECF No. 60-2, Ex. D, Online Media Notice; Ex. E, Claim Form.) With respect to the E-Mail Notice, the Parties recognize the need to ensure adequate service. (*See* 2019 Tr. at 12.) Also, though not contained in the Settlement Agreement per the Court's review, Class Counsel represented to the Court that the Parties are "prepared to provide" a phone number with which Class Members may contact the Claims Administrator with questions in English and Spanish. (*Id.* at 13.) As such, the Court concludes that this Notice Plan provides the best possible notice under the circumstances.

## IV.    Conclusion & Orders

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of the Settlement Agreement and provisional certification of the Class. To facilitate the implementation of that motion, the Court **ORDERS** the following:

1. **The Court hereby orders the following approvals and certifications:**

   a. <u>Approval of the Settlement Agreement.</u> The Settlement Agreement, including the Full Notice, E-Mail Notice, Online Media Notice, and Claim Form, are preliminarily approved. (*See* ECF No. 60-2, Exs. B–E.)

   b. <u>Approval of the Class Notice Plan.</u> The Notice Plan is approved. The Parties and the Claims Administrator will notify Class Members of the Settlement in the manner specified under Section 3.3 of the Settlement Agreement.

      i. <u>Additional Order:</u> The Court further **ORDERS** the Parties to comply with Cal. Civ. Code § 1781(d) by giving notice of this Settlement by publication in a newspaper of general circulation in the county in which the alleged transactions occurred as provided by law.

   c. <u>Provisional Certification of the Class.</u> The Class is provisionally certified as a class of all individuals in the United States who, within the Class Period, made a Qualifying Purchase. The Court utilizes these terms as defined in Section 1 ("Definitions") of the Settlement Agreement. (*See* ECF No. 60-2, Ex. 1, SA at §§ 1.8, 1.9, 1.26.)

   d. <u>Approval of CAFA Notice.</u> The Court finds that TCP has attempted to comply with 28 U.S.C. § 1715(b), per the affidavit of Ms. Jeanne M. Chernila, Project Manager at KCC Class Action Services, LLC, by sending sixty (60) "CAFA Notice Packets" to the requisite parties, on December 1, 2017. (*See* ECF No. 61-1.)

      i. <u>Additional Order:</u> To fully comply with CAFA, the Court **ORDERS** the Parties send new CAFA Notice Packets which include notice as to the date, time, and location for the Final Fairness Hearing, and a copy of this Order.

2. **The Court hereby makes the following appointments:**

   a. <u>Conditional Appointment of Class Representatives.</u> Plaintiffs Monica Rael and Alyssa Hedrick are conditionally certified as the Class Representatives

to implement the Parties' settlement in accordance with the Settlement Agreement.

  b. <u>Conditional Appointment of Class Counsel.</u> The law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP is conditionally appointed as Class Counsel.

  c. <u>Conditional Appointment of Claims Administrator.</u> The firm of Kurtzman Carson Consultants LLC is conditionally appointed as Claims Administrator.

3. **The Court hereby instructs Class Members to review the Settlement Agreement. The Settlement Agreement permits Class Members to (a) file claims for vouchers, (b) object to the Settlement Agreement, and (c) request to be excluded from the Class and Settlement up to 120 days after the entry of this Order. Class Members may also appear at the Fairness Hearing.**

  a. <u>Claims.</u> Class Members may file a Claim, as explained in Section 3.6 of the Settlement Agreement.

  b. <u>Objections.</u> Class Members may object to the Settlement Agreement, as explained in Section 3.9 of the Settlement Agreement.

  c. <u>Exclusions.</u> Class Members may request to be excluded from the class, as explained in Section 3.10 of the Settlement Agreement.

  d. <u>Appearance at Fairness Hearing.</u> Class Members may appear at the Fairness Hearing upon request as explained in Section 3.9(c) of the Settlement Agreement.

4. **The Court orders that, if the Settlement Agreement terminates for any reason, the following will occur:**

  a. Class Certification will be automatically vacated;

  b. Plaintiffs will stop functioning as Class representatives;

  c. Class Counsel will stop functioning as Class Counsel; and

  d. This Action will revert to its previous status in all respects as it existed

immediately before the Parties executed the Settlement Agreement, except for Plaintiffs' filing of the Third Amended Complaint. This Order will not waive or otherwise impact the Parties' rights or arguments.

5. **Further Action in This Matter by the Parties.**

    a. <u>Stay of Proceedings.</u> All discovery and pretrial proceedings and deadlines are stayed until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

    b. <u>Procedures for Implementing the Settlement Agreement.</u> Counsel and the Parties are hereby authorized to agree to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the terms of the Agreement.

    c. <u>Scheduling the Fairness Hearing.</u> On July 31, 2020 at 1:30 p.m., this Court will hold a Fairness Hearing to determine if the Settlement should be finally approved in Courtroom 2d of the Edward J. Schwartz U.S. Courthouse.

    d. <u>Critical Dates.</u> The Court **ORDERS** all parties adhere to the following dates:

| Event | Timing | Date |
|---|---|---|
| **Last day** for Defendant, through the Claims Administrator, to:<br>(1) Send E-Mail Notice,<br>(2) Start operating Settlement Website, and<br>(3) Begin to provide Online Media Notice. | 60 days after entry of this Order | **3/31/2020** |
| **Last day** for Plaintiffs to file fee petition. | 90 days after entry of this Order | **4/30/2020** |
| **Last day** for Class Members to:<br>(1) File a claim,<br>(2) Request an exclusion, or<br>(3) Object to the Settlement. | 120 days after entry of this Order | **5/30/2020** |
| **Last day** for Parties to file briefs in support of the Final Order and Judgment. | One month before the Fairness Hearing | **6/30/2020** |

| Event | Timing | Date |
|---|---|---|
| Date of **Fairness Hearing**<br>(to be held in Courtroom 2D of the Edward J. Schwartz U.S. Courthouse, 221 West Broadway, San Diego, CA 92101) | 160 or more days after entry of this Order | **7/31/2020 at 1:30 p.m.** |

This Court may order the Fairness Hearing to be postponed, adjourned, or continued. If that occurs, the updated hearing date shall be posted on the Settlement Website. If the Court determines additional notice is required, the Court may order it as needed upon conferring with the Parties.

**IT IS SO ORDERED.**

**Dated:  January 28, 2020**

Hon. Gonzalo P. Curiel
United States District Judge