UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RAEL and ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHILDREN'S PLACE, INC., a DELAWARE corporation, and DOES 1-50, inclusive,<br><br>Defendant. | Case No.: 3:16-cv-00370-GPC-LL<br><br>**ORDER**<br><br>**(1) DEFERRING RULING ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**(2) DEFERRING RULING ON MOTION FOR ATTORNEY FEES, COSTS, AND INCENTIVE AWARD**<br><br>**ECF NOS. 73, 91.** |

Before the Court is the Plaintiffs' Motion for Final Approval of Class Settlement and Unopposed Motion for Attorney Fees, Costs, and Incentive Award. (ECF Nos. 73, 91.) Formal objections have been lodged by Anna St. John (ECF No. 75) and Elaine Dougan and Charlie Gabertan. (ECF No. 82.) For the reasons detailed below, the Court DEFERS ruling on the motion for final approval of class settlement and DEFERS ruling on the motion for attorney fees, costs and incentive award.

///

///

## I.    BACKGROUND

### A. The Claims

On February 11, 2016, Plaintiff Monica Rael brought suit on behalf of herself and all others similarly situated against Defendant the Children's Place, Inc. ("TCP" or "Defendant"). (ECF No. 1.) Plaintiff Rael amended the complaint three times and added a second Named Plaintiff, Ms. Alyssa Hendrick (collectively, "Plaintiffs" or "Named Plaintiffs"). (ECF Nos. 9, 19, 29, 37-2.) On November 22, 2017, Plaintiffs filed the operative Third Amended Complaint ("TAC") alleging three causes of actions for violations of (1) California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*; (2) California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*; and (3) California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.* (ECF No. 37-2, Ex. B, TAC at ¶¶ 51–78.) Plaintiffs' three causes of action stem from the allegation that Defendant advertises children's clothing with discounted prices from false original prices to deceive customers as to the real value of their goods and unlawfully drive sales. (*Id.* at ¶¶ 1–9.)

### B. Procedural Background

On November 22, 2017, Plaintiffs filed an unopposed motion for preliminary approval of settlement and provisional class certification. (ECF No. 36.) The Court heard that motion on February 8, 2018. (ECF No. 42.) On April 2, 2018, the Court stayed proceedings pending the Ninth Circuit's decision on the petitions for rehearing *en banc* in *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). (ECF No. 48.) Thereafter, the Court denied Plaintiffs' motion on June 8, 2018 as moot. (ECF No. 49.)

On June 17, 2019, the Court lifted the stay. (ECF No. 57.) Then, on October 31, 2019, Plaintiffs filed an amended motion for preliminary approval of settlement and provisional class certification. (ECF No. 60). On November 22, 2019, TCP filed a notice of non-opposition. (ECF No. 61.)

On December 6, 2019, the Court held a second hearing on Plaintiffs' unopposed

motion. (ECF No. 63; *see also* ECF No. 104, Transcript for December 6, 2019 Hearing ("2019 Tr.")). The Court then ordered the Parties to supplement the record with factual support for their assertions at the hearing. (ECF No. 65.) On January 3, 2020, the Parties filed three documents complying with the Court's order: (a) a declaration by Class Counsel Todd Carpenter dated January 3, 2020, (ECF No. 66, Declaration of Todd Carpenter ("2020 Carpenter Decl.")); (b) Plaintiffs' supplemental briefing, (ECF No. 67); and (c) the declaration of Vipul Jain, a TCP employee, (ECF No. 68 at 2, Declaration of Vipul Jain ("Jain Decl.")). On January 28, 2020, the Court entered an order that GRANTED preliminary approval of class action settlement. (ECF No. 69.)

On April 30, 2020, Plaintiffs filed an Unopposed Motion for Attorney Fees, Costs and Incentive Award. (ECF No. 73.) Thereafter, on July 1, 2020, Plaintiffs filed a motion seeking final approval of the class settlement agreement. (ECF No. 91.) On June 30, 2020, TCP expressed its support for the settlement by filing a notice of non-opposition. (ECF No. 88 at 18–24.) On July 16, 2020, Objector Anna St. John filed a response to the motion for final settlement. (ECF No. 97.) On July 22, 2020, Plaintiffs filed a reply. (ECF No. 99.)

The Court has received objections on the record from three class members. First, on May 29, 2020, Objector Anna St. John responded to Plaintiffs' motion for fees and objected to the settlement in the same filing. (ECF No. 75.) Plaintiffs responded to the St. John Objection on June 30, 2020. (ECF No. 87.) Objector St. John filed a reply on July 10, 2020. (ECF No. 94.) Also, on May 31, 2020, Objectors Elaine Dougan and Charlie Gabertan concurrently filed their objection brief with the Court. (ECF No. 82.)[1] Plaintiffs responded to the Dougan-Gabertan ("D-G") Objection in their motion for final approval.

---

[1] Ms. Dougan's objection was untimely because it was postmarked on June 1, 2020 – one day after the cut off required by this Court's January 29, 2020 order. (ECF No. 91-1 at 23.) However, it is undisputed that Mr. Gabertan's objection is timely as it was postmarked on May 30, 2020. (*Id.*) Hence, because the two objectors' arguments "overlap almost completely," (ECF No. 82 at 5 n.1), the Court considers the arguments as set forth in their joint brief. (ECF No. 82.)

(ECF No. 91-1 at 23–24.) TCP responded to the D-G Objection in their notice of non-opposition. (ECF No. 88 at 30–33.) On July 17, 2020, Objectors Dougan and Gabertan filed a reply. (ECF No. 98.)  On July 22, 2020, Plaintiffs filed a reply to the motion for final approval.  (ECF No. 99.) A hearing on the final approval motion and attorney fee motion was held on July 30, 2020. (ECF No. 103.)

**C. Settlement Agreement**

**1. The Proposed Class**

Plaintiffs seek certification of a nationwide class including "[a]ll individuals in the United States who, from February 11, 2012 through the date the Court enters the preliminary approval order, purchased any product bearing a discount at one of The Children's Place retail or outlet stores" (the "Class"). (ECF No. 37-2, TAC at ¶ 43; ECF No. 60-2, Ex. 1, SA at § 1.8.) "Defendant, Defendant's counsel, Defendant's officers, directors, and employees, and the judge presiding over the action" are to be excluded. (*Id.* at § 1.8.)

Plaintiffs further divide the Class into three Tiers. (*Id.* at § 2.1.) "Tier 1 Authorized Claimants" include individuals whose qualifying purchases total less than $50, or any individuals who do not submit proof of their purchases. (*Id.* at § 2.1(a).) "Tier 2 Authorized Claimants" include individuals whose qualifying purchases total $50.01 to $150. (*Id.* at § 2.1(b).) "Tier 3 Authorized Claimants" include individuals whose qualifying purchases total more than $150. (*Id.* at § 2.1(c).) Tier 2 and Tier 3 Claimants are required to submit proof of their purchases. (*Id.* at §§ 2.1(a)–(b).) Tier 1 Claimants get one voucher, Tier 2 Claimants get two vouchers, and Tier 3 Claimants get three vouchers. (*Id.* at § 2.2.)

**2. The Releases & Warranties**

Under the Settlement Agreement, the Class agrees to release TCP from any and all claims they have against it. (ECF No. 60-2, Ex. 1, SA at § 2.11.) This includes all "Class Released Claims," i.e. all claims "arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the

4

Complaint." (*Id.* at § 1.10.)

Class Members also agree to waive all "Unknown Claims." (*Id.* at §§ 1.31, 2.11.) Under this provision, Class Members waive the protection of California Civil Code § 1542 and thereby relinquish claims which they do "not know or suspect to exist . . . at the time of executing the release and that, if known . . . would have materially affected . . . settlement."[2] (Cal. Civ. Code § 1542; *Id.* at § 1.31.) Per the representation of Class Counsel, the release of Unknown Claims only extends to "issues that were alleged in the complaint related to [TCP's] advertising." (ECF No. 104, 2019 Tr. at 14.)[3]

The Named Plaintiffs likewise release Defendant from future liability. (*Id.* at § 2.12.) Defendant, moreover, admits no wrongdoing and affirmatively denies "each of the claims and contentions alleged by Plaintiffs in the Action." (*Id.* at § 2.13.)

### 3. The Voucher Fund

To compensate the Class for settling this action, the Settlement Agreement provides for a "Voucher Fund" which will contain 800,000 vouchers to be awarded to qualifying Class Members. (ECF No. 60-2, Ex. 1, SA at §§ 1.33, 2.1–2.4) Vouchers may be used at a TCP store, outlet, or online, and come in one of two forms: "(i) $6 off a purchase (no minimum purchase) or (ii) 25% off a purchase (of the first $100)." (*Id.* at § 1.32.) Vouchers are "transferable," valid for 6 months, and "may be used on items that are on sale or otherwise discounted." (*Id.*) Vouchers cannot be "combined with any other coupon or promotional offer," redeemed for cash, or replaced if lost, stolen, or damaged. (*Id.*) The $6 vouchers are "stackable" while the 25% vouchers are not. (*Id.*)

To obtain a voucher, Class Members must comply with the Claims Procedure detailed in the Settlement Agreement. (ECF No. 60-2, Ex. 1, SA at §§ 3.6–3.10.) The

---

[2] As with the known claims, the release language encompassing "Unknown Claims" is "limited to a universe of claims 'arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint . . .'" (ECF No. 60-1 at 25 (quoting (ECF No. 60-2, Ex. 1, SA at § 1.10)).

[3] Objectors Elaine Dougan and Charlie Gabertan have filed objections to the scope of the release as overbroad.

Procedure permits Class Members to file a claim with the Claims Administrator, object to the Settlement Agreement, or request to be excluded from the Class. (*Id.*) Class Members must perform these actions on or before the response deadline, which would initially be set at 120 calendar days after the entry of this Order. (*Id.* at §§ 1.28, 3.6.) Class Members may also request to appear at the Fairness Hearing. (*Id.* at § 3.9(c)). In addition to collecting biographical information, the Claim Form asks Claimants to select their Tier, note their purchases and any available proof, choose which voucher to obtain, and provide an e-mail address for electronic delivery. (ECF No. 60-2, Ex. E, Claim Form).

As noted, the number of vouchers each Claimant receives will be equal to the Tier number. (ECF No. 60-2, Ex. 1, SA at § 2.2.) If there are timely claims to more than 800,000 vouchers in the first round of distribution, the Fund will only distribute dollar-based vouchers, and the value of those vouchers will be calculated on a pro rata basis. (*Id.* at § 2.4) In subsequent rounds of distribution, Claimants receive vouchers according to the selections made in their Claim Forms. (*Id.* at § 2.3(a)–(b).) Again, if there are fewer vouchers left in the Voucher Fund than are timely claimed in any subsequent round of distribution, the Fund will then disburse only dollar-value vouchers at a pro-rated value. (*Id.* at § 2.3(c)).

Vouchers disbursed through subsequent rounds from the Fund are to have different "expiry" period. (*Id.* at § 2.3(d)). More specifically, the periods of expiry for each "round" of Voucher distribution shall be successive (*i.e.,* if the Vouchers to be distributed in the first "round" are valid between January 1, 2021 and June 30, 2021, those that are part of the second "round" would be valid from July 1, 2021 until December 31, 2021). (*Id.*)

### D. Awards to Counsel and Named Plaintiffs

The Settlement Agreement permits the Named Plaintiffs and Class Counsel to recover fees independent of the Voucher Fund. Each Named Plaintiff may recover an "Individual Settlement Award" of $2,500 or less, subject to the Court's approval. (ECF No. 60-2, Ex. 1, SA at § 2.6.). Class Counsel may seek up to $1,080,000 in costs and fees

6

(total), subject to the Court's approval. (*Id.* at § 2.7.) If the Court awards less than that maximum amount in fees and costs to Class Counsel, the difference between the actual award and $1,080,000 will go to the Voucher Fund or, if certain criteria are met, become a *cy pres* distribution to the National Consumer Law Center. (*Id.* at § 2.8.) A *cy pres* distribution requires three precedent conditions per the settlement agreement: "[i] the Court awards less than $1,080,000 in attorneys' fees and costs, [ii] the Court rules that the Vouchers to be distributed under this paragraph are not to be distributed along with the Voucher Fund under Paragraph 2.5, and [iii] it would be economically or administratively infeasible to do a separate distribution of Vouchers in addition to the distribution under under (sic) Paragraph 2.5." (*Id.*) Unless the Court orders a different timetable, attorney fees will be paid 10 days after both the final settlement date and class counsels' delivery of the relevant Form W-9 to TCP. (*Id.* at § 2.7.)

### E. The Claims Process

In the order granting preliminary approval of the settlement, the Court approved a tri-part notice structure, hereafter referred to as the Notice Plan. (ECF No. 69 at 25-26.)

Plaintiffs reported the results from their notice via the declaration of the Settlement Administrator, KCC Class Action Services, LLC ("KCC")'s employee, Mr. Jay Geraci, which he completed on June 26, 2020. (*See* ECF No. 91-4, Declaration of Jay Geraci.)

Geraci reports that, on February 18, 2020, KCC received from the Defendant a list of 12,589,376 records identified as the Class List. (*Id.* at ¶ 7.) After cleansing the list for errors and spam, the list produced 11,622,488 unique e-mail addresses. (*Id.*) Beginning on March 25, 2020 and ending on March 31, 2020 KCC caused the Email Notice to be sent to the 11,622,488 unique e-mails in the Class List. (*Id.* at ¶ 8.) 10,409,099 emails were sent without a bounce or failure notification. (*Id.* at ¶ 9.) Between May 21, 2020 and ending on May 26, 2020, KCC sent a second round of e-mails and e-mails were delivered successfully. (*Id.* at ¶ 10.)

In addition to e-mail notice, KCC also caused the Summary Notice to be published in the April 8, April 15, April 22, and April 29, 2020 national editions of USA Today.

(*Id.* at ¶ 11.) KCC also caused 311,236,411 impressions to appear on both mobile and desktop devices from March 31, 2020 through May 15, 2020 advertising the settlement. (*Id.* at ¶ 12.) Lastly, on March 25, 2020, KCC established a website www.raeltcppricingsettlement.com dedicated to this matter to provide information to the Class Members and to answer frequently asked questions, which contained all the documents relevant to the settlement (e.g., E-mail Notice, Long Form Notice in English and Spanish, Summary Notice, and Claim Form in English and Spanish). (*Id.* at ¶ 13.) As of the date of Mr. Geraci's declaration, the website has received 492,758 visits. (*Id.*) KCC supported the claims process and website with a toll-free telephone number (1-844-799-1633) with interactive voice responses in English or Spanish for potential Class Members to call and obtain information about the Settlement, request a Notice Packet in English or Spanish, and to leave a voice message. (*Id.* at ¶ 14.)

As of June 26, 2020,[4] KCC had received 101,350 timely-filed claim forms. (*Id.* at ¶ 15.) A total of 49,929 Tier 1 claims, 32,985 Tier 2 claims, and 18,436 Tier 3 claims. (*Id.*) These claims represent 171,207 Vouchers in total. (*Id.*) KCC received 10 timely requests for exclusion. (*Id.* at ¶ 16.) KCC also received three objections. (*Id.* at ¶ 17.) Execution costs of the notice and claims process, as of June 26, 2020, had totaled $653,724.45. (*Id.* at ¶ 18.)

## II.   LEGAL STANDARD

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)

### A. Class Certification Standard

Class certification is governed by Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564

---

[4] The deadline to file claims was May 30, 2020.

U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23.

### B. Adequacy of the Settlement Standard

Before approving a settlement, the court must find that "the settlement ... is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval and a final fairness hearing. *True v. American Honda Motor Co*., 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Fed. Judicial Ctr., Manual for Complex Litig., § 21.632 (4th ed. 2004).

At the preliminary approval stage, the Court must review the parties' proposed settlement to determine whether the settlement is within the permissible "range of possible of approval" and thus, whether the notice and the scheduling of the formal fairness hearing is appropriate. *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 574 (S.D. Cal. 2016). At the final approval stage, the court takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination. *True*, 749 F.Supp.2d at 1063.

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial; nor must the settlement provide full recovery of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

To fulfill its duty, the Court must evaluate "whether a proposed settlement is

fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952 (internal quotation marks and citations omitted). Courts should consider some or all of the following factors in determining if a settlement is fair: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959. In evaluating a proposed settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026. The court "does not have the ability to delete, modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety." *Id.*

## III.   DISCUSSION

### A. Merits of Certification of Class

In its order granting preliminary approval of the proposed settlement, the Court found conditionally that, for settlement purposes, the prerequisites for a class action under Rules 23(a) and (b)(3) had been met in that: (a) the number of settlement class members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the settlement class; (c) the claims of the Plaintiffs are typical of the claims of the settlement class they seek to represent for purposes of settlement; (d) the Plaintiffs have fairly and adequately represented the interests of the settlement class and will continue to do so, and the Plaintiffs have retained experienced counsel to represent them; (e) for purposes of settlement, the questions of law and fact common to the settlement class members predominate over any questions affecting any individual settlement class member; and (f) for purposes of settlement, a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. ECF No. 69 at 8-13.

The objectors do not challenge the Court's preliminary findings as to the class certification requirements and the Court again concludes that the facts presented satisfy the requirements for a class action under Rules 23(a) and (b)(3).[5]

**B. Adequacy of Settlement**

**1. Strength of Plaintiffs' case in view of risks, expense and duration of further litigation**

Settlement is favored where a case is "complex and likely to be expensive and lengthy to try." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1300 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) *(*quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Plaintiffs' claims are based on a "years-long investigation into The Children's Place's sale discounting practices" across multiple jurisdictions which they contend shows "pervasive" violations of California law through false advertising pricing information. (ECF No. 60-1 at 12.) Plaintiffs' damages expert, Christian Tregillis provided a detailed report opining on potential methodologies to compute damages. Plaintiffs' investigation revealed that the median purchase price for retail goods at the Children's Place, Inc. was approximately $6.00 to $6.80. Mr. Tregillis estimated that the potential total damage on a per-item basis as a result of the alleged false-reference pricing scheme was approximately 10% of the actual retail purchase price, or $0.60 to $0.68 on a per-item basis were Plaintiffs to prevail at trial.

On the other hand, TCP counsel argues that there is a significant risk that the class will be unable to recover any amount in restitution under California law. (ECF No. 88 at 19.) That is because Plaintiff is required to establish damages by proving the amount of overpayment produced by the false advertising which is an issue subject to great dispute. Class Counsel acknowledges that the "state of the law regarding the appropriate method

---

[5] The Court incorporates by reference the Rule 23(a) and (b)(3) analysis set out at pages 8-13 of the January 28, 2020 order.  *See* ECF No. 69 at 8-13.

for calculating damages or restitution in these types of false pricing cases is in flux."
(ECF No. 60-1 at 20; ECF No. 67, 2020 Carpenter Decl. at 3.) Hence, it may be possible
that years from now the class would succeed on the merits only to "recover nothing" in
damages. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016); *see also*
*Chowning v. Kohl's Dep't Stores, Inc.*, No. CV-15-08673-RGK(SPX), 2016 WL
1072129, at *1 (C.D. Cal. Mar. 15, 2016), *aff'd*, 735 F. App'x 924 (9th Cir. 2018),
*amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018), *and aff'd*, 733 F. App'x
404 (9th Cir. 2018) (granting defendants summary judgment in a suit based on allegations
of deceptive pricing because the plaintiffs "failed to demonstrate a viable measure of
restitution"); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (discussing in
detail the complexity of estimating damages in cases where the harm arises from
deceptive advertising).

      In agreeing to the instant settlement, the Parties recognize the challenges in
continuing to litigate this matter, including, that "the expense, delay, risks and
uncertainties associated with continued prosecution. . . could take several more years to
litigate." (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 18.)  The Objectors do not dispute the
open questions regarding damages or that that there would be significant risks and
uncertainties associated with continued litigation. Ultimately, the identified risks in this
case weigh heavily in determining that the proposed settlement is fair.

## 2. The amount offered in the settlement

### a. Proposed Settlement as a Coupon Settlement

      The Class Action Fairness Action ("CAFA") includes specific requirements with
respect to the approval of a "coupon settlement." As to the fairness of the recovery by
class members, CAFA requires that before a district court may approve a "coupon
settlement," it must "determine whether, and mak[e] a written finding that, the settlement
is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). Although the
"fair, reasonable, and adequate" language used in § 1712(e) is identical to the language
relating to settlement approval contained in Rule 23(e)(2), several courts have read §

1712(e) as imposing a heightened level of scrutiny in reviewing such settlements. *See, e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 654 (7th Cir. 2006); *True*, 749 F. Supp. 2d at 1062.

In has been observed that there are three primary concerns with coupon settlements, that is, "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa v. Sharper Image Corp*., 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007).

Here, it is undisputed that a portion of the settlement provides an option of receiving 25% off coupons on purchases up to $100.  As to this part of the settlement, § 1712(e) unquestionably applies. With respect to the $6 voucher, the objectors assert that this amount, too, constitutes a coupon recovery. The Court will address this argument in more detail in the attorney fee award discussion below, however, *assuming arguendo* that this is true, CAFA does not prohibit a coupon settlement if it is otherwise "fair, reasonable, and adequate."  Here, the Court finds that the proposed settlement is "fair, reasonable and adequate" with respect to the class members' recovery.

First, the Court concludes that the $6 vouchers provide Class Members with meaningful compensation and adequate purchasing power given the low prices common to much of Defendant's inventory. As is now clear, the first round of distribution from the Fund will have only about 170K vouchers, so each Claimant is guaranteed at least $6 in value if they elected the $6 voucher. (ECF No. 91-4, Geraci Decl. at ¶ 15.) The Court also determines that the total amount in the Voucher Fund – approximately $5.4 million dollars – is adequate. Given that the potential total damage on a per-item basis as a result of the alleged false-reference pricing scheme was approximately 10% of the actual retail purchase price, or $0.60 to $0.68 on a per-item basis, the benefit to the Class Members is equal to recovery for the purchase of approximately 10 items. Similarly, for those class members who opt for 25% off a purchase of $100, the value amount of the recovery is up

13

to $25.

Second, TCP incurs a $6 financial loss in profit per redeemed voucher which adversely impacts TCP's bottom line. Third, through either voucher option, an aggrieved class member is required to do future business with the alleged malefactor which raises one of the concerns that exist with coupon settlements.

Ultimately, "one must ask whether the value of relief in the aggregate is a reasonable approximation of the value of plaintiffs' claim." *See In re Mexico Money Transfer Litigation*, 267 F.3d 743, 748–49 (7th Cir. 2001) (Easterbrook, J.) (approving a coupon settlement which was likely to provide only 10% net value of the face value of the coupons). The Court is satisfied that Defendant will be held accountable in an appreciable measure for their alleged unfair and misleading conduct and that Class Members will receive appreciable benefits by the resolution of this case.

Thus, after balancing the strengths and risk factors identified above, the Court finds that the value of the proposed relief which will be received by the class is fair, adequate, and reasonable. Notwithstanding the identified shortcomings of the settlement, the Court concludes that the proposed settlement constitutes a fair compromise given the surrounding questions regarding the calculation of damages at trial, (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 18; ECF No. 60-1 at 20), and the limited damages that stem from each sale, (ECF No. 60-2, Ex. 2, Tregillis Report at ¶ 58 (finding that damages would be equal to a "10% discount" on the price of each qualifying purchase)).

**3. The Extent of Investigation and Discovery and the Stage of Litigation**

The Settlement Agreement is the result of an arms-length negotiation predicated on sufficient investigation, discovery and negotiations. First, the parties only exchanged pre-mediation discovery. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 3.) They did not engage in more "substantial discovery," which could reduce Plaintiffs' ability to evaluate the appropriateness of the Settlement. *Cf. Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-00964-GPC, 2014 WL 3519064, at *3 (S.D. Cal. July 14, 2014).

The Settlement, however, is informed by Plaintiffs' thorough investigation. Class

14

Counsel engaged in the multi-district, "years-long" investigation undertaken to assess Plaintiffs' claims and the class claims. (ECF No. 37-2, TAC at ¶ 22–40; ECF No. 60-1 at 12.) During this investigation, counsel photographed and compared "price tags and retail discount signage in the Defendant's retail and outlet stores throughout California as well as select stores in" eight other states. (ECF No. 66, 2020 Carpenter Decl. at ¶ 2.) Plaintiffs reinitiated the investigation over the 2019 holiday season to corroborate their findings. (*Id.* at ¶ 3.)

In addition, the Parties met over two full-day mediation sessions conducted by the Honorable Edward A. Infante of JAMS, Inc. on December 8, 2016 and April 19, 2017, and subsequently negotiated, drafted, and executed the instant Agreement. (ECF No. 60-1 at 13–14; ECF No. 60-2, Ex. 2, Tregillis Report.) Collectively, these efforts are enough to satisfy this factor.

## 4. The reaction of the class members to the proposed settlement

Plaintiffs argue that the reaction of Class Members has been decidedly positive given that (1) KCC received 101,330 timely-filed Claim Forms and (2) only 10 of 10,409,099 email recipients successfully contacted by KCC requested to be excluded from the settlement. (ECF No. 91-1 at 22.)  KCC received three timely objections as per the established procedures and Plaintiff's counsel received eleven misdirected objections of which only three were briefed in any way, and the remainder "curiously . . . were virtually identical in format and language." (ECF No. 91-1 at 22–23.)[6]

In view of the small number of objections in comparison to the number of timely filed claim forms, the Court finds that the reaction to the proposed settlement is overwhelmingly positive.

## 5. Presence of a Governmental Participant

No governmental entity participated in this Action or has filed any objection to the

---

[6] The Court has not addressed the untimely and misdirected objections because they were not submitted to the Administrator in a timely manner. (ECF No. 91-3 at 2-12.)

settlement terms or sought to participate. (ECF No. 91-1 at 22.)

### 6. Applying Heightened Scrutiny for Signs of Collusion

A settlement agreement is not fundamentally fair under Rule 23(e)(2) if it is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted). The "[C]ourt's role in the class action settlement process is to protect the rights of those not involved in negotiating the settlement, generally the unnamed class members." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) (quotations omitted); *see also Officers for Justice*, 688 F.2d at 624 (collecting cases). Where a settlement is agreed upon prior to certification, there is a "greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Consequently, the Court applies greater scrutiny and considers whether the Settlement Agreement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quotations omitted). Most commonly, these unjust benefits take the form of (1) a "disproportionate distribution of the settlement" to Class Counsel; (2) "a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)"; or (3) "a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  Another indication of collusion is an overbroad release of claims, wherein claims that are not within the "identical factual predicate" of the claims alleged in the complaint are released. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Under this test, the released claims must "arise from the same common nucleus of operative fact" as those alleged in the complaint. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992). The Court, moreover, "must be guided by the actual written agreement and

release" and not counsel's representations on the matter. *See Kakani v. Oracle Corp.*, No. C 06-06493-WHA, 2007 WL 1793774, at *2 (N.D. Cal. June 19, 2007).

### a. Disproportionate Distribution of the Settlement

In this case, the Court is not required to pay any specific sum of attorney fees to Class Counsel. Instead, the Court maintains the discretion to determine the reasonableness of the attorney fees compared to the value of the settlement to Class Members. However, as currently structured, the settlement creates the potential for a disproportionate distribution of the settlement to Class Counsel. This issue is addressed in greater detail below in the discussion regarding attorney fees.

### b. Clear sailing provision

The Court recognizes that the Agreement contains a potentially problematic "clear sailing" clause as to Class Counsel's fees. (ECF No. 60-2, Ex. 1, SA at § 2.7) ("TCP agrees not to object to Class Counsel's request . . .") Such clauses create the risk that "the plaintiff may agree to less for the class in exchange for a higher fee." *See* Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. LEGAL ANALYSIS 167, 200 (2009). This risk, however, is mitigated by the Settlement Agreement's terms. First, "Plaintiffs must petition the Court for approval of any award to Class Counsel of attorney's fees and costs." (ECF No. 60-2, Ex. 1, SA at § 2.7.) Consequently, the Court is in a position to scrutinize whether the final amount to be awarded should, in fact, reach $1,080,000. And, the Court may then reduce the petitioned amount as is reasonable and assign that the value by which the award is reduced to the Class Members. (*Id.* at § 2.8.)

### c. Reverter

Here, if the Court does not award full fees and costs to Class Counsel, the Settlement Agreement requires that the amount by which the fees were reduced be made available to the Class Members as additional vouchers. (ECF No. 60-2, Ex. 1, SA at § 2.8.) The absence of a clause reverting unawarded attorney fees to the Defendant mitigates the fear that the Settlement Agreement is the product of collusion between

Defendant and Class Counsel. *Cf. In re Bluetooth*, 654 F.3d at 947 (citing *Mirfasihi v. Fleet Mortg. Corp*., 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.) (noting that the reversion of unpaid fees to the defendant may signal collusion).

As noted above, any unpaid attorney fees do not revert to Defendant.  Further, there is no reversion of settlement vouchers that are not redeemed.  They are either awarded to Class Members or to a designated cy pres.

### d. Overbroad Release

Currently, objectors D-G have an ongoing class action under the Washington Commercial Electronic Mail Act ("CEMA") (which punishes deceitful advertising done by e-mail). (ECF No. 82 at 14–15.) CEMA does not regulate in-store signs or price tags, the form of communication challenged here. Under the Rael Settlement Agreement, the Class agrees to release TCP from all claims they have against it. (ECF No. 60-2, Ex. 1, SA at § 2.11.) This includes all "Class Released Claims," i.e. all claims "arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint." (*Id.* at § 1.10.)  Class Members also agree to waive all "Unknown Claims." (*Id.* at §§ 1.31, 2.11.) Under this provision, Class Members waive the protection of California Civil Code § 1542 and thereby relinquish claims which they do "not know or suspect to exist . . . at the time of executing the release and that, if known . . . would have materially affected . . . settlement."  (Cal. Civ. Code § 1542; ECF No. 60-2, Ex. 1, SA at § 1.31.) As with the known claims, the release language encompassing "Unknown Claims" is "limited to a universe of claims 'arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint . . .'" (ECF No. 60-1 at 25 (quoting (ECF No. 60-2, Ex. 1, SA at § 1.10).) The Named Plaintiffs likewise release Defendant from future liability. (ECF No. 60-2, Ex. 1, SA at § 2.12.) Defendant, moreover, admits no wrongdoing and affirmatively denies "each of the claims and contentions alleged by Plaintiffs in the Action." (*Id.* at § 2.13.)

At a hearing preceding the Order granting preliminary approval, Class Counsel

represented to the Court that the release of Unknown Claims only extends to "issues that were alleged in the complaint related to [TCP's] advertising." (ECF No. 104, 2019 Tr. at 14.) Objectors D-G have offered to withdraw their objection if TCP will stipulate "that (1) the Rael Settlement Agreement does not preclude or limit the Dougan Action and (2) TCP will refrain from arguing in the Dougan Action that the Rael Settlement Agreement precludes or limits the Dougan Action." (ECF No. 98 at 2.) TCP has not accepted this offer.  TCP has not stated in its papers or at any hearing that it is prepared to enter such a stipulation.

The Court finds the proposed waiver is overbroad in several ways. First, the types of filings applicable are very broad: "all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever . . ." (ECF No. 60-2, Ex. 1, SA at § 1.10.) Also, it includes claims "known and unknown." (*Id.*) Such claims, moreover, need not have arisen here; all that is necessary is that the claims "may have aris[en] out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint." (*Id.*)

As D-G point out, even the language which should tie the release to the instant case is ambiguous insofar as it fails to exclude other types of deceptive practices, including e-mail communications. (ECF No. 82 at 13.) Plaintiffs' explanation of the Washington state law at issue in their case illustrates how they were misled differently than the class at issue here, and how their Washington statute is intended to cover other forms of conduct and carries different elements and remedies. (*Id.* at 17–20.) Thus, because the release is broad enough to cover liability under the Washington suit, and thus presumably other suits with materially different facts than those alleged here, the Court finds it too broad. *See Hesse*, 598 F.3d at 590 (explaining the identical factual predicate test); *cf., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (affirming dismissal of a class action against credit card companies predicated on the

same price-fixing predicate and injury as claims settled in an earlier class action, even though the subsequent suit "posit[ed] a different theory of anti-competitive conduct"); *Class Plaintiffs*, 955 F.2d at 1286–91 (affirming approval of a settlement relating to certain bond defaults that released claims by an identical class of plaintiffs in a pending case that related to the same bond defaults).

The Court concludes that the breadth of the instant waiver is an "obvious deficiency" and requires the Parties to meet to find a mutually agreeable, narrower provision. *Christensen v. Hillyard, Inc.*, Case No. 13–cv–04389 NC, 2014 WL 3749523, at *3 (N.D. Cal. July 30, 2014). The Court has the authority to consider the breadth of the waiver in determining the fairness of a class action settlement. *See id.*; *Custom LED, LLC v. eBay, Inc.*, Case No. 12–cv–00350–JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013); *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–01662 OWW MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

### e.  Awards to Named Plaintiffs

Also, there is no indication that the awards to the Named Plaintiffs here are the result of collusion or special treatment contrary to the Class's interest. Awards to Named Plaintiffs are "fairly typical" in class action settlements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They properly compensate Named Plaintiffs for the additional duties required of them to bring forward the litigation and execute a settlement. *Id.* at 958–59. Here, the awards are reasonable. *Cf. In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (granting preliminary approval of an agreement allotting $15,000 in fees for each Named Plaintiff from a fund of $945,960). Afterall, the Named Plaintiffs have served in their role since 2016 and have made themselves available to confer with Class Counsel and for discovery, as needed. (ECF No. 60-2, 2019 Carpenter Decl. at ¶ 16.)

Consequently, the Court finds that the Settlement Agreement, award to the Named Plaintiffs, and language on reversion do not reveal collusion. However, the release is overbroad and requires modification so that the claims that are based upon Washington

law are exempted. Thus, to ensure that TCP is not unfairly protected against unrelated suits in the future under the shield of an overbroad *Rael* release, the Court GRANTS Objectors D-G's request to withhold approval of the settlement until the release provision can be narrowed.

**C. Notice to Class**

Rule 23(c)(2) requires the "best notice practicable under the circumstances" and permits notice to be served by "United States mail, electronic means, or other appropriate means." The Notice Plan must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Rinky Dink Inc v. Elec. Merch. Sys. Inc.*, No. C13-1347-JCC, 2015 WL 11234156, at \*7 (W.D. Wash. Dec. 11, 2015) (quotations omitted); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). The Ninth Circuit has found that a Notice Plan is satisfactory if it "alert[s] those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).

In the order granting preliminary approval of the settlement, the Court approved a tri-part notice structure, hereafter referred to as the Notice Plan. (ECF No. 69 at 25-26.) The notice structure was implemented as detailed above and spelled out in the declaration of a KCC employee, Mr. Jay Geraci. (*See* ECF No. 91-4, Declaration of Jay Geraci.) As TCP makes clear, both the process and the contents of the notice plan are adequate. (ECF No. 88 at 23.) Lastly, none of the Objectors contest notice, though Plaintiffs briefed the issue. (ECF No. 91-1 at 25.)

The Court finds that the Notice Plan used in this case satisfied the requirements of Rule 23. Courts assessing voucher-based settlements in class actions that deliver notice "primarily through email" have found similar notice programs to comply with Rule 23. *See, e.g., Keirsey v. eBay, Inc*., No. 12-CV-01200-JST, 2014 WL 644697, at *1 (N.D. Cal. Feb. 14, 2014) (finding that a program delivering notice supported by a "class website" was the "best notice practicable under the circumstances"); *In re Equifax Inc. Customer Data Sec. Breach Litig*., No. 1:17-MD-2800-TWT, 2020 WL 256132, at *4 (N.D. Ga. Jan. 13, 2020) (approving a comparable notice plan – i.e., one that includes a settlement website, online advertising, e-mails, and contact information for the Claims Administrator – which adds only a "full-page ad in USA Today").

The notices and Settlement Website contained all of the information necessary to adequately inform interested Class Members how to engage with the Settlement, including (1) information on the meaning and nature of the Class; (2) the basic terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the Settlement Fund; (4) the procedures and deadlines for submitting Claim Forms, objections, and/or requests for exclusion; and (5) the date, time and place of the fairness hearing. (*See* ECF No. 60-2, Ex. B, Full Notice; ECF No. 60-2, Ex. C, E-Mail Notice; ECF No. 60-2, Ex. D, Online Media Notice; Ex. E, Claim Form.)

As such, the Court concludes that the Notice Plan implemented provided the best possible notice under the circumstances.

**D. Attorney Fees**

Objector Anna St. John asserts that the Court cannot award Plaintiffs' counsel fees in the amount of $1,080,000 until the vouchers have been redeemed because the vouchers are coupons within the meaning of CAFA. (ECF No. 75.)  She cites three cases in support of this position: *Hadley v. Kellogg Sales Company*, No. 16-CV-04955-LHK, 2020 WL 836673, at *9 (N.D. Cal. Feb. 20, 2020); *McKnight v. Uber Technologies, Inc*., No. 14-cv-05615-JST, 2019 WL 3804676, at *3 (N.D. Cal. Aug. 13, 2019); and *Rougvie v. Ascena Retail Group, Inc*., No. 15-724, 2016 WL 4111320, at *27 (E.D. Pa. July 29,

2016).

Plaintiffs responds that the option to select between a voucher and coupon does not make CAFA applicable, (ECF No. 87 at 10), and cites two district court opinions for that proposition. *See Foos v. Ann, Inc.*, No. 11-CV-2794-L, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013) (option of receiving a coupon instead of obtaining a voucher does not require the class action to be deemed a coupon settlement as described in 28 U.S.C. § 1712"); *see also Seebrook v. Children's Place Retail Stores, Inc.*, No. C 11–837 CW, 2013 WL 6326487, at *1-2 (N.D. Cal. Dec. 4, 2013).

On January 28, 2020, the Court granted Plaintiffs' unopposed motion for preliminary approval of the Settlement Agreement. (ECF No. 60-1.) In the order, the Court found that the 25% vouchers offered as an option were coupons within the meaning of *In re Online DVD*.  ECF No. 69 at 15.  However, relying on *Foos v. Ann, Inc.*, No. 11-CV-2794-L, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013), the Court concluded that this finding did not require a finding that the settlement was a coupon settlement under CAFA.  *Id*. ("Although the class members here have the option of receiving a coupon instead of obtaining a voucher, the Court has not found any case law to suggest that such an option requires the class action to be deemed a coupon settlement as described in 28 U.S.C. § 1712")  Ultimately, the Court held that the Settlement Agreement did not call for a distribution of coupons within the meaning of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq. See generally In re Online DVD*, 779 F.3d 934 (9th Cir. 2015).

Given that the motion for preliminary approval was made without objection by TCP under the terms of the clear sailing provision, the deficiencies in the proposed settlement were not subjected to the adversarial process that would normally inform the Court. As to the $6 credit voucher, with the benefit of the challenges raised by the objectors, the Court finds that the restrictions on the use of the voucher raise the real possibility that a large number of vouchers will go unused and that an attorney fee award based upon the face value of the vouchers will create a windfall for the Plaintiffs'

attorneys compared to the actual benefits received by the class members.  Accordingly, the Court DENIES the motion for attorney fees without prejudice so that the deficiencies identified herein can be satisfactorily addressed by the parties.

### 1.  Whether the Settlement is a Coupon Settlement

Objector St. John asserts that CAFA applies to this settlement because the class members must choose between two benefits, the $6 voucher or the 25% voucher, and the Court has determined that the latter voucher is a coupon. (ECF No. 75 at 7.) She contends that the instant vouchers present a significant risk that the vast majority of the 800,000 vouchers will expire unused after the 6-month period redemption period and thus less than 5% of the actual benefit to the Class will be realized while a much higher amount will be paid directly to counsel. (*Id.* at 7.)  Plaintiffs, in contrast, maintain that the $6 vouchers option is an alternative to cash and is not a coupon settlement. (ECF No. 73-1 at 9.)

Congress passed CAFA "primarily to curb perceived abuses of the class action device." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)). "One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.* (citation omitted). Coupon settlements present the risk that Class Counsel may "negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees." *Id.* (quoting S. Rep. 109–14, at 29–30 (2005)). As a result, the unidentified Class Members may be "shortchanged." *See Redman v. RadioShack Corp.*, 768 F.3d 622, 636-37 (7th Cir. 2014).

To mitigate the risk of unfair coupon settlements, CAFA awards attorney's fees "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a), instead of "the amount of time class counsel reasonably expended working on the action" per the "lodestar" method. *See In re HP Inkjet*, 716 F.3d at 1183. Thus, delineating settlements that award cash or cash-equivalent certificates from those awarding coupons

affects the calculation of attorneys' fees and bears upon the fairness of the settlement. *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1130 (S.D. Cal. 2018) (quoting *In re HP Inkjet*, 716 F.3d at 1182–86).

Congress did not define the term "coupon" when promulgating CAFA. *In re Online DVD*, 779 F.3d at 950. However, the Ninth Circuit has since fashioned a three-part test to identify coupons: "(1) whether Class Members have to 'hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) *cert. denied sub nom. Perryman v. Romero*, 139 S. Ct. 2744 (2019) (citing *In re Online DVD*, 779 F.3d at 951). Applying these factors in *In re Online DVD*, the Ninth Circuit found that a $12 gift card to Walmart was not a coupon because the "class member need not spend any of his or her own money" to make another Walmart purchase. *In re Online DVD*, 779 F.3d at 951. Such gift cards, moreover, were transferable, did not expire, and could be used to purchase "one of many different types of products" sold for $12 or less. *Id.* at 951–52. In addition, consumers could opt to receive $12 in cash instead of a $12 gift card. *Id.* at 941.

### a.  The 25% Off Coupon

In its order preliminarily approving the class settlement, the Court relied on *Foos* and concluded that the option to utilize the voucher as a coupon did not transform the settlement into a coupon settlement. (ECF No. 69 at 15, fn. 4.) While the coupon option would not render the entire settlement a coupon settlement, the Court does find that, at a minimum, 28 U.S.C. § 1712 applies to that portion of the vouchers that are used as 25% off coupons. That is because CAFA requires district courts to consider the value of only those coupons "that were actually redeemed" when calculating the relief awarded to a class. *In re Online DVD*, 779 F.3d at 950; *see also* 28 U.S.C. § 1712(a). The Court will be unable to determine what the value of the "actually redeemed coupons" will be until the expiration date for the 25% off coupons is reached.

This conclusion corresponds to the view that "[s]ettlements partially based on coupons are reviewed under the Act requiring we apply a lodestar with multiplier to the non-coupon recovery and a percentage of the common fund paid based on the value of the redeemed coupons." *Rougvie v. Ascena Retail Grp., Inc.,* No. CV 15-724, 2016 WL 4111320, at *25 (E.D. Pa. July 29, 2016). Doing so ensures that class counsel benefit only from coupons that provide actual relief to the class, lessening the incentive to seek an award of coupons that class members have little interest in using—either because they might not want to conduct more business with defendants, or because the coupons are too small to make it worth their while. *In re Easysaver Rewards Litig.*, 906 F.3d at 755.

### b. The $6 Voucher

Next, the Court applies the *In re Online DVD* test to determine whether CAFA applies to the $6 voucher option. First, Plaintiffs do not need to "hand over more of their own money before they can take advantage of" the vouchers. *In re Easysaver*, 906 F.3d at 757 (quotations omitted). Plaintiffs presented compelling evidence that the purchasing power of a $6 voucher at TCP is significant. Of the 1,024 items available for purchase online in October 2019, 435 were listed for sale under $6.00 (i.e., 42%). (ECF No. 66 at 2–3, 2020 Carpenter Decl. at ¶ 4.) The median price point of those items was only $4.20. (*Id.* at ¶ 5.) Also, about 760 items were listed for sale under $10.00 (i.e., about 75%). (*Id.* at ¶ 4.) These figures, moreover, likely represent above-average prices for TPC's retail inventory as winter seasonal items tend to be "slightly more expensive." (*Id.*).

Defendant likewise asserts that, as of December 18, 2019, TCP had "several hundred thousand items, totaling more than 20 million units, available in its stores and online for less than $6. These items include tops, bottoms, sleepwear, shoes, bags, jewelry, and other accessories in baby, toddle, girls and boys." (ECF No. 68 at 2, Jain Decl. at ¶ 3.) Thus, as to the first prong of the test, the instant facts differ from those present in coupon settlements. *See, e.g.*, *In re Easysaver.*, 906 F.3d at 757 ("Defendants only claim to sell '15–25 products' for under $20. And that meager list does not even account for shipping charges."); *Seegert*, 377 F. Supp. 3d at 1132 ("Of the 62,000

26

products, only about 5,800 of them are under $ 18" voucher limit); *Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 780 (S.D. Ohio 2019) ("It is undisputed that Class Members will have to spend money . . . as Vita-Mix containers and blenders . . . exceed the $70 Gift Card" with prices starting at "$144.95"). The Court finds that this factor weighs in favor of a finding that the $6 vouchers are not coupons.

Second, the Court must consider whether the vouchers are valid only "for select products or services" or "the vouchers are applicable to a wide variety of products". *In re Online DVD*, 779 F.3d at 951. Here, TCP operates 961 stores in the United States, Canada, and Puerto Rico" and an "online store at www.childrendsplace.com" *Compare In re Easysaver*, 906 F.3d at 757 *with* (ECF No. 68 at 2, Jain Decl. at ¶¶ 2–3) *and* (ECF No. 60-2, Ex. 2, Tregillis Report at 3 n.4.) Plaintiffs argue that the second *Online DVD* factor (diversity & necessity of products) also supports a no-coupon finding because TCP is a sufficiently large retailer and TCP's products are required for everyday life. (ECF No. 87 at 15–21.) Further, in contrast to the minimal "inventory" available at the flower and chocolate store operated by defendant in *In re Easysaver*, TCP is a sufficiently large retailer – even if not a "giant" one like Walmart – to avoid restricting a consumer to a "meager list" of goods for purchase. *In re Easysaver*, 906 F.3d at 757.

Objector St. John argues that the second *Online DVD* factor supports a finding that the vouchers are coupons. (ECF No. 75 at 15–17.) TCP is limited to "baby, toddler, girls, and boys" clothing and thus is more like other retailers that are too small or niche to be analogized to Walmart, such as Lamps Plus which sells "light bulbs, track lights, and deck lights," *Seegert*, 377 F. Supp. 3d at 1127; Art.com which sells "fine art, posters and other home décor products," *Knapp v. Art.com*, 283 F. Supp. 3d 823 (N.D. Cal. 2017); Cole Haan which sells luxury men's clothing, *Davis v. Cole Haan, Inc.,* No. 11-cv-01826-JSW, 2015 WL 7015328, at *4 (N.D. Cal. Nov. 12, 2015); and Lumber Liquidators which offers flooring and items such as table and tile saws, thermostats, countertops, staircase materials, tools, butcher blocks, cleaning supplies and thermostats. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices*

*& Prods. Liab. Litig.*, 952 F.3d 471, 490 (4th Cir. 2020).

The Court notes that TCP offers products that its purchasers are likely to consider necessary – children's clothing. *Cf. Knapp*, 283 F. Supp. 3d at 837. While TCP's inventory is not as great as Walmart, it is more substantial than niche stores that sell merchandise such as art supplies or lamps. The end result is the selection of products that the $6 vouchers may be applied to is not as strong as in *In re Online DVD* and will impact the rate that the vouchers will be redeemed. Consequently, this factor weighs slightly in favor of finding that the $6 vouchers are coupons.

Third, the vouchers are subject to limitations which limit their flexibility. On the one hand, the vouchers are "transferrable," "stackable with each other," (ECF No. 60-2, Ex. 1, SA at § 1.32), and have no "blackout periods" and are applicable to "items that are on sale or otherwise discounted." (ECF No. 60-2, Ex. 1, SA at § 1.32.) On the one hand, they expire in "6 months" and are not "redeemable for cash." (ECF No. 60-2, Ex. 1, SA at 1.32); *see In re Easysaver*, 906 F.3d at 757–58 (relying in part the lack of redeemability to find the credits were coupons)*; Seegert*, 377 F. Supp. 3d at 1132 (same). In addition, the vouchers cannot be used in conjunction "with any other coupon or promotional offer," (ECF No. 60-2, Ex. 1, SA at § 1.32.)

Plaintiffs' argument that a six-month window is appropriate "where Class Members are purchasing products for growing children" does not fully assuage the Court's concerns, (ECF No. 67 at 6), as "redemption periods usually are longer" than six months. *Redman*, 768 F.3d at 630 (J. Posner). At a minimum, courts have differed as to whether six months is appropriate. *Compare Chaikin v. Lululemon USA Inc.*, No. 3:12-CV-02481-GPC, 2014 WL 1245461, at *3 (S.D. Cal. Mar. 17, 2014) (approving a class action settlement offering vouchers that expire within six months), *and Foos*, 2013 WL 5352969, at *3 (same)*, with In re HP Inkjet*, 716 F.3d at 1176 (noting that Defendants' "e-credits" were "coupons" in part because they "expire six months after issuance"), *and Cole Haan, Inc.,* 2013 WL 5718452, at *3 (finding a class action settlement was a coupon settlement, in part, because of "significant limitations" including that "the

28

vouchers expire after six months").

Flexibility in the redeeming of vouchers is an important factor in determining whether a voucher acts as a coupon because greater limitations increase the likelihood that the vouchers will not be used and will not benefit the class members. *See In re Easysaver*, 906 F.3d at 755. Here, the identified limitations on the use of the vouchers create a significant risk that a large number of vouchers will not be redeemed and will not benefit the class which would then allow class counsel to disproportionally benefit from an attorney fee award based upon the face value of the vouchers and not the value realized by the class.

In summary, while a Class Member may use the vouchers without spending more of their own money, the vouchers apply to a much smaller universe of products compared to a general merchandise big-box store such as Walmart, and the identified restrictions reduce the flexibility of the vouchers as to require that the $6 vouchers be treated as coupons within the meaning of CAFA. *In re Online DVD*, 779 F.3d at 951. 28 U.S.C.A. § 1712 provides in pertinent part that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."  Given the Court's finding, final approval and an award of attorney fees must be delayed until the true amount of recovery is determined for the $6 vouchers and 25% off coupons.

**F. Conclusion & Orders**

For the foregoing reasons, the Court **DEFERS** ruling on Plaintiffs' motion for final approval of the Settlement Agreement and **DEFERS** ruling on Plaintiffs' motion for attorney fees. The final approval of settlement agreement and motion for attorney fees is conditioned upon the parties negotiating an amended settlement agreement which will address the deficiencies identified herein.

The Court sets a status hearing for **October 30, 2020 at 1:30 p.m.** in Courtroom 2D to permit the parties to report how they intend to proceed and to schedule future

hearings as necessary. The status hearing date and any additional hearings scheduled shall be posted on the Settlement Website. If the Court determines additional notice is required, the Court may order it as needed upon conferring with the Parties.

**IT IS SO ORDERED.**

Dated: October 23, 2020

Hon. Gonzalo P. Curiel
United States District Judge