1

**HATTIS & LUKACS**
Daniel M. Hattis, Esq. (CA 232141)
2
Paul Karl Lukacs, Esq. (CA 197007)
3
400 108th Avenue NE, Suite 500
Bellevue, Washington 98004
4
Tel.: (425) 233-8628
FAX: (425) 412-7171
5
dan@hattislaw.com
pkl@hattislaw.com
6

7
*Attorneys for Objectors*
*Elaine Dougan and Charlie Gabertan*
8

9
UNITED STATES DISTRICT COURT
10
SOUTHERN DISTRICT OF CALIFORNIA
11

12
| | |
|---|---|
| MONICA RAEL and ALYSSA HEDRICK, on behalf of themselves and all others similarly situated, | Case No. 3:16-cv-00370-GPC-LL |
| | **<ins>CLASS ACTION</ins>** |
| Plaintiffs, | |
| v. | **OBJECTOR CHARLIE GABERTAN'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| THE CHILDREN'S PLACE, INC., a Delaware corporation, and DOES 1 – 50, inclusive, | |
| Defendants. | <ins>Hearing</ins><br>Date: March 29, 2021<br>Time: 1:00 p.m.<br>Judge: Hon. Gonzalo P. Curiel<br>Ctrm: Schwartz—2D |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **MEMORANDUM**

This Court should enter a Final Approval Order of the Settlement Agreement, subject to the modified release that Plaintiffs Monica Rael and Alyssa Hedrick, Defendant The Children's Place, Inc., and Objector Charlie Gabertan all agreed to.

Mr. Gabertan agrees with the general arguments for final approval advanced by Defendant The Children's Place, Inc. ("Children's Place") in its Memorandum In Support Of Final Approval Of Class Settlement (Dkt. 132). This Memorandum will highlight certain additions and caveats.

**Bifurcation.** Mr. Gabertan has no objection to the Court's bifurcating the issue of final approval from the issue of attorneys' fees.

Mr. Gabertan believes that his Objection has conferred a substantial benefit to the class and that he is therefore entitled to an award of his attorneys' fees. *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002). [1]

Mr. Gabertan's intention is to bring his motion for attorneys' fees at the time that the Court deems proper for such a motion (provided the issue is not settled privately). If the Court prefers to enter a Final Approval Order first and to wait for

---

[1]    The language of the revised release speaks for itself, and Mr. Gabertan does not necessarily agree with The Children's Place's characterizations of the release. For example, The Children's Place states that "the release was narrowed to make clear that it did not apply to an action filed in Washington under CEMA by Objector Gabertan." Oppo., p. 8:8-10. The language of the release is significantly broader than that; it is not limited to pending litigation, in Washington State or elsewhere, and it is not limited to any claims brought by Mr. Gabertan. Nor could it be, since the Court sustained Mr. Gabertan's overbreadth objection because "the [original] release is broad enough to cover liability under the Washington suit, and thus presumably *other suits with materially different facts than those alleged here* . . . ." Order (Dkt. 105), p. 19:24-26 (emphasis added).
    Mr. Gabertan also notes that The Children's Place's attempt to minimize the importance of the revised release is a reversal of its prior position. For example, in its Status Conference Report filed December 13, 2020, The Children's Place stated *seven times* that the revised release "add[ed] value" and "provided a benefit" to the Class (Dkt. 117, pp. 2:22, 2:26, 3:8, 4:11, 4:18, 4:20, 5:9). (All page numbers of filed documents are references to the blue PACER page numbers in the upper right corner.)

claims to be processed before considering the issue of attorneys' fees, Mr. Gabertan has no objection.

**All Parties Agreed To The Revised Release.** Mr. Gabertan would like to underscore the fact that all parties agreed to the revised release—and no one disputes that fact. The revised release was provided to the Court in writing in the Further Status Conference Report of Charlie Gabertan (Dkt. 113).

Plaintiffs have admitted on the record that they accepted and agreed to the revised release language. During the Status Conference which was held after the parties agreed to the revised release, the Court summarized the posture of the litigation and stated that, given the parties' agreement, "we are in a position to move forward, and the objector would be prepared to withdraw the objections that have been previously filed." Transcript of Case Management Conference, dated Nov. 20, 2020, p. 3:18-20. In response to the Court's summation, Plaintiffs' counsel, Mr. Todd Carpenter, stated, "I think Your Honor has accurately described the procedural posture." *Ibid.*, p. 4:7-8. Several weeks later, in a Status Conference Report filed December 11, 2020, Plaintiffs again confirmed the existence of the agreement, stating, "Plaintiffs initially agreed to proceed with the proposed modification to the scope of release . . ." (Dkt. 116, p. 4:8-9).

In other words, Mr. Gabertan offered a revised release, and Plaintiffs accepted the offer—and Plaintiffs admit these facts. Remarkably, after agreeing to this revised release, Plaintiffs now point to that agreed-upon modification—and the benefits that Plaintiffs say the updated release language bestows to the class—as the principal justification for Plaintiffs' supposed ability to "withdraw" from the Settlement Agreement. Plaintiffs are essentially asking the Court for permission to breach their own agreement.

Consequently, Mr. Gabertan respectfully disagrees with the Court's observation that "there has not been a meeting of the minds between the three counsel and three sides at this point." Transcript of Telephonic Status Conference

of Feb. 9, 2021, p. 7:20-22. A meeting of the minds indisputably occurred—but Mr. Carpenter later decided to change his mind.

For the same reason, Plaintiffs' attempt to invoke Section 4.2 of the Settlement Agreement comes too late. If Plaintiffs had initially and consistently rejected the revised release language proposed by Mr. Gabertan, then Plaintiffs may have been able to resort to Section 4.2's provision that the Settlement Agreement would become void in the event the Court conditioned approval "on any modifications of this Settlement Agreement that are not acceptable to all Parties." But the undisputed fact is that Plaintiffs did accept the revised release; the revised release was, in the language of the Settlement Agreement, "acceptable" to Plaintiffs. Upon acceptance, Plaintiffs' window to exercise their right under Section 4.2 closed.

**The Revised Release Is Valid And Binding, With Or Without Consideration.** During meeting and conference, Mr. Carpenter contended that his clients are not bound by the revised release because there was no consideration exchanged for the modification. The argument lacks legal foundation.

Under California law (which applies to the Settlement Agreement pursuant to Section 5.13), a release which has been reduced to writing (as this release was in Dkt. 113) does not require consideration. *See* Cal. Civil Code § 1541 ("An obligation is extinguished by a release therefrom given to the debtor or the released party by the creditor or releasing party, upon a new consideration, *or in writing, with or without new consideration*.") (emphasis added); *Moore v. Rogers*, 157 Cal. App. 2d 192, 196 (1958) ("Any inadequacy of consideration, while it may be considered in connection with other circumstances, is not in itself sufficient to set aside a written release.").

In any event, adequate consideration exists. Mr. Gabertan's promise to withdraw his Objection and to not appeal the Final Approval Order constitutes separate and adequate consideration. *See Property California SCJLW One Corp. v.*

*Leamy*, 25 Cal. App. 5th 1155, 1165 (2018) ("It is established that the compromise of disputes or claims asserted in good faith constitutes consideration for a new promise.") (quotation marks omitted).

**Conclusion.** In conclusion, Objector Charlie Gabertan respectfully requests that this Court enter a Final Approval Order granting final approval to the Settlement Agreement with the revised release.[2]

Date: March 2, 2021                    Respectfully submitted,


                                       By: */s/ Paul Karl Lukacs*
                                       _____

                                       **HATTIS & LUKACS**
                                       Daniel M. Hattis, Esq. (CA 232141)
                                       Paul Karl Lukacs, Esq. (CA 197007)
                                       400 108th Avenue NE, Suite 500
                                       Bellevue, Washington 98004
                                       Tel.: (425) 233-8628
                                       FAX: (425) 412-7171
                                       dan@hattislaw.com
                                       pkl@hattislaw.com

                                       *Attorneys for Objectors*
                                       *Elaine Dougan and*
                                       *Charlie Gabertan*

---

[2] An update on the Seattle CEMA litigation styled *Elaine Dougan v. The Children's Place, Inc.*, Case No. 2:20-cv-00818-JLR (W.D. Wash.): On February 26, 2021, Judge Robart certified his order compelling arbitration for an interlocutory appeal under 28 U.S.C. section 1292(b), noting that "there are multiple ways the Ninth Circuit could reverse this court's order should it agree with Ms. Dougan on some of the questions she seeks to raise on appeal." The parties to the *Dougan* litigation are currently briefing Ms. Dougan's application to the Ninth Circuit to permit the appeal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I, Paul Karl Lukacs, certify that on March 2, 2021, I caused a copy of the

foregoing document to be filed via the Court's CM/ECF system, which will

automatically serve notice upon all counsel of record.


Dated: March 2, 2021                         By:  */s/  Paul Karl Lukacs*
                                                      Paul Karl Lukacs