UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RAEL and ALYSSA HEDRICK, on behalf of themselves and all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHILDREN'S PLACE, INC., a Delaware corporation, and DOES 1-50, inclusive,<br><br>Defendant. | Case No.: 16-CV-370-GPC-BGS<br><br>**ORDER DENYING MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION AND TO ENFORCE JUDGMENT AND SETTLEMENT AGREEMENT; ORDER GRANTING MOTION TO SEAL**<br><br>**[ECF Nos. 170, 172]** |

## INTRODUCTION

Defendant The Children's Place, Inc. ("Defendant") moved for Preliminary Injunction and Permanent Injunction and to Enforce Judgment and Settlement Agreement. ECF No. 172. Specifically, Defendant "requests that the Court enforce the terms of the Settlement Agreement and preliminarily and permanently enjoin" Class Members in this case from participating in *Gonzalez v. The Children's Place*, No. 8:22-

cv-816 (C.D. Cal.). ECF No. 172-1 at 32.[1] Plaintiffs Monica Rael, Alyssa Hedrick, and unnamed class members ("Plaintiffs") responded, ECF No. 179, and Defendant replied, ECF No. 181. For the reasons described below, the Court DENIES the motion.

## BACKGROUND

Defendant The Children's Place, Inc. is a brick-and-mortar and online retailer of children's clothing and accessories. ECF No. 37-2 ¶ 19. In 2016, Plaintiffs sued Defendant in this class action for falsely advertising that their items were discounted when they were not. *Id.* at 3-5. Plaintiffs alleged that Defendant misled consumers by listing a false "original" price with the "discounted" price when the "discounted" price was the original price of the item. *Id.* The operative Third Amended Complaint ("*Rael* Complaint") asserted causes of actions for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750. *Id.* at 17-23. After objections by class members, ECF Nos. 65, 78-79, 82, the Court eventually approved the modified class action settlement agreement, ECF No. 142. The Settlement Class included individuals who had purchased an item bearing a discount from Defendant between February 11, 2012 through January 28, 2020, the date the Court entered the Preliminary Approval Order. ECF No. 144-1 at 3; ECF No. 69. The Settlement provided class members with vouchers for future purchases at The Children's Place. ECF No. 144-1 at 6-7. Importantly, the Settlement Agreement included a release of "all causes of action . . . arising out of or relating to any of the acts . . . or other conduct of the type or manner that they have alleged or otherwise referred to in the Complaint." *Id.* at 144-2. The Court entered its final judgment on July 28, 2021,

---

[1] Page numbers reflect CM/ECF pagination.

1  retaining jurisdiction over the settlement.  ECF No. 148.  As of December 2023, the
2  voucher rounds and redemption periods have concluded.  ECF No. 162.
3      In April 2022, Gabriela Gonzalez—represented by the same counsel as
4  Plaintiffs—sued Defendant in a class action alleging the same false advertising and
5  marketing scheme at issue here, asserting the same causes of action, and requesting the
6  same relief.  *Gonzalez v. The Children's Place*, 8:22-cv-816 (C.D. Cal.) ECF Nos. 1, 34;
7  *Rael* ECF No. 37-2.  The operative *Gonzalez* First Amended Complaint ("*Gonzalez*
8  Complaint") explained that "Defendant Children's Place was sued for precisely the same
9  false and deceptive advertising scheme as alleged here," citing *Rael*.  *Gonzalez* ECF No.
10 34 ¶ 29.  The primary difference between *Gonzalez* and *Rael* is that the class period in
11 *Gonzalez* began on January 29, 2020, *id.* ¶ 53, a day after the *Rael* class period ended on
12 January 28, 2020, ECF No. 144-1 at 3; ECF No. 69.  The parties do not dispute that
13 Gabriela Gonzalez is a *Rael* class member.  ECF No. 172-2 at 2 (declaration of settlement
14 administrator); ECF No. 179 (absence).  In August 2023, Gonzalez amended her
15 complaint and added another named plaintiff—Christina Calcagno.  *Gonzalez* ECF No.
16 34.  The parties have not determined whether Calcagno is a *Rael* class member.  ECF No.
17 172-1 at 10 n.7.
18     Defendant filed a motion to dismiss in *Gonzalez*, noting in its reply that it intended
19 to ask this Court for an injunction requiring dismissal of the *Gonzalez* action.  *Gonzalez*
20 ECF No. 38; *Gonzalez* ECF No. 41 at 8.  Judge Cormac J. Carney denied the action,
21 stayed the case, and ordered Defendant to file a motion to enforce the settlement
22 agreement in this Court.  *Gonzalez* ECF No. 43 at 1-2, 4.  Defendant did so, filing the
23 instant motion on December 29, 2023.  ECF No. 172.  After briefing, the Court heard
24 argument on February 23, 2024.  ECF No. 183.
25     In August 2023, a third firm, which Defendant alleges is working with class
26 counsel here, filed over 1,300 individual arbitration demands against Defendant related to
27 its advertising of discounted prices and threatened to file about 50,000 more.  ECF No.
28

170-3 at 2 ¶ 4-5. These actions are currently covered by a standstill agreement and Defendant explicitly does not move to enjoin them.[2] *Id.* at 2-4 ¶ 6, 9. The Court will therefore not address them.

## JURISDICTION

The Court has power to issue an injunction against other actions to enforce the *Rael* Settlement Agreement under the All Writs Act. The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. As the Ninth Circuit explained:

> The requisite independent basis for jurisdiction may be supplied by a provision in the settlement agreement and order that expressly retains jurisdiction in the district court for the purpose of overseeing and enforcing the prior judgment. Such a provision, in conjunction with the All Writs Act, empowers a district court to protect its judgment from a subsequent action that frustrates the purpose of the settlement agreement and order.

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 841 (9th Cir. 2005); *see also Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268-69 (9th Cir. 1996).

Here, the Court's Final Judgment ordered that "the Court shall retain jurisdiction over the Parties to the Modified Settlement Agreement to administer, supervise, construe,

---

[2] Defendant filed a Motion to File the Standstill Agreement Under Seal. ECF No. 170. Plaintiffs do not oppose. ECF No. 180. The Court GRANTS the motion to seal because under both the "compelling reasons" and "good cause" standard, Defendant has rebutted the presumption of public access. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006). The Standstill Agreement is a confidential document in a multitude of separate actions and consists primarily of personal identifiable information of individuals who are not party to this suit. ECF No. 170-1 at 3-4. The Agreement constitutes no part of the Court's decision and the Court does not rely on it in in any way in determining the outcome of the instant Motion to Enforce Judgment and Settlement Agreement.

and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties." ECF No. 148 at 5.  The Settlement Agreement itself states that the Court shall "retain jurisdiction over the Action and the Parties relating to the administration, consummation, and/or enforcement of the Agreement and/or the Final Order and Judgment, and for any other necessary purpose." ECF No. 144-1 at 14.  "This express retention of jurisdiction, coupled with the All Writs Act, [gives the Court] an adequate jurisdictional basis to entertain [Plaintiff's] motion to protect the settlement agreement through an injunction." *Sandpiper*, 428 F.3d at 841.  Importantly, the Court's jurisdiction extends only to those bound by the Settlement Agreement; it cannot enforce the Settlement Agreement on those who were not party to it.

## DISCUSSION

Defendant requests both a preliminary and permanent injunction to prevent "Class Members (like Gonzalez) . . . from bringing claims of the type asserted in the *Gonzalez* Action or elsewhere which are precluded by the Settlement Agreement[.]" ECF No. 172-1 at 11.

### I. Legal Standard for Preliminary and Permanent Injunctions

"To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013).  The standard for a preliminary injunction is similar, except that it accounts for the expected future change in circumstances.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing elements for a preliminary injunction).

Although the parties use these traditional injunction requirements, it is not obvious that it is necessary to do so in the context of enforcing a settlement agreement. "Ninth

Circuit precedent is not clear on whether any of the traditional injunction requirements should apply [in this circumstance]." *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685, 2024 WL 37206, at *8 (N.D. Cal. Jan. 2, 2024). Indeed, some Ninth Circuit cases analyzing a district court's power to enjoin another action pursuant to a settlement agreement do not appear to use these traditional elements. *See generally Flanagan v. Arnaiz*, 143 F.3d 540, 543 (9th Cir. 1998). And at least two district courts have found that courts need not examine the traditional requirements for obtaining an injunction to issue injunctive relief under the All Writs Act. *Mendoza*, 2024 WL 37206, at *8; *Flores v. Barr*, 407 F. Supp. 3d 909, 928 n.16 (C.D. Cal. 2019), *aff'd in part, rev'd in part on other grounds sub nom. Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020). As the Eleventh Circuit explained, "[t]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004). The Court will therefore focus on the "merits" question of whether *Gonzalez* is within the scope of the *Rael* Settlement Agreement.

## II. On the Merits: The Settlement Agreement Release Does Not Encompass the Claims Brought in *Gonzalez*

The primary question in front of the Court is whether the *Gonzalez* action is within the scope of the Settlement Agreement and therefore whether *Rael* Class Members are barred from participating. There is no dispute that the *Rael* Settlement Agreement does not bar non-*Rael* class members from suing in *Gonzalez*. Because "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," California principles of contract interpretation govern this question. *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *see also Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013). Interpretation of a settlement agreement, like a contract, must "give effect to the

1  mutual intention of the parties as it existed at the time of contracting, so far as the same is
2  ascertainable and lawful." Cal. Civ. Code § 1636. That mutual intent is determined
3  through the agreement's text. Cal. Civ. Code §§ 1638, 1639. "The language of a
4  contract is to govern its interpretation, if the language is clear and explicit, and does not
5  involve an absurdity." *Id.* § 1638.

6      The provision of the Settlement Agreement at issue—the definition of "Class
7  Released Claims"—is as follows:

> [T]he term "Class Released Claims" means all causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses[,] costs, expenses, and attorneys' fees, of any nature whatsoever, in law or equity, fixed or contingent, **arising out of or relating to any of the acts, omissions or other conduct of the type or manner that they have alleged or otherwise referred to in the Complaint**, **including, but not limited to, any claims related to or arising out of consumer protection statutes or false advertising statutes based on sales or discounts advertised** by or on behalf of The Children's Place, Inc. or any of its subsidiaries or affiliates, including in both brick-and-mortar U.S. stores or on The Children's Place's website (www.childrensplace.com).

16  ECF No. 144-2 at 2 (emphasis added).

17      Defendant argues that *Gonzalez* is factually the same as *Rael* because "both
18  actions allege the same consumer deception from the same [The Children's Place]
19  advertising practice." ECF No. 172-1 at 22. Plaintiffs contend that "the claims
20  asserted in *Gonzalez*, including the claims for injunctive relief, arose after the *Rael*
21  Class Period [and] are all based on separate transactions that do not relate to any
22  conduct or transactions during the time period alleged in the *Rael* Complaint."
23  ECF No. 179 at 19. Both parties contend that, at the time of signing the Settlement
24  Agreement, they understood the Release language to support their current
25  positions: Defendant understood the Release to include future claims regarding the
26  same conduct and Plaintiffs understood it to exclude future conduct. ECF No. 181
27  at 4 ("In the Settlement Agreement [The Children's Place] bargained for the right

1  to continue its practice[.]"); ECF No. 179 at 7 ("Plaintiffs . . . viewed the release as
2  limited to the claims and Class Period set forth in the operative complaint."). The
3  Court looks to the text itself to determine mutual assent. Cal. Civ. Code § 1639.

4        The language of the Release does not, on its face, include claims based on
5  future conduct, even if that conduct is a continuation of the same pattern of
6  behavior discussed in the *Rael* Complaint. The text covers only claims "arising out
7  of or relating to any acts . . . alleged or otherwise referred to in the Complaint,"
8  ECF No. 144-2, and the acts referred to in the *Gonzalez* Complaint occurred
9  entirely after the acts alleged in the *Rael* Complaint. Contrast this with language
10 the parties could have included to explicitly encompass future conduct of the same
11 kind, such as "the Class Members . . . release . . . all such matters, and all claims
12 relating thereto, which exist, *hereafter may exist*, or might have existed with
13 respect to their Policies." *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x
14 577, 578, 580 (3d Cir. 2011) (emphasis added). To interpret the Release as *not*
15 forward looking makes sense given that the relief awarded in the settlement was
16 time-limited. The terms and amount of recovery in the settlement were based on
17 the time frame for the alleged misconduct, which was limited by the class period.

18       Still, the Release language is somewhat ambiguous because it also does not
19 explicitly except claims based on conduct occurring after the class period, as other
20 settlement agreements have done. *See, e.g.*, *Yearby v. Am. Nat'l Ins. Co.*, No. 20-
21 CV-09222, 2021 WL 3855833, at *14 (N.D. Cal. Aug. 30, 2021) ("Nothing in this
22 Release shall be deemed to . . . release a Class Member's right to assert any claims
23 that arise from acts, facts, or circumstances *arising exclusively after the end of the*
24 *Class Period*.").

25      Because it is ambiguous how the text of the release applies to the allegations
26 in the *Gonzalez* Complaint—the same as those in the *Rael* Complaint except as to
27 the timing of the conduct—the Court looks to the res judicata and identical factual
28

predicate doctrines for guidance. At their essence, both doctrines ask whether the new claim is the same as the prior one. In California, res judicata bars subsequent litigation for claims that were decided or could have been raised in a prior action and applies only if the prior suit involved the same "claim" or cause of action. *Yearby*, 2021 WL 3855833, at *14. Similarly, the identical factual predicate doctrine under California law holds that "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks and citations omitted).

The Restatement of Judgments Second provides guidance on what constitutes a single claim or "transaction," explaining that the determination is pragmatic and gives "weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" Restatement (Second) of Judgments § 24(2) (1982). Here, the facts of the *Rael* and *Gonzalez* Complaints are related in space, origin, and motivation. The alleged misconduct underlying both cases is the same: that Defendant falsely advertised that its items were discounted from the original price when in fact they had never been sold at that original price. *See* ECF No. 37-2 at ¶¶ 1-9, 22-39 (*Rael* Complaint); *Gonzalez* ECF No. 34 at ¶¶ 1-6, 32-36 (*Gonzalez* Complaint). Additionally, the legal theories, causes of action, and requested relief are identical. *See* ECF No. 37-2 at 17, 21-23 (*Rael* Complaint); *Gonzalez* ECF No. 34 at 22, 25, 27-29 (*Gonzalez* Complaint). And because the complaints do not identify particular incidents of alleged misconduct beyond describing the lead Plaintiffs' interactions with Defendant, they form a convenient trial unit. Whether treatment

9

as a unit conforms to the parties' expectations is a fairly neutral factor because, as described above, the settlement language is somewhat ambiguous and both parties contend that it reflects their mutually exclusive interpretations. *See* ECF No. 181 at 4; ECF No. 179 at 7.

Nonetheless, the conduct described in the *Gonzalez* Complaint is distinct from the conduct alleged in the *Rael* Complaint in one very important respect: time. The *Rael* class includes those who purchased discounted items from The Children's Place between *February 11, 2012 and January 28, 2020*, ECF No. 144-1 at 3; ECF No. 69, and the proposed class in *Gonzalez* includes those who purchased discounted items from The Children's Place *on or after January 29, 2020*, ECF No. 34 at 19 ¶ 53. Thus, the alleged misconduct in *Rael* occurred entirely before the alleged misconduct in *Gonzalez*.

"When analyzing whether a claim is based on the same transaction or occurrence, courts must be mindful that a claim arising subsequent to a prior action is not barred by res judicata even if the new claim is premised on facts representing a continuance of the same 'course of conduct.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (cleaned up); *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1596 (2020) ("Claim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." (internal quotation marks and citation omitted)). This is because "[w]hile the [earlier] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (holding that this is true "whether the defendants' conduct be regarded as a series of individual torts or as one continuing tort"). California courts have similarly observed that "[r]es judicata was never intended to be used as a vehicle

for forever 'immunizing' any party in a continuing business relationship from liability for continuous or recurrent breaches of contract, conspiracy directed toward such breaches, or for continuous or recurrent tortious misconduct." *Nakash v. Superior Ct.*, 196 Cal. App. 3d 59, 69 (Ct. App. 1987). Even where the parties are not in a continuing relationship, a later suit is not barred "where there are successive breaches of an obligation, or separate and distinct torts." *Id.* at 68-69.

The Ninth Circuit has held that a prior judgment cannot bar post-judgment conduct even where the "facts alleged were much the same." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1436, 1438-39 (9th Cir. 1985). It explained that "because [the prior suit] was settled on September 7, 1977 and judgment was entered as of that date, the causes of action disposed of in [the prior suit] were for pre-September 7, 1977 conduct and the judgment cannot bar suit brought on post-September 7, 1977 conduct." *Id.* at 1438-39. *Eichman*'s reasoning applies here. Because the Settlement Agreement at issue did not clearly release future claims, the *Rael* settlement "cannot bar suit brought on post-[settlement agreement] conduct." *Id.*

More recently, the Second Circuit conducted a similar, more detailed analysis and came to the same conclusion. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014). In *TechnoMarine*, the plaintiff, a watch maker, had previously sued the defendant, a watch seller, for selling the plaintiff's watches without authorization. *Id.* at 497. The parties settled for a small sum and released "all liability . . . which the parties . . . now have, may have, or may hereafter assert . . . relating to the claims alleged in the Civil Action or arising from the facts alleged therein." *Id.* A few years later the plaintiff brought a similar claim against the defendant alleging new instances of unauthorized or counterfeit watch sales. *Id.* at 498. The Second Circuit held that if "later conduct can support a cause of action on its own, it is the basis of a new cause of action not precluded by the earlier judgment." *Id.* at 503. It analogized the situation to one in which judgment

1  was granted to the plaintiffs after trial and then defendant repeated their conduct
2  years later. *Id.* To bar a future claim based on later-occurring conduct "would in
3  effect immunize the defendant against all suits concerning infringements of the
4  same trademark in a similar way." *Id.* *TechnoMarine* therefore held that the later
5  suit was not barred by claim preclusion. It also found that the release in the prior
6  settlement agreement did not preclude the later suit. Similar to the language at
7  issue here, the settlement agreement released liability "relating to the claims
8  alleged in the Civil Action or arising from the facts alleged therein," *id.* at 504,
9  which the Second Circuit held did not cover subsequent instances of the same
10 conduct.

    Multiple district courts in this Circuit facing similar situations have reached
the same outcome. *See Yearby*, 2021 WL 3855833, at *14-16 (holding that neither
the settlement release nor claim preclusion barred a later suit based on similar
claims regarding insurance rate charges occurring after the prior case settled);
*Feller v. Transamerica Life Ins. Co.*, No. 216CV01378, 2016 WL 6602561, at *5-
6, 8-9 (C.D. Cal. Nov. 8, 2016) (holding that res judicata and a settlement release
from a 1997 case regarding an alleged fraudulent sales scheme on life insurance
policies did not bar suit on allegedly unlawful rate increases in the same insurance
policies in 2015); *Schroeder v. Envoy Air, Inc.*, No. CV 16-04911, 2016 WL
11520388, at *8 (C.D. Cal. Sept. 27, 2016) (holding that new claims were released
by a prior settlement except that "the Claims are not dismissed to the extent that
Plaintiffs . . . can demonstrate a factual predicate for the pleadings after the end of
the [prior] class period"); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML
04-1610, 2005 WL 5678842, at *6 (C.D. Cal. Apr. 26, 2005) (holding that a prior
settlement release did not bar the current action under the identical factual
predicate doctrine because plaintiffs' claims in the current case "involve[d] actions

by Defendants that first occurred years after the [prior] settlement and that therefore could not have been asserted in the [prior] litigation").

The Third Circuit, in an unpublished case, and a few out-of-circuit district court cases have come to the opposite conclusion—that a settlement agreement barred a later claim based on the same conduct occurring following the settlement agreement. *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 580 (3d Cir. 2011); *Lucas v. Metro. Tower Life Ins. Co.*, No. 211-CV-467FTM38, 2013 WL 12097639, at *13 (M.D. Fla. Dec. 10, 2013); *Smith v. DADA Ent., LLC*, No. 11 CIV. 7066, 2012 WL 4711414, at *6 (S.D.N.Y. Sept. 27, 2012). However, each of these cases is distinguishable because it involved a settlement release that was explicitly forward-looking and encompassed future conduct. The settlement agreement in *Freeman* released "all such matters, and all claims relating thereto, which exist, *hereafter may exist*, or might have existed . . . with respect to their [insurance] policies," though "nothing in the Release shall be deemed to . . . release . . . any claims that independently arise from acts, facts, or circumstances arising exclusively after the end of the Class Period." *Id.* at 578-79 (emphasis added). This release reaches into the future with its use of "hereafter may exist," and therefore bars suit on the repetition of the same conduct. *See also Lucas*, 2013 WL 12097639, at *3 ("It is the intention of Plaintiffs . . . to settle and release all such matters, and all claims relating thereto, that exist, *hereafter may exist*, or might have existed whether or not previously or currently asserted in any action or proceeding with respect to their Policies." (cleaned up and emphasis added)); *Smith*, 2012 WL 4711414, at *3 (releasing "[a]ny claim . . . that the Releasing Party has or may have, including assigned claims and "unknown Claims" as defined below, asserted or unasserted, latent or patent, that is, has been, could have been, *or in the future might be*, asserted by the Releasing Party either in this Action, any of the Related Actions, or in any other action or proceeding . . .").

1  Given that the settlement release here has no such forward-looking language,
2  these cases are not instructive. Instead, the Court follows the Ninth Circuit's
3  decision in *Eichman*, 759 F.2d 1434, the Second Circuit's decision in
4  *TechnoMarine*, 758 F.3d 493, and the in-Circuit district court cases, and holds that
5  the *Rael* settlement agreement does not bar *Rael* Class Members' participation in
6  *Gonzalez*. The alleged misconduct in *Gonzalez* is distinct from the alleged
7  misconduct in *Rael* in time; it occurred subsequent to the *Rael* settlement
8  agreement. It is therefore not the same claim and not based on the same facts, even
9  though the alleged misconduct itself is virtually identical.

10  Defendant contends that permitting *Rael* class members to participate in
11  *Gonzalez* deprives it of the benefit of its bargain in the settlement agreement and
12  means that no defendant will settle a class action because the release "does not bar
13  class members from bringing the same claims in the future[.]" ECF No. 172-1 at
14  10, 26. However, Defendant could have insisted on a release in the Settlement
15  Agreement that explicitly addressed future claims.[3] *See TechnoMarine*, 758 F.3d
16  at 504. And that would have barred Class Members' participation in *Gonzalez*.
17  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement
18  agreement may preclude a party from bringing a related claim in the future even
19  though the claim was not presented and might not have been presentable in the
20  class action[.]" (internal quotation marks and citation omitted)). Thus, this
21  decision "in no way opens the door to seriatim lawsuits." *TechnoMarine*, 758 F.3d
22  at 504.

---

[3] Defendant could also have litigated the case until a final, potentially favorable, judgment, which would preclude Plaintiffs from litigating the same issue again.

1   Defendant also argues that at the very least Plaintiffs' "claims for equitable
2   injunctive relief [in *Gonzalez*] are barred, as such claims pertain to the same
3   practices alleged in this case, which, therefore predated the Settlement
4   Agreement." ECF No. 172-1 at 21.  It contends that "[f]or these new claims to
5   stick, the Court must effectively find that the Settlement Agreement's release of
6   injunctive relief claims was invalid or unenforceable." *Id.* at 26.  However, the
7   Supreme Court held almost seventy years ago that "[t]here is no merit . . . in the
8   respondents' contention that petitioners are precluded by their failure in the [prior]
9   suit to press their demand for injunctive relief." *Lawlor*, 349 U.S. at 329.  "A
10  combination of facts constituting two or more causes of action on the law side of a
11  court does not congeal into a single cause of action merely because equitable relief
12  is also sought." *Id.* at 328-29; *see also TechnoMarine*, 758 F.3d at 504 ("[T]he
13  failure of a plaintiff to obtain (or even seek) an injunction does not preclude it from
14  bringing suit for later instances of similar unlawful conduct.").

15  Accordingly, the *Rael* Release does not preclude the *Rael* Class Members
16  from participating in *Gonzalez*.[4]  Because Defendant does not win on the merits,
17  the Court will not consider any of the other injunction elements.

## CONCLUSION

19  For the reasons above, the Court DENIES the Motion to Enforce Judgment and
20  Settlement Agreement and For Preliminary and Permanent Injunction.

21  **IT IS SO ORDERED.**

---

[4] The Court notes that although the Settlement Agreement does not bar *Rael* Class Members' participation in *Gonzalez*, they may have difficulty demonstrating constitutional standing, detrimental reliance, and damages.

Dated: April 3, 2024

Hon. Gonzalo P. Curiel
United States District Judge